IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| DRIFTLESS AREA LAND CONSERVANCY, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  19-CV-1007 |
| PUBLIC SERVICE COMMISSION OF WISCONSIN, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

## INTRODUCTION

This Court should dismiss the Driftless Area Land Conservancy's and Wisconsin Wildlife Federation's ("Plaintiffs'" or "DALC/WWF's") Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1).  Because Plaintiffs lack standing to bring this suit and the Public Service Commission of Wisconsin ("Commission") and the Commissioners are immune from suit under 42 U.S.C. § 1983 pursuant to the Eleventh Amendment.  Even in the absence of immunity, the Complaint cannot stand because, pursuant to Fed. R. Civ. P. 12(b)(6), it lacks any facts that could show that either Commissioner Huebsch or Chairperson Valcq was biased or lacked impartiality when the Commission approved the high-voltage transmission project application.  The attacks by Plaintiffs against Chairperson Valcq and Commissioner Huebsch are mere conclusory allegations that lack a shred of support in Plaintiffs' pleading or in the law, and are based entirely on the Plaintiffs' after-the-fact subjective view that there was "an appearance of bias."

The context of when Plaintiffs' claims arose is important. Plaintiffs waited until six days before the Commission issued its Final Decision approving the transmission line project, and a month after the Commissioners voted to approve the project in their open meeting, to raise claims of bias and *ex parte* communications. That they waited to assert these claims of bias until after they heard the Commission's preliminary decision strongly supports that Plaintiffs' claims have not been alleged in good faith. When the facts Plaintiffs allege support these claims are examined, it is obvious that the allegedly newly-discovered issues were matters of public knowledge for eight months prior to the Commission's preliminary decision, and are innocuous. The only support for Plaintiffs' accusations of bias or *ex parte* communications comes from Plaintiffs' characterizations of the facts. The law requires more.

Plaintiffs' accusations of bias against Chairperson Valcq, for example, amount to nothing more than citing her experience as a utility lawyer, and contain no allegation that she worked for any of the utilities involved in the decision before her, or with which she had any personal or pecuniary interest. Similarly, Plaintiffs have identified no facts alleging why Commissioner Huebsch's role representing the *State of Wisconsin's and the Commission's interests* before the regional transmission grid operator would cause him to have bias in favor of the operator of the Project. Nor have Plaintiffs identified even one actual *ex parte* communication between Commissioner Huebsch and a party to the proceeding. The Complaint lacks any facts that could sustain this action.

The Court need not get to the sufficiency of these allegations to dismiss the case, however, because Plaintiffs have not established their own standing nor this Court's subject matter jurisdiction over this action. Plaintiffs have not been deprived of a protected property interest without due process, and their claims are barred by both the language of 42 U.S.C.

§ 1983 and sovereign immunity.  No taking has occurred as a result of the approved Project, therefore no deprivation of property without due process could have occurred.  Further, neither the state nor state officials can be sued under Section 1983 because they are not "persons" as used in the section.  Finally, the Eleventh Amendment bars Plaintiffs' claims against an agency of the state and state officials.  To the extent this Court finds that this suit can survive the Commission's sovereign immunity, it should nonetheless decline to exercise jurisdiction under the *Younger* abstention doctrine because state proceedings remain ongoing.

For the reasons discussed below, this Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

For the convenience of the Court and to aid its determination of the absence of merit for this action, it is worthwhile to begin with a brief background of the facts alleged in the Complaint.[1]  The Complaint alleges that the Commission is an independent agency of the State of Wisconsin responsible for the regulation of Wisconsin utilities and composed of three commissioners.  Dkt. 1 ¶¶ 46-47.  The current Commissioners are named defendants Rebecca Valcq (Chairperson), Michael Huebsch, and Ellen Nowak.  Dkt.1 ¶¶ 55, 78, 80.  The Commissioners are legally prohibited from having financial interests in utilities, and certify that they do "not have a financial interest in a railroad, water carrier, or public utility."  Wis. Stat. § 15.79(1).  The Commission is required to conduct public and evidentiary hearings following the Wis. Stat. ch. 227 administrative hearing procedures before it may decide whether to approve

---

[1] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claims in the complaint.  *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013); *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.").  Therefore, this motion also refers to the Commission's Final Decision in Docket No. 5-CE-146 that Plaintiffs reference in the Complaint and seek to enjoin.

applications for Certificates of Public Convenience and Necessity (CPCN) from utility companies seeking permission to construct certain types of utility infrastructure. Dkt. 1 ¶¶ 49-50.

This action arises from an application to the Commission by American Transmission Company, by its corporate manager, ATC Management Inc., jointly with ITC Midwest LLC, and Dairyland Power Cooperative (collectively, the "applicants") for approval of a CPCN to allow applicants to construct new 345 kilovolt (kV) electric transmission facilities to be known as the Cardinal-Hickory Creek transmission line (the "Project").  Dkt. 1 ¶ 4.  The CPCN statute, Wis. Stat. § 196.491(3), provides that the Commission shall approve a CPCN for a transmission line project if the applicant demonstrates the project meets the statutory criteria under the statute. The Commission's approval of a CPCN authorizes the applicant to construct the project in compliance with the Commission's final decision, and the authority to exercise eminent domain to acquire property for the project.  Wis. Stat. § 32.03(5)(a).  Once the Commission authorizes the project, its only role moving forward is ensuring that the applicants comply with the terms of the decision and defending its decision if subjected to judicial review.  Wis. Stat. § 196.491(3)(j).

The application at issue in this case was filed with the Commission on April 20, 2018, and pursuant to Wisconsin Statute Section 196.491(3)(g) the Commission had a total of 360 days from when the application was deemed complete to make a decision of whether to approve it. Dkt. 1 ¶ 52.  The application was considered by the Commission through a contested case administrative proceeding.  Dkt. 1 ¶¶ 7-8.  Plaintiffs were granted intervention in the docket on January 3, 2019, presented witnesses and evidence, including filed numerous motions.  Dkt. 1 ¶¶ 7, 37, 45.  After reviewing the record created through the hearings, the Commission held an open meeting on August 20, 2019 to discuss the merits of the application.  Dkt. 1 ¶¶ 7-8, 16.

On September 20, 2019, a month after the open meeting where the Commissioners voted to approve the Project, and only six days before the Commission was to approve its Final Decision, the Plaintiffs filed a motion alleging *for the first time* that Commissioner Huebsch and Commissioner Valcq were biased or had improper *ex parte* communications.  Dkt. 1 Ex. A. Despite having had at least nine months, since at least January 3, 2019, to file such a motion prior to the open meeting, the Complaint conveniently alleges that the appearance of bias or *ex parte* communications was only clear after the Commissioners *voted to approve the application*. Dkt. 1 ¶¶ 16-17.  Yet, beyond the mere fact that the Commission approved the Project against the desires of Plaintiffs, the Complaint does not allege any actual basis for the accusations of bias or lack of impartiality, and the only identified statement made by a Commissioner at the open meeting simply states the Commissioner who was to lead the discussion.  Dkt. 1 ¶ 143.[2]

At the outset, there are no allegations against Commissioner Nowak.  With respect to Chairperson Valcq, the allegations of bias are limited to the fact that she had prior experience as an attorney representing utilities.  Dkt. 1 ¶¶ 55-77, 150.  Specifically, the Complaint alleges that the mere fact she represented a utility company that has a financial interest in an applicant in the case disqualifies her.  Dkt. 1 ¶¶ 58-65, 74-76.  Yet, this information was public knowledge since at least January 7, 2019 when Plaintiffs were already intervenors in the docket.  Dkt. 1, Ex. C at 1-6.  As evidenced by the pleadings in this case, Plaintiffs, despite ample opportunity to do so, have made no attempt to discover and have not alleged, any direct evidence that Chairperson Valcq was substantially or personally involved in the CPCN docket before the Commission.  *See* Dkt. 1 ¶¶ 55-77, 150.

---

[2] It should be noted the "transcript" from the open meeting in which this statement is alleged to be derived is not attached to the Complaint, another example of Plaintiffs' failure to substantiate their factual allegations.

The story is the same with respect to Commissioner Huebsch.  The Complaint alleges *on information and belief* that his participation and membership on the MISO Advisory Committee resulted in the receipt of *ex parte* information and that Commissioner Huebsch was meeting with, communicating with, and/or advising MISO during the pendency of the docket.  Dkt. 1 ¶¶ 151-153.  Again, the pleading lacks any specifics supporting the allegation.  Plaintiffs allege that MISO is the regional transmission organization that operates the high-voltage transmission system in the Midwest states, Manitoba, and a southern region including much of Arkansas, Mississippi, and Louisiana.[3]  MISO intervened and participated in the docket.  Dkt. 1 ¶ 95.  Plaintiffs further allege that Commissioner Huebsch is a member of the Advisory Committee for MISO, and Secretary for the Organization of MISO States (OMS).  Dkt. 1 ¶¶ 81, 106.  Plaintiffs claim that his mere participation in meetings of the Advisory Committee or OMS resulted in bias and/or impermissible *ex parte* communications, despite having no direct or specific basis for making suchallegations of bias or communications.  The most Plaintiffs can muster is that policy issues issues *related* to the issues in the docket were being discussed at these meetings.  Dkt. 1 ¶ 151.

Plaintiffs also allege that existence of a common interest agreement between MISO and applicants somehow affects Commissioner Huebsch's impartiality.  Dkt 1 ¶ 124.  The Final Decision explained that this information was produced in discovery to Plaintiffs five months before Plaintiffs filed their motion with the Commission.  (Final Decision at 81.)  Commissioner Huebsch had been the Commission's representative to MISO for more than four years, and a member of the MISO Advisory Committee for one year.  (Final Decision at 81-82.)  Despite,

---

[3] It should be noted that this is not a complete or accurate description of MISO which operates the regional transmission grid, but for purposes of this motion this brief addresses the facts as alleged by Plaintiffs.

therefore, ample opportunity to discover facts or evidence of *ex parte* communications, Plaintiffs have failed to allege any such specific communications occurred.

In contradiction to Plaintiffs' allegations, both Chairperson Valcq and Commissioner Huebsch submitted statements of objectivity that were incorporated into the Final Decision. (Final Decision at 85-86.)  Plaintiffs have not identified any facts that indicate there is a risk of actual bias like a direct, personal, pecuniary interest in the Project on the part of either Commissioner Huebsch or Chairperson Valcq.

As will be shown below, none of the facts that are alleged in the Complaint are enough to sustain this suit against the Commission or the Commissioners.

## ARGUMENT

## I.  THIS SUIT IS BARRED BY THE COMMISSION'S SOVEREIGN IMMUNITY

### A.  Standard of Review

Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the Complaint, not to decide the merits of the case. *Clarke v. Abele,* 184 F. Supp. 3d 692, 695 (E.D. Wis. 2016), judgment entered, No. 16-CV-208-JPS, 2016 WL 1621933.  The plaintiff bears the burden of establishing that the jurisdictional requirements have been met when lack of jurisdiction is asserted under Fed. R. Civ. P. 12(b)(1). *Id.*  In fact, "[a] federal court must presume that it lacks jurisdiction unless the record affirmatively indicates that it in fact has jurisdiction."  *Golemine, Inc. v. Town of Merrillville, Indiana,* 652 F. Supp. 2d 977, 981 (N.D. Ind. 2009).  While the Court must accept all well-pleaded factual allegations as true and must draw reasonable inferences in favor of the plaintiff, "argumentative inferences favorable to the pleader will not be drawn." *Miller v. Coyhis*, 877 F. Supp. 1262, 1264 (E.D. Wis. 1995) (*citing* 5 Wright & Miller, Federal Practice and Procedure § 1350 at 551 (1969)).

**B.     Sovereign Immunity Bars the Commission from Suit.**

Under Wisconsin law, the Commission enjoys the sovereign immunity protection of the

State.  *Mayhugh v. State*, 2015 WI 77, ¶ 13, 364 Wis. 2d 208, 215, 867 N.W.2d 754, 758.

("Generally, for purposes of sovereign immunity, an action against a state agency or board is

deemed an action against the state.")  Pursuant to the Eleventh Amendment of the U.S.

Constitution, "the U.S. Supreme Court 'has consistently held that an unconsenting State is

immune from suits brought in federal courts by her own citizens as well as by citizens of another

State.'"  *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365,

370 (7th Cir. 2010) (*quoting Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39

L.Ed.2d 662 (1974)).  "[T]he amendment bars actions in federal court against a state, state

agencies, or state officials acting in their official capacities."  *Id.*  This jurisdictional bar applies

regardless of the nature of the relief sought against a state or the state officials. *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984).

Therefore, the Commission must be dismissed from this action because the Eleventh

Amendment bars an action against a state agency pursuant to 42 U.S.C. § 1983.

There are only a few recognized exceptions to sovereign immunity, one of which is "the

limited circumstances identified by the Supreme Court in *Ex Parte Young*, 209 U.S. 123, 28

S.Ct. 441, 52 L.Ed. 714 (1908)."  *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir.

2002).  This limited circumstance only exists when a private party sues a state official in his or

her official capacity[4] and only when the suit seeks declaratory or injunctive, but not monetary,

---

[4] Plaintiffs have not explicitly identified the capacity in which they have sued the Commissioners, and
thus have not provided Defendants sufficient notice of the nature of the claims against them.  With respect
to the Commissioners, however, because Plaintiffs are not seeking damages, but rather declaratory and
injunctive relief, and ultimately seek to vacate the Commission's Final Decision and enjoin the
Defendants from enforcing it, this motion addresses the Commissioners' immunity in their official

relief. *Id.* The Supreme Court has stated that whether the *Ex Parte Young* exception applies requires a court to "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). Therefore, the claims against the Commissioners must be dismissed under the Eleventh Amendment unless the Complaint has established that an exception to their sovereign immunity as state officials applies.

      C.      **The *Ex Parte Young* Exception to Sovereign Immunity Does Not Apply Where There is No Ongoing Violation of Federal Law**

Plaintiffs have identified their claims in Counts I-III as being based on an alleged procedural due process violation. All counts of the Complaint stem from the allegations that two of the Commissioners should have recused themselves. Specifically, Plaintiffs seek declarations that Commissioner Huebsch and Valcq "should have been recused and disqualified" from participating in the docket, that the Commission's Final Decision is void, that the Final Decision violated their rights under the Fifth and Fourteenth Amendments. Dkt 1 at 32, ¶¶ 1-5. Plaintiffs request injunctive relief on this basis. The Seventh Circuit and Supreme Court have held that declaratory and injunctive actions under Section 1983 to remedy procedural due process violations do not allege ongoing violations of federal law as required to apply *Ex Parte Young*. *See Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002); *see also Green v. Mansour*, 474 U.S. 64, 65, 106 S. Ct. 423, 424, 88 L. Ed. 2d 371 (1985) (suit for declaration that state's prior conduct violated federal law was barred under Eleventh Amendment).

---

capacity. The Commissioners reserve their right to assert judicial and qualified immunity from any personal capacity claims should the Plaintiffs identify them as such.

In *Sonnleitner*, a nurse employed by the Wisconsin Department of Health and Family Services filed a "§ 1983 claim for damages against the WDHFS and four . . . supervisors (individually and in their official capacities), alleging that he was deprived of his right to a supervisory position without due process of law." *Id.* at 710.  He alleged that WDFHS had failed to conduct pre-disciplinary hearings for his alleged rule infractions before demoting him.  *Id.* at 709.  The Seventh Circuit found that such due process "allegations against the defendants in their official capacities refer to, at most, a past rather than an ongoing violation of federal law."  *Id.* at 718.  The court reasoned that the constitutional rights violation alleged was not the actual demotion decision, but the fact that it occurred without the appropriate pre- or post-disciplinary proceeding.  *Id.*  The appropriate time to raise such due process claims is when they can be corrected, i.e. during the pendency of the disciplinary proceedings.  *Id.*  Therefore, the Court found the alleged due process violations were not ongoing as required under *Ex Parte Young*.

The same is true of the declaratory and injunctive relief sought by Plaintiffs.  They seek declarations on due process grounds regarding past acts of the Commissioners, including vacating their Final Decision in the docket.  The appropriate time to seek declaratory relief from this Court for such allegations would have been during the pendency of the docket before the Commission when the requested relief could have cured the alleged violations.  *See Sonnleitner* at 718; *see also McKinney v. Pate*, 20 F.3d 1550, 1559 (11th Cir. 1994).   Had the Plaintiffs not waited until after the Commissioners voted to approve the Project and only six days before the Commission issued its Final Decision to even raise the allegations, they may have had an opportunity pursue this action because the proceeding was ongoing.  Their dilatory actions preclude them from seeking the relief sought in their Complaint.

That *Ex Parte Young* is inapplicable is reinforced in situations such as this where the decision does not involve the potential for ongoing enforcement against Plaintiffs.  The Seventh Circuit has required that "a plaintiff must show that the named state official plays some role in enforcing the statute in order to avoid the Eleventh Amendment" under *Ex Parte Young*.  *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir.), cert. denied, 139 S. Ct. 126, 202 L. Ed. 2d 33 (2018).  The *Doe* court found that mere defense of a state statute by a state official does not constitute enforcement.  *Id.* at 976-977.  The same is true of the Commissioners here.  The Commissioners' only role and authority once a CPCN is granted approving a project is to defend their decision in court or enforce the decision's requirements *against the applicants*.  The Commissioners have no authority or enforcement rights, or indeed no power of eminent domain, to exercise against Plaintiffs or Plaintiffs' members.  *See* Wis. Stat. §§ 196.491(3) and Wis. Stat. § 196.02.  In essence, Plaintiffs are asking this Court to prohibit the Commissioners from defending the Commission's decision in court, because this is all that is left to do.  Preventing a state from defending its actions in court (as opposed to seeking to enforce it) is not the type of relief that falls under the exception provided in *Ex Parte Young*.

Past court decisions involving state commissions reinforce this point.  This situation is unlike cases such as *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland* or *MCI Telecommunications Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000)[5] where the decisions made by the respective public service commissions were enforceable against the utilities by the commissions, affected future actions of those utilities, and were actions brought by the utilities subject to the regulation.  Here, it is applicants for the CPCN that will exercise

---

[5] The Seventh Circuit observed that "The challenged determinations are still in place, and the carriers seek to have the commissioners conform their future actions, including their continuing enforcement of the challenged determinations with federal law."

eminent domain authority and build the Project.  The Commissioners' only authority and role

going forward is defense of the Commission's decision, not future enforcement against

intervenors such as Plaintiffs.  This Court should find *Ex Parte Young* does not allow Plaintiffs'

claims against the Commissioners to proceed because there is no ongoing violation of federal

law and no threat of enforcement by the Commissioners against the Plaintiffs.  Because the *Ex*

*Parte Young* exception to sovereign immunity does not apply, the Complaint must be dismissed.

## II.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS COMPLAINT

To the extent this Court finds that this suit can survive the Defendants' sovereign

immunity, it should nonetheless decline from exercising jurisdiction under the *Younger*

abstention doctrine because state proceedings remain ongoing.  *See Younger v. Harris*, 401 U.S.

37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).  The doctrine has been explained as follows:

> Under the Younger abstention doctrine, a federal court <u>is required</u> to abstain from
> enjoining ongoing state proceedings that are: "(1) judicial in nature, (2) implicate
> important state interests, and (3) offer an adequate opportunity for review of
> constitutional claims, (4) so long as no extraordinary circumstances—like bias or
> harassment—exist which auger against abstention." *Majors v. Engelbrecht*, 149
> F.3d 709, 711 (7th Cir.1998) (*citing Middlesex Cnty. Ethics Comm. v. Garden
> State Bar Assoc.*, 457 U.S. 423, 429, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). The
> Younger doctrine "espouses a strong federal policy against federal court
> interference with pending state judicial proceedings absent extraordinary
> circumstances." *Middlesex*, 457 U.S. at 431, 102 S.Ct. at 2521. "The Younger
> principles of abstention apply both to claims based on constitutional challenges,
> as well as to those based on federal preemption challenges."

*Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 907 (C.D. Ill. 2012) (emphasis

added).

The *Chester* case is instructive as to why the doctrine should be invoked in this matter.

In *Chester*, the Chester Bross Construction Company ("Chester") bid on an Illinois Department

of Transportation ("IDOT") project, but Chester was accused of state law violations and a

suspension hearing was initiated by IDOT.  *Chester*, 886 F. Supp. 2d at 900.  The hearing officer presiding over the suspension made findings of fact and a recommendation to IDOT.  *Id.* Chester filed an action in federal court seeking declaratory and injunctive relief challenging the proceedings on, among other claims, Due Process Clause violations.  *Id.*  IDOT asserted sovereign immunity as a defense, but the court determined that the *Ex Parte Young* exception applied to the claim.  *Id.* at 906.

Despite finding it had jurisdiction over the claims, the court in *Chester* determined that abstention was appropriate as to all claims in the complaint.  *Id.* at 909.  The Court applied the *Younger* abstention criteria to the claims and determined that they were satisfied, and that "abstention is appropriate to address the principles of equity, comity, and federalism."  *Id.*  In applying the *Younger* factors, the court found that the first prong of *Younger* was satisfied because the state proceedings remained ongoing (in the form of the suspension proceedings).  *Id.* at 907.  The court recognized that "separate administrative and state-court review proceedings must also be viewed as single ongoing proceedings" for purposes of the first prong of *Younger.* *Id.*  The court found the second prong was satisfied because they involved important state interests, specifically the letting of a public construction project.  *Id.*  The court found the third prong was satisfied because the state proceedings offered a sufficient opportunity to raise the plaintiff's federal constitution claims.  *Id.* at 909.  The court noted that "[f]or the purposes of Younger abstention, the opportunity for subsequent state-court review of an administrative proceeding is considered an adequate opportunity for review of federal claims."  *Id.*  Finally, the court found the fourth prong of *Younger* was satisfied because there was no allegation of extraordinary circumstances such as bias or harassment that would make abstention inappropriate.

Likewise, abstention by this Court is appropriate with respect to Plaintiffs' Complaint because it falls squarely within the *Younger* doctrine.  Under the first prong, the proceedings Plaintiffs complain about remain ongoing.  While the Commission's decision approving the CPCN is final, Plaintiffs' Complaint states they will exercise their state law remedies to obtain judicial review of the Commission's decision.[6]  Because state court review of an administrative decision is considered a single proceeding under *Younger*, the state court proceedings remain ongoing.  *See Younger* at 907.  Prongs two and three of *Younger* are satisfied because the grant of a CPCN to construct a major transmission line such as the Project is self-evidently a matter of important state interest, and the Plaintiffs raised their constitutional claims in the docket, which means they may be addressed in the state court proceedings.  Finally, the fourth prong of *Younger* is satisfied because there are no extraordinary circumstances here involving bias or harassment.  While the Plaintiffs have alleged bias by the Commissioners, there is no allegation that the reviewing state courts are biased or that Plaintiffs have experienced harassment. *Kedrowski v. Madden*, No. 18-CV-2573 (WMW/SER), 2019 WL 4016168, at *3 unpublished slip op. (D. Minn. Aug. 26, 2019) ("To establish that the state tribunal is biased, the litigant must establish that all possible judges are biased.")

Accordingly, if this case is not dismissed for any of the other defects described herein, this Court should abstain from exercising jurisdiction over Plaintiffs' Complaint and dismiss this action.

---

[6] In fact, it is a matter of public record that Plaintiffs have filed petitions for judicial review in Dane, Iowa and Columbia counties, Case Nos. 19-CV-3418, 19-CV-144 and 19-CV-334 respectively, and intervened.

### III.   THE NATURE OF THIS SUIT AS A SECTION 1983 CLAIM ALSO DOOMS THE ACTION

#### A.   The Commission is Not Subject to Suit Under 42 U.S.C 1983 Because it is Not a "Person."

Plaintiffs allege that there were constitutional due process violations that state a cause of action pursuant to 42 U.S.C. § 1983.  Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (West) (herein Section 1983).  Section 1983 "requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, by a *person* acting under color of law." *Odogba v. Wisconsin Dep't of Justice,* 22 F. Supp. 3d 895, 907 (E.D. Wis. 2014) (emphasis original.)  The U.S. Supreme Court has held that a State is not a "person" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989); *see also Odogba*, 22 F. Supp. 3d at 908.   The Supreme Court further stated that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.*, at 66, 109 S. Ct. at 2309.  Therefore, it well-settled law that the State cannot be sued under Section 1983.

The Commission is state agency created for the purpose of regulating public utilities in the State of Wisconsin.  Wis. Stat. § 15.79; Wis. Stat. § 196.02(1).  *See also Odogba,* 22 F. Supp. 3d at 907 (independent agency created under Ch. 15 of Wisconsin Statutes enjoys sovereign

immunity).   As a state agency, the Commission is not a "person" as that term is used in Section

1983.   *Id.* at 907-908.   Accordingly, the Commission must be dismissed from this action.   *See*

*Illinois Dunesland Pres. Soc'y v. Illinois Dep't of Nat. Res*., 584 F.3d 719, 721 (7th Cir. 2009)

(agency was properly dismissed because states are not persons under Section 1983).

> **B.      Plaintiffs Lack Standing Because They Have Failed to Show That They Have Been Deprived of a Protected Interest, Which is a Prerequisite to Establishing the Right to Bring a Section 1983 Claim.**

The discussion above shows that the Commission must be dismissed from this action.

The Commissioners should also be dismissed on sovereign immunity and statutory grounds

because Plaintiffs have failed to establish that an *Ex Parte Young* exception applies.   Even if this

Court concludes that an *Ex Parte Young* exception has been pled, Plaintiffs' claims still fail.

Because this action is a 42 U.S.C. § 1983 action, Plaintiffs must establish two elements in order

to establish standing to assert a violation of its due process rights under Section 1983 against the

Commissioners:   that the conduct complained of was committed by a person acting under color

of state law, and that the conduct deprived a person of rights, privileges, or immunities provided

by the Constitution or laws of the United States.   *New Burnham Prairie Homes, Inc. v. Vill. of

Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990).   "Before a party may assert a due process

argument—procedural or substantive—it must establish that it has a 'legitimate claim of

entitlement' to the right being asserted."   *Id.*   The interests protected by procedural due process

requirements are limited, and, "'apply only to the deprivation of interests encompassed by the

Fourteenth Amendment's protection of liberty and property.'"   *Lucas v. Vill. of La Grange*, 831

F. Supp. 1407, 1411–12 (N.D. Ill. 1993) (*quoting Board of Regents v. Roth*, 408 U.S. 564, 570,

92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)).

Plaintiffs allege that they have been deprived of procedural due process.[7]  Dkt. 1, Count I (entitled "Procedural Due Process").  The Eleventh Circuit has explained that "[w]hether an individual complains that a state lacks constitutionally adequate procedures . . . or asserts that his particular hearing was not fair and impartial, he has raised only procedural due process concerns. *McKinney*, 20 F.3d at 1559.  *McKinney* is instructive for this case because the complained violation of due process is analogous.  The court reasoned that the claim was for a violation of procedural due process because:

> McKinney does not deny that the County followed a facially adequate procedure; in fact, but for his allegations of bias, McKinney acknowledges that there were no failures of process. McKinney's only contentions are that the facially adequate procedure was biased against him and that the Board was preordained to find against him, regardless of the evidence. On its face, then, McKinney's allegation is procedural: the County failed to provide one of the elements of procedural due process—an unbiased decisionmaker.

*Id.* at 1561.

*McKinney* further explained that due process is satisfied when a party has the opportunity to present claims of a biased decision maker during the course of the proceedings.  *Id.* Accordingly, a party must demonstrate that the state has refused to remedy the allegation before it may assert that its procedural due process rights have been violated.  *Id.*

The Supreme Court has recognized the requirement that a party asserting procedural due process rights demonstrate a lack of available state law remedies. *See Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990).  The Seventh Circuit has followed suit, requiring that the unavailability of an adequate state law remedy is an additional factor that must be pled.  *See Figgs v. Dawson*, 829 F.3d 895, 907 (7th Cir. 2016) (finding that state

---

[7] While Plaintiffs assert in Count III that the CPCN statute and process do not provide sufficient due process protections, the Complaint lacks any allegations related to the statute itself or surrounding laws that would support its allegation.

mandamus action was an adequate state law remedy for claim that prisoner was incarcerated past release date); *Schorn v. Larose*, 829 F. Supp. 215, 219 (E.D. Mich. 1993), aff'd, 16 F.3d 1221 (6th Cir. 1994) ("A procedural due process claim must be supported by factual allegations which would support a finding that the state's judicial process does not provide fair procedures which would remedy the wrong alleged, if proved."); *Sterigenics U.S., LLC v. Kim,* 385 F. Supp. 3d 600, 611 (N.D. Ill. 2019) (procedural due process claim based on random or unauthorized conduct of a state actor must demonstrate that the available remedies are inadequate).

Plaintiffs have failed to plead facts showing that they have been deprived of a protected property interest, and have admitted that they have a state law remedy for resolution of their allegations.  Dkt. 1 ¶¶ 174-75.  Plaintiffs plead in their first paragraph of the Complaint that:

> Defendants have deprived plaintiffs of property without due process of law and allowed private entities to exercise eminent domain to take private property for private use in violation of the Fifth and Fourteenth Amendments of the United States Constitution . . .

Dkt. 1 ¶ 1.  However, Plaintiffs have not alleged that any property interest that DALC or WWF owns will be taken, and perhaps more importantly, have not, beyond the first paragraph cited above, pled that condemnation proceedings have been instituted or that any property has been taken or condemned for the Project.  As to DALC, the Complaint states that the Project's right-of-way may "overlap" with a DALC conservation easement, but it does not allege that DALC's property is subject to condemnation.  See Dkt. 1 ¶ 30-32.  With respect to WWF, there is no allegation that it even has property interest, much less any that are subject to condemnation for the Project.  Dkt. 1 ¶¶ 38-41.  The complaint does allege that members of DALC/WWF may own

lands subject to condemnation, but again does not allege that any lands have been condemned or are subject to condemnation.[8]

Under *Danforth v. United States*, 308 U.S. 271, 286, 60 S. Ct. 231, 237, 84 L. Ed. 240 (1939), "[t]he mere enactment of legislation which authorizes condemnation of property cannot be a taking."  A determination by an entity such as a city or state agency that lands are *subject* to condemnation falls under *Danforth's* holding that these are legislative determinations and not takings.  *See Charles J. Arndt, Inc. v. City of Birmingham*, 748 F.2d 1486, 1491 (11th Cir. 1984) (city resolution that an area of city's downtown was a blighted area subject to condemnation was a legislative determination, not a regulation); *see also Clean Wisconsin, Inc. v. Pub. Serv. Comm'n of Wisconsin*, 2005 WI 93, ¶ 138, 282 Wis. 2d 250, 351, 700 N.W.2d 768, 817 ("Even a cursory review of [Wis. Stat. § 196.491(3)(d)] reveals that the PSC is charged with making a number of legislative-type policy determinations when determining if a CPCN should be issued.").

Similarly, the Supreme Court just recently reiterated that "'the act of taking' is the 'event which gives rise to the claim for compensation.'"  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170, 204 L. Ed. 2d 558 (2019) (*quoting United States v. Dow*, 357 U.S. 17, 22, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958).  Without any claim that the government has entered into "possession" of the property or property right, there can be no taking.  *See Dow*, 357 U.S. at 22. Therefore, under the first prong of the analysis for a procedural due process claim, the Plaintiffs have not pled facts that indicate the alleged procedural defect deprived them of any protected property interest.  Because Plaintiffs failed to plead deprivation of a protected interest Plaintiffs have failed to plead standing to bring a Section 1983 claim.

---

[8] This is not surprising given the fact that the Commission's Final Decision was only issued on September 26, 2019.

Plaintiffs' procedural due process claim must also fail because they have not pled facts alleging that the state law remedies for their claims are inadequate. *See New Burnham*, 910 F.2d at 1480 (upholding dismissal of plaintiffs' procedural due process claim on the basis that they had an adequate post-deprivation state remedy in the form of a mandamus action.) Plaintiffs assert in Counts I-III that they have no adequate remedy at law for their claims, but this is provably false. Wis. Stat. § 227.52 provides that "[a]dministrative decisions which adversely affect the substantial interests of any person . . . are subject to [judicial] review" by a state circuit court. Plaintiffs acknowledge as much in the Complaint, stating their intent to pursue state law remedies for review of the Commission's grant of the CPCN. Dkt. 1 ¶ 174. As Plaintiffs allege, they raised their procedural due process claims in the docket and they were addressed by the Commission in its Final Decision. Dkt. 1 ¶ 170. The merits of their claims therefore will be before the state courts. Further, any claims Plaintiffs may be entitled to assert challenging the right to condemn are resolved through the state eminent domain laws under Wis. Stat. ch. 32. *See* Wis. Stat. § 32.05(5) (providing an owner the ability to contest the right of the condemnor to condemn the property for any reason other than that the amount of compensation offered is inadequate). Plaintiffs have adequate state law remedies to assert their procedural due process claims; as such, these claims should be dismissed.

### C.      Plaintiffs' Claims Are Not Ripe

As explained above, Plaintiffs' Complaint contains a fundamental defect: Plaintiffs have not alleged sufficient facts to show that they have been deprived of any property right, and certainly have not pled that the Commission has possessed their property triggering the requirements of the Takings Clause of the Fifth Amendment. Therefore, they have not pled sufficient facts to show that that their claims are ripe to obtain jurisdiction of this court under

*Knick*.  *Knick* is a case involving the Takings Clause of the Fifth Amendment, not the Due

Process Clause.  The Supreme Court in *Knick* held that "a government violates the Takings

Clause when it takes property without compensation, and that a property owner may bring a Fifth

Amendment claim under § 1983 at that time."  *Id* at 2177.  As stated above, this case is

inapposite because a mere legislative act authorizing condemnation is not a taking triggering the

protections of the Fifth Amendment's Takings Clause, and the authorization of condemnation is

not "possessory."  *See Dow*, 357 U.S. at 22.

Even if this Court were to conclude that the Plaintiffs have alleged a takings claim, *Knick*

is of no assistance to Plaintiffs' claim of jurisdiction.  The Plaintiffs have not been denied the

right to seek just compensation, and instead have only attempted to plead procedural due process

violations.[9]  The Supreme Court goes on in *Knick* to state that because "nearly all state

governments provide just compensation remedies to property owners who have suffered a taking,

equitable relief is generally unavailable" for a section 1983 claim under the Fifth Amendment.

*Id.* at 2176.  The Supreme Court simply found in *Knick* that the right to seek just compensation

under the Takings Clause in federal court arises when the property is taken regardless of whether

the plaintiff pursued state court remedies.  *Id.* at 2177; *see also Bay Point Properties, Inc. v.

Mississippi Transportation Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019) (finding that *Knick* held

only that a takings claim is viable in federal court as soon as a government takes his property for

public use without paying for it).

Under this analysis, the claims are also not ripe.  *See Golemine, Inc. v. Town of

Merrillville, Indiana*, 652 F. Supp. 2d 977, at 981 (N.D. Ind. 2009) ("Ripeness is a concern when

a case is based upon future events that may not even occur.").  Ripeness is a question of subject

---

[9] At least one court has held *Knick* to be inapplicable to procedural due process claims.  *See Myers v. Mahoning Twp.*, No. 4:19-CV-01349, 2019 WL 7020410, at *5 (M.D. Pa. Dec. 20, 2019)

matter jurisdiction.  *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008).  To determine whether a claim is ripe, the court looks at the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.  *Golemine*, 652 F. Supp. 2d at 981.  Here, the issue of whether there has been a deprivation of property is not fit for judicial decision because there has been no property taken, and insufficient evidence that any specific property will actually be taken.  The Plaintiffs do not allege their property is currently subject to any condemnation action.  As to the second question, there is no hardship to Plaintiffs for the same reason-no property has been taken.

Plaintiffs have plead only claims for equitable relief in the form of declaratory and injunctive relief, have not had any property taken, and have not been denied the right to seek just compensation.  Therefore, this Court should find that it does not have jurisdiction over Plaintiffs' takings claims because Plaintiffs have failed to show any taking has occurred.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM

As discussed above, this suit is barred because it cannot overcome the Commission's sovereign immunity and because it is entirely based on due process claims that cannot be brought against the State.  Thus, the Court need go no further to dispatch this case.

If that were not enough, this lawsuit should be turned back now because Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted," and the Complaint does not meet the standard.

A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit.  *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).  To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such

that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).

When deciding motions to dismiss, courts must accept the factual allegations as true, *see id.* at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, it must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly*, 550 U.S. at 555.

Moreover, in addition to the basic pleading standards required by Rule 12, the Section 455 cases Plaintiffs see as analogous authority for their disqualification claim underscore that the facts underlying a claim for recusal must be alleged with particularity. *See In re Nicole Energy Servs., Inc.,* 423 B.R. 840, 846 (Bankr. S.D. Ohio 2010) ("Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." )(quoting *Gen. Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1043 (6th Cir.1990)); *Inland Freight Lines v. United States,* 202 F.2d 169, 171 (10th Cir. 1953) (affidavit for federal recusal statute claim must state facts as opposed to conclusions); *Berger v. United States,* 255 U.S. 22,  34, 41 S.Ct. 230, 233, 65 L. Ed. 481 (1921) (mere rumors and gossip are not enough). *See also United States v. Hanrahan,* 248 F. Supp. 471, 475 (D.D.C 1965) (The identifying facts of time, place, persons, occasion and circumstances must be set forth with at least that degree of particularity one would expect to find in a bill of particulars) (citing *Johnson v. United States,* 35 F.2d 355, 357 (W.D. Wash. 1929) , *Morse v. Lewis,* 54 F.2d 1027, 1032 (4th Cir.), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291 (1932); *United States v. Gilboy,* 162 F.Supp. 384, 392-393 (M.D.Pa.1958)).

**A.      Plaintiffs have not pled sufficient facts to state a claim.**

As discussed above, the Plaintiffs have not asserted a claim against "persons" under Section 83.  Also, the entitlement to relief sought in the Complaint is premised entirely on allegations that Commissioners Huebsch and Valcq were biased and lacked impartiality depriving Plaintiffs of their procedural due process rights.  More particularly, the Complaint alleges that the facts demonstrate "at least an appearance of bias and lack of impartiality when the totality of the circumstances is considered."  Dkt 1 ¶ 18.  Plaintiffs claim that such bias or lack of impartiality violated Plaintiffs due process rights under the Fifth and Fourteenth Amendments.  *See* Dkt. 1, Counts 1-2. While Plaintiffs do cite 28 U.S.C. § 455(a), it is clear that it is only to say that Wisconsin's Code of Judicial Conduct mirrors the federal law, and that the Complaint does not allege any federal violations pursuant to 28 U.S.C. § 455(a) against state officials.

But the pleading does not assert sufficient facts to demonstrate any bias or partiality by Commissioners Huebsch and Valcq that could overcome the presumption of impartiality. This is because Plaintiffs have only tried to establish merely the appearance of bias.  That is not the standard for constitutional due process claims.  Because Plaintiffs have not laid a specific foundation of facts that could demonstrate that the probability of *actual bias* of the Commissioners was unacceptably high, their entire Complaint must be dismissed.

The appropriate standard for assessing constitutional due process violation claims based on judicial bias has been stated by the Seventh Circuit:

> [a]lthough "[a] fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955), "most matters relating to judicial disqualification d[o] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). "Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion." *Tumey v. Ohio*, 273

U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927). But recusal is required where the judge has "a direct, personal, substantial, pecuniary interest" in a case. *Id.*

*Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011). In addition, "[r]ecusal also may be required outside of these specific instances if the probability of actual bias is high enough." *Id.* The court in *Suh* further distinguished concerns about an "appearance of bias" by stating that by such claims must have a showing that there was "at least some risk of actual bias based on facts known to the judge at the time." *Id.* at 692.

Moreover, the *Suh* court explained that in cases where the alleged violation is that of a plaintiff's constitutional due process rights, cases involving recusal under 28 U.S.C. § 455 are inapposite. *Id.* This is because § 455 establishes higher standards than the due process clause requires. *Id.*, *see also Davis v. Jones*, 506 F.3d 1325, 1336 (11th Cir. 2007) ("circuits uniformly have concluded that the federal recusal statute establishes stricter grounds for disqualification than the Due Process Clause."); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S. Ct. 1580, 1585, 89 L. Ed. 2d 823 (1986) (allegations of bias and prejudice that are general in nature and do not involve direct, personal, substantial, and pecuniary are insufficient to establish any constitutional due process violation). Therefore, Plaintiffs "objective observer" test derived from § 455 is not the appropriate standard for testing whether the complaint states a claim for a violation of due process, but rather whether Plaintiffs have demonstrated any facts that would show the Commissioners were aware of facts that showed a "high risk" of *actual* bias. *See Suh* at 691-692; *see also State v. Herrmann,* 2015 WI 84, ¶ 46, 364 Wis. 2d 336, 357, 867 N.W.2d 772, 783 (finding the objective due process test for recusal is only satisfied "[w]hen the appearance of bias reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs.)

Despite Plaintiffs' assertion that the mere appearance of bias will suffice, the courts have made clear that "[i]n short, bad appearances alone do not require disqualification." *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (finding that where a judge had no financial interest, had never been subject to any personally insulting, abusive, or even disrespectful remarks by litigants, and did not serve the dual role of prosecutor and judge, no reasons for recusal existed.)

*Del Vecchio* further explained that the Supreme Court's jurisprudence on due process disqualification cases demonstrates that:

> . . . judges for the most part are presumptively capable of overcoming those influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness. The Supreme Court's disqualification cases illustrate this point. The cases requiring disqualification all involved "direct, personal [and] substantial" influences on the judges involved. *Aetna*, 475 U.S. at 822, 106 S.Ct. at 1585. In each of these cases, it is fair to say that the influences involved struck at the heart of human motivation, that an average man would find it difficult, if not impossible, to set the influence aside.

*Id.* at 1373; *see also Hess v. Bd. of Trustees of S. Illinois Univ.*, 839 F.3d 668, 675 (7th Cir. 2016) ("The presumption is a rebuttable one, but the burden of rebuttal is heavy indeed: To carry that burden, the party claiming bias *must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias* is too high to be constitutionally tolerable." (emphasis added). Plaintiffs have failed to lay the specific foundation of prejudice or prejudgment showing the probability of actual bias that is required to state a claim for a violation of constitutional due process requirements.

The Supreme Court has also found that even where administrators performing both investigative and adjudicatory roles on a commission expressed previous opinions related to a matter, such acts did not constitute a violation of due process. *Fed. Trade Comm'n v. Cement*

*Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793, 804, 92 L. Ed. 1010 (1948) (finding the commission

properly refused to recuse itself where members had previously testified before Congress that

industry-wide use of the basing point system before them was illegal).  Similarly, the Supreme

Court has also found that the fact that administrators are exposed to evidence outside the

adversarial proceedings is not sufficient to show a bias or lack of impartiality.  The Court stated:

> The mere exposure to evidence presented in nonadversary investigative
> procedures is insufficient in itself to impugn the fairness of the board members at
> a later adversary hearing. Without a showing to the contrary, state administrators
> "are assumed to be men of conscience and intellectual discipline, capable of
> judging a particular controversy fairly on the basis of its own circumstances."

*Withrow v. Larkin,* 421 U.S. 35, 55, 95 S. Ct. 1456, 1468, 43 L. Ed. 2d 712 (1975) (*quoting*

*United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941).

The Plaintiffs have not overcome their "heavy burden" to rebut the presumption that

Chairperson Valcq and Commissioner Huebsch were impartial decision makers.  With respect to

Commissioner Huebsch, the Complaint appears to allege that his participation in MISO and

OMS subjected him to *ex parte* communications related to the Project.  The Complaint however,

contains no specific facts beyond mere allegations that *ex parte* communications occurred.  To

the extent the allegations invoke claims relating to extrajudicial sources, or information outside

the record in the docket, exposure to such information does not constitute an actionable bias

claim for due process purposes.  As stated above, the standards in 28 U.S.C. § 455 are

inapplicable to the Commissioners and this due process violation Complaint.[10]

Even in the Section 455 cases that Plaintiffs cite as being analogous and instructive

authority for their disqualification claims, the Supreme Court has held allegations such as those

---

[10] This is obvious as they are not federal officials.

made in the Complaint against the Commissioners do not require disqualification.  *See Liteky v.*

*United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994).

The *Liteky* Court explained:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp*., 384 U.S., at 583, 86 S.Ct., at 1710.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.*

Moreover, in addition to the basic pleading standards required by Rule 12, the Section

455 cases Plaintiffs see as analogous authority for their disqualification claim underscore that the

facts underlying a claim for recusal must be alleged with particularity.[11]  *See In re Nicole Energy*

*Servs., Inc.,* 423 B.R. 840, 846 (Bankr. S.D. Ohio 2010) ("Conclusions, rumors, beliefs, and

opinions are not sufficient to form a basis for disqualification.") (quoting *Gen. Aviation, Inc. v.*

*Cessna Aircraft Co.,* 915 F.2d 1038, 1043 (6th Cir.1990)); *Inland Freight Lines v. United States,*

202 F.2d 169, 171 (10th Cir. 1953) (affidavit for federal recusal statute claim must state facts as

opposed to conclusions); *Berger v. United States,* 255 U.S. 22, 34, 41 S.Ct. 230, 233, 65 L. Ed.

481 (1921) (mere rumors and gossip are not enough). *See also United States v. Hanrahan,* 248 F.

---

[11] While these cases all deal with the federal recusal statute's affidavit requirement, they are instructive to the extent that they demonstrate the type of detail that would be required for Commissioners Huebsch and Valcq to be able to respond to the causes of action in Plaintiffs' Complaint.  And, the federal law mirrors the standard under Wisconsin Statute Section 227.46(6) and the Commission's practice and procedure, which also requires a timely and sufficient affidavit.

Supp. 471, 475 (D.D.C 1965) (The identifying facts of time, place, persons, occasion and circumstances must be set forth with at least that degree of particularity one would expect to find in a bill of particulars) (citing *Johnson v. United States,* 35 F.2d 355, 357 (W.D. Wash. 1929) , *Morse v. Lewis,* 54 F.2d 1027, 1032 (4th Cir.), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291 (1932); *United States v. Gilboy,* 162 F.Supp. 384, 392-393 (M.D.Pa.1958)).

The Plaintiffs' obligation is to *lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias* is too high to be constitutionally tolerable. It is evident from examination of the Complaint that Plaintiffs have not alleged any facts that, even assumed true for purposes of this motion, would give rise to finding that Commissioner's Huebsch or Valcq should have recused themselves. The circle of conspiracy in the Complaint is nothing more than a creation of Plaintiffs' imagination. With respect to Commissioner Valcq, Plaintiffs have not asserted any facts that would show she was personally or substantially involved in the docket before the Commission when she was employed either by WEC or as an attorney at a private firm representing WEC. The Complaint includes Commissioner Valcq's recusal statement and professional biography. Commissioner Valcq listed the matters in which she was personally or substantially involved for which she recused herself. Dkt. 1, Ex. C. The docket for the Project was pending before the Commission at the time the recusal statement.

The sole basis alleged to support Plaintiffs' recusal claim against Commissioner Valcq is "[t]he extent of Chair Valcq's relationship with We Energies and WEC Energy Group, which owns more than 60% of ATC, and the lack of any meaningful gap between her representation of We Energies and this case, create at least an appearance of bias and lack of impartiality to a reasonable person that warrants recusal in this particular contested case." Dkt 1 ¶ 150. Therefore, by Plaintiffs' own words they merely allege the facts show at most an appearance of

bias.  As demonstrated by the discussion of the standard for recusal under due process

considerations, mere *appearance* of bias or lack of impartiality without any facts showing risk of

*actual* bias is wholly insufficient for purposes of recusal under due process considerations.  None

of the factors identified in the controlling case law are alleged against Commissioner Valcq-she

had no pecuniary interest, she was not personally attacked by litigants (beyond the late filing of

its motion for recusal), she had no personal connection to the litigants, and there is not even an

allegation that Commissioner Valcq was involved with the Project at all during her previous

employment.  In short, there are no facts alleged that could show Commissioner Valcq had a

strong, direct, personal, or pecuniary interest in the case.  The facts alleged by Plaintiff cannot

establish any risk of *actual* bias by Commissioner Valcq.

It is the same story with respect to Commissioner Huebsch.  As an initial matter,

Plaintiffs' Count 1 alleges that Commissioner Huebsch's duty to avoid *ex parte* communications

arises under Wis. Stat. § 227.50, not the Due Process Clause of the Constitution.  Dkt. 1 ¶ 154.

To the extent the Complaint alleges facts supporting a claim that *ex parte* communications

occurred, such claims should be litigated as state law claims.

Plaintiffs' allegation that Commissioner Huebsch had *ex parte* communications with

MISO related to the Project are mere conclusory allegations based on Plaintiffs' suspicions.

Plaintiff has not produced any supporting documentation that demonstrate such communications.

The fact of Commissioner Huebsch's role as a member of the MISO Advisory Committee and

the fact he attended meetings during the pendency of the docket do not show the existence of any

*ex parte* communications.  There is no allegation that the merits of the docket were discussed,

only that "policy issues" relevant to the docket were on an agenda.  But the Supreme Court has

expressly decided that such "mere exposure" to information is not enough to "impugn

[Huebsch's] fairness." *Withrow*, 421 U.S. at 55.   To the contrary, Commissioner Huebsch has shown himself "to be [a man] of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances." *Id.*  He evidenced his commitment to fairness, candor and the avoidance of the appearance of bias by disclosing an *ex parte* communication sent to him in the docket of which Plaintiffs make no mention.  (Final Decision at 85.)

As the Commission stated in the Final Decision response to the administrative proceedings motion Plaintiffs attached to the Complaint, Plaintiffs cite to no instances of actual *ex parte* communications received by Commissioner Huebsch.  The only example Plaintiffs mention is a general reference to  a public presentation on MISO's work on Storage as Transmission-Only Asset and Non-Transmission Alternatives, presented at the March 20, 2019, MISO Advisory Committee meeting.  (Final Decision at 86.)  Nothing in the motion or the Complaint indicates that the merits of the storage or non-transmission alternative solutions in the proceeding were discussed at that meeting.  *Id.*  Further, there is no allegation in the motion or Complaint that Commissioner Huebsch's assessment of the alternatives to the Project were based on anything other than evidence in the administrative record.  *Id.*  As discussed above, the mere exposure to evidence outside an adversary proceeding is insufficient to impugn the fairness of an adjudicator.  *See Withrow v. Larkin,* 421 U.S. at 55, 95 S. Ct. at 1468.[12]

---

[12] The *Barnich* case out of Illinois does not help Plaintiffs' cause.  *Bus. & Prof'l People for Pub. Interest v. Barnich,* 244 Ill. App. 3d 291, 293, 614 N.E.2d 341, 342 (Ill. App. Ct. 1993).  In that case, an Illinois commissioner made specific calls to identified individuals at a utility for unknown reasons.  In contrast, Plaintiffs allege that Commissioner Huebsch attended the New Orleans meeting because he was on the committee and that a general policy that was discussed in the underlying docket was on the agenda and may have been discussed generally.  There are no allegations that any specific conversations between Huebsch and any particular individual about the docket occurred, nor any allegations about how anything said about the general issues might have affected the Final Decision.

With the *ex parte* claims against Commissioner Huebsch disposed of, there is no other basis to conclude Commissioner Huebsch's participation in MISO or OMS presents the risk of actual bias.  While Plaintiffs alleged they only became aware of Commissioner Huebsch's involvement with MISO after the Commission's open meeting of August 20, 2019, Commissioner Huebsch has had that position for more than four years.  (Final Decision at 81.) Further, his appointment to and participation in the MISO Advisory Committee was also public knowledge for approximately one year before the Final Decision was issued in the docket.[13] This information was not a secret.

More fundamentally, the Complaint completely lacks any reason why participation in these organizations would cause Commissioner Huebsch to have a strong, direct, personal, or substantial interest in the outcome of the proceeding.  *See Del Vecchio*, 31 F.3d at 1373.  There is no allegation that Commissioner Huebsch received compensation for these roles or had a pecuniary interest in either organization.  There is no allegation that he has any sort of personal relationship with any members of these organizations other than as a professional.  There is just no basis presented in Plaintiffs' Complaint from which to conclude that these roles would show that Commissioner Huebsch had a strong, direct interest in the outcome of the proceeding sufficient to support a claim that such participation created a high level risk of *actual* bias.

The Complaint further fails to allege sufficient facts to state a claim for relief because the Compliant reveals that the source of all the claims Plaintiffs allege in this Complaint derive from the Commission's decision to approve the Project.  Plaintiffs' Complaint states in no uncertain terms that when the "Commissioners met for the first time in an open session to discuss and

---

[13] https://www.misostates.org/images/stories/Minutes_Agendas/2018/October_25_2018_Annual_Meeting_Minutes_an d_Agenda.pdf

deliberate on the merits of this contested case [and] . . . [a]t that time, it became fully apparent that PSC Chair Valcq and PSC Commissioner Huebsch had conflicts of interest and had received ex parte information concerning the contested case."  Dkt. 1 ¶¶ 16-17.  In other words, because the Commission ruled against Plaintiffs' interest it must have received *ex parte* information or had conflicts of interest.  Such gamesmanship cannot form the basis of a due process violation for failure to recuse only after receiving an adverse ruling.  As the Supreme Court stated in *Liteky*, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.

Despite basing the entirety of its conspiracy on comments made at the August 20, 2019, meeting, the Complaint only offers as evidence one statement made at the open meeting of the supposed *ex parte* communications and conflicts of interest.  The Complaint alleges that Commissioner Valcq stated that "As Commissioner Huebsch is our delegated Commissioner for MISO and OMS, it makes sense for him to lead the discussion since the project before us is due to MISO's MVP process."  Dkt. 1 ¶ 143. That is the sole allegation in the complaint that offers any insight into what was said at the open meeting that could give rise to Plaintiffs' allegations beyond receiving an adverse ruling.  The other statement cited by Plaintiffs as being made by Commissioner Huebsch in fact occurred *after* the Plaintiffs filed their motion for recusal and *after* he had already reviewed the record and made his decision in the docket, not before.  Dkt. 1 ¶¶ 171-72.  There is simply nothing in these statements that would lead a reasonable person to conclude there is any sort of strong, direct, personal, or pecuniary interest in the outcome of the docket.

Beyond the innocuousness of the alleged statements, the Supreme Court in *Liteky* instructed that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality

challenge." 510 U.S. at 555, 114 S. Ct. at 1157.  Neither remarks alleged by Plaintiffs could

even be reasonably classified as critical, disapproving, or hostile.  Chairperson Valcq's alleged

comment can only reasonably construed as stating who would start the discussion.

Commissioner Huebsch's alleged comment included the source of his opinion wherein he is

alleged to have said to "take a look at the public record," obviously referring to the record for the

proceeding.  Dkt 1, ¶ 172.  The Supreme Court has held that where administrators on a

commission expressed previous opinions related to a matter, such acts did not constitute a

violation of due process.  *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793,

804, 92 L. Ed. 1010 (1948).  Plaintiffs have alleged that Commissioner Huebsch's comment was

*after* his decision on the matter and *in the context of the proceeding*.  An adjudicator expressing

his opinion in a matter in which *he is required to make a decision* and in which he attributes the

source of his belief to the record in the matter cannot reasonably form the basis for recusal under

due process considerations.  It cannot be overstated that Plaintiffs main issue is that they disagree

with the Commission's decision which simply does not support a claim for recusal on due

process grounds.

## CONCLUSION

Based on the foregoing, the Commission and individual Commissioners respectfully

request that this Court grant the Motion to Dismiss Plaintiffs' Claims Pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6).

Dated this 21st day of January, 2020.

By:   s/ Drew S. Jelinski
            Drew S. Jelinski
            Assistant General Counsel
            State Bar No. 1079306

PUBLIC SERVICE COMMISSION OF WISCONSIN
4822 Madison Yards Way, 6th Floor
Post Office Box 7854
Madison, Wisconsin 53707-7854
Drew2.Jelinski@wisconsin.gov
Phone No. 608-267-9229