## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY<br>and WISCONSIN WILDLIFE FEDERATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL HUEBSCH, REBECCA VALCQ,<br>ELLEN NOWAK, and PUBLIC SERVICE<br>COMMISSION OF WISCONSIN,<br><br>Defendants. | No. 19-cv-1007 |

### AMERICAN TRANSMISSION COMPANY LLC AND ATC MANAGEMENT INC.'S BRIEF IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FRCP 24(A) & (B)

### BACKGROUND

On April 30, 2018, ATC, Dairyland Power Cooperative ("Dairyland"), and ITC Midwest LLC ("ITC Midwest") (collectively, the "Co-Owners") filed with the Public Service Commission of Wisconsin ("Commission") an application (the "Application") for a certificate of public convenience and necessity ("CPCN" or "Permit") to construct the Cardinal-Hickory Creek 345-kilovolt ("kV") transmission line project ("Cardinal-Hickory Creek Project" or "Project"). (*See* Decl. of Patrisha Smith in Support of ATC's Motion to Intervene, ¶ 7) (hereinafter "Smith Decl.") The Cardinal-Hickory Creek Project will be a 345-kV transmission line from the Cardinal Substation in Dane County, to the new Hill Valley Substation near Montfort, Wisconsin, and terminating at the existing Hickory Creek Substation in Dubuque County, Iowa. (Smith Decl., ¶ 8)

ATC and ITC Midwest will each own 45.5 percent of the Project, and Dairyland will own the remaining nine percent. (Smith Decl., ¶ 10) In Wisconsin, ATC's ownership interest in the Project is in the Hill Valley Substation, the Cardinal Substation, and the transmission line and

associated facilities between the Hill Valley and Cardinal substations. (Smith Decl., ¶ 11) ATC will construct this portion of the Project and share ownership in this portion of the transmission line with Dairyland. (Smith Decl., ¶ 11) ATC will acquire easements for the portion of the Project that it will own. (Smith Decl., ¶ 12) ITC Midwest and Dairyland will jointly own the remainder of the Project in Wisconsin, and ITC Midwest will be responsible for Project construction and easement acquisition in these areas. (Smith Decl., ¶ 13)

Many parties moved to intervene in the CPCN proceeding after the Co-Owners filed the Application, including the Plaintiffs. (Smith Decl., ¶ 14) The Co-Owners, the Plaintiffs, Commission staff, and other parties to the proceeding subsequently engaged in a substantial amount of pre-hearing discovery; submitted pre-filed written testimony and exhibits into the record; participated in a week-long technical hearing; and submitted post-hearing briefs. (Smith Decl., ¶ 15) At an open meeting held on August 20, 2019, the Commission issued a preliminary, oral decision unanimously approving the Project. (Smith Decl., ¶ 16 & Ex. A)

On September 20, 2019, the Plaintiffs filed a motion with the Commission (the "Recusal Motion") requesting that (1) Chairperson Valcq and Commissioner Huebsch recuse themselves from deliberating the merits of the case, and (2) the Commission refrain from approving the Project. (*See* ECF No. 1, ¶¶ 146-47 & Ex. A (hereinafter, "Compl."); Smith Decl., ¶ 17) In other words, the Plaintiffs waited until <u>after</u> the Commission had ruled against them and orally approved the Project to file their Recusal Motion. Approximately five days later, the Co-Owners filed a response opposing the Recusal Motion. (Smith Decl., ¶ 19 & Ex. B)

On September 26, 2019, the Commission issued its final written decision ("Final Order") approving the Application, issuing a CPCN for the Project, and denying the Recusal Motion.

2

(Smith Decl., ¶ 20)[1] On December 11, 2019, the Plaintiffs filed their Complaint with this Court, alleging that the Defendants violated their constitutional rights by issuing the Final Order and seeking relief under 42 U.S.C. § 1983. (*See* Compl.) Over the next two days, the Plaintiffs and several other parties to the proceedings before the Commission filed petitions for judicial review of the Final Order under the Wisconsin Administrative Procedure Act in various Wisconsin state courts. (Smith Decl., ¶¶ 21-22)

## ARGUMENT

### I.      ATC SHOULD BE ALLOWED TO INTERVENE AS OF RIGHT.

FED. R. CIV. P. 24(a) governs intervention as of right and provides, in relevant part:

> a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> ***
>
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24(a) recognizes a right to intervene when "(1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the name parties inadequately represent that interest." *Wis. Educ. Ass'n Council v. Walker ("WEAC")*, 705 F.3d 640, 657-58 (7th Cir. 2013) (citing *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007)). As set forth below, ATC satisfies all four elements and respectfully requests that the Court allow it to intervene as a matter of right.

---

[1] A copy of the Final Order is attached as Exhibit A to the Motion to Dismiss that ATC is jointly filing in the above-captioned matter, concurrently with this Motion and its Answer to the Complaint.

**A.      ATC's motion is timely.**

Determining whether a motion to intervene is timely is a question "committed to the sound discretion of the district court" and depends on an evaluation of the following factors: (1) the length of time the movant knew or reasonably should have known of their interest in the case; (2) whether any delay in moving to intervene causes prejudice to existing parties; (3) whether the movant would be prejudiced if the motion is denied; and (4) any other unusual circumstances. *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994) (citing *United States v. City of Chicago*, 908 F.2d 197, 199 (7th Cir. 1990)); *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985).

Here, ATC did not delay in filing its Motion. ATC became aware of this action around the time the case was filed with this Court on December 11, 2019. The proceedings in this litigation are still in their early stages, and ATC has filed this Motion well before the parties' discovery conference and the Court's scheduling conference. ATC's Motion is therefore timely.

Moreover, because ATC has not delayed in filing this Motion, there will be no undue prejudice to existing parties from ATC's participation in this case.

Finally, as a co-owner of the underlying Project at issue in the Complaint, and a co-recipient of the CPCN being challenged, ATC has a substantial interest in having the Court uphold the Commission's Final Decision and, as described in more detail below, will be prejudiced if it is not allowed to intervene.

**B.      ATC has a direct, significant, and legally protected interest related to the subject matter of this case.**

ATC's interest in intervening as an intervenor-defendant in support of the Commission's Final Order arises from its direct, significant, and legally protectable interest in the Permit and in building and operating the Project to provide adequate, reliable, and cost-effective electric transmission service to the public. ATC was one of the co-applicants that applied for the Permit

4

the Complaint seeks to overturn and/or enjoin as part of this proceeding. The Complaint challenges not only the Commission's Final Order granting the Permit, but also the sufficiency of the proceedings leading to the Final Order, and ATC was a party to those proceedings.

In similar circumstances, courts have granted motions to intervene, typically as a matter of course. *See, e.g.*, *Sierra Club, Inc. v. Envtl. Protection Agency*, 358 F.3d 516, 517-18 (7th Cir. 2004) (electric company proposing power plant permitted to intervene as of right in lawsuit challenging permit issued for power plant); *Sierra Club v. Jackson*, Case No. 09-CV-751, 2010 WL 547335, at *1 (W.D. Wis. Feb. 11, 2010) (holder of Clean Air Act permit had an interest in lawsuit challenging such permit sufficient to support intervention as of right); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995-96 (10th Cir. 2009) (mining permit-holder permitted to intervene as of right in lawsuit challenging mining permit).

Moreover, the Final Order enables ATC, among others, to (if necessary) exercise eminent domain to acquire lands and interests needed for the Project. *See* Wis. Stat. §§ 32.03(5)(a), 32.07(1). However, Plaintiffs allege that the Co-Owners are not lawfully permitted to exercise eminent domain for the Project:

- "Land may not constitutionally be taken for the [Project] whether or not just compensation is provided." (Compl. ¶ 191.)

- "The [Project] does not have the 'public use' required by the Fifth Amendment, and therefore land may not constitutionally be taken for this project, whether or not just compensation is provided." (Compl. ¶ 195.)

Thus, Plaintiffs claim that will directly impact ATC's legal rights under the Final Order and Wis. Stat. ch. 32. Because Plaintiffs are seeking to invalidate the Permit and are challenging ATC's ability to exercise eminent domain for the Project, ATC has multiple unique interests related to the subject matter of this action. Accordingly, ATC has satisfied the second requirement for intervention as of right.

### C.      Disposition of this case threatens to impair ATC's interests.

As set forth above, ATC has an interest in the Project, the Permit, and its ability to
exercise eminent domain, if necessary, to acquire land for the construction of its portion of the
Project. The Complaint challenges each of these interests. ATC and the Co-Owners cannot
lawfully build the Project without a CPCN from the Commission. Wis. Stat. § 196.491(3) ("[N]o
person may commence the construction of a [high-voltage transmission line] unless the person
has applied for and received a certificate of public convenience and necessity . . ."). If Plaintiffs
prevail on any of their claims in this litigation, ATC may be unable to proceed with the
construction and operation of its portion of the Project, the construction and operation of its
portion of the Project could be delayed, the costs of the Project could increase, and/or the
acquisition of easements for its portion of the Project could be delayed or not occur. (Smith
Decl., ¶ 23) Therefore, denying intervention would impair or impede ATC's ability to protect its
interests. *See, e.g., Jackson*, 2010 WL 547335, at *1 (recognizing that permit holder's interest
could be impaired through resolution of case because operational requirements of permit could
be affected); *WildEarth*, 573 F.3d at 996-97 ("If WildEarth is successful in this litigation,
operation of the West Elk Mine will be impaired, or even halted.").

### D.      The named parties do not adequately represent ATC's interests.

Other parties to this proceeding cannot adequately represent ATC's interests.
Importantly, the Commission is not charged with protecting ATC's interests. *See Planned
Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) (there is a strong
presumption of adequacy where "the representative party is a governmental body charged by law
with protecting the interests of the proposed intervenors") (internal quotation marks and citations
omitted). Instead, the Commission "has jurisdiction to supervise and regulate every public
utility." Wis. Stat. § 196.02. The default rule for intervention as of right is a liberal one, which is

satisfied if the prospective intervenor "shows that representation of [their] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972).

ATC does not doubt the ability of counsel for the Commission to defend the Commission and its Final Order. ATC's interests, however, are not adequately represented because the Commission, as a government agency, has different rights, interests, and obligations than a permit holder like ATC. *See Sierra Club*, 358 F.3d at 518 (allowing private permit-holders to intervene despite participation as defendant by government agency because of potential competing interests and policies); *see also WildEarth*, 573 F.3d at 996 (stating that "the intervenor's showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest").

For example, new, different Commissioners could be appointed during the pendency of this action that decide to try to not to defend the Permit or some portion of it for political or other policy reasons. If this were to occur and ATC were not a full party in this proceeding, ATC's rights and obligations would be impaired. Moreover, because the Commission is a government entity and the individual Commissioners are political appointees, they might choose not to make certain arguments or produce certain evidence for political and/or internal policy reasons that ATC, as the Permit-holder, might want to present.

Plaintiffs are also asserting claims that directly challenge ATC's potential exercise of eminent domain for the Project. The Commission will not be the condemnor for the Project; rather, if condemnation is required on ATC's segment of the Project, ATC will pursue condemnation under Wis. Stat. ch. 32. As such, ATC has a substantial interest in defending its

ability to exercise eminent domain, and this interest is separate and distinct from any interest the Commission has in this litigation.

Similarly, to the extent Plaintiffs assert that the participation of only one Co-Owner is sufficient to represent the interests of the other Co-Owners, such an argument should also be rejected. Plaintiffs challenge the ability of each Co-Owner to exercise eminent domain, and each of these entities should be allowed to fully defend their own rights.

Because the Commission, the individual Commissioners, and the other Co-Owners do not adequately represent the multiple interests ATC has in this action, ATC has established the fourth and final requirement for intervention as of right. Accordingly, ATC respectfully requests that the Court grant its Motion.

## II.     IN THE ALTERNATIVE, ATC REQUESTS PERMISSIVE INTERVENTION.

Alternatively, a person may seek permissive intervention upon filing a timely motion showing a shared claim or defense with the main action. FED. R. CIV. P. 24(b)(1)(B). In determining whether to grant permissive intervention, the court considers the prejudice to the original parties and the potential for slowing down the case. *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986-87 (7th Cir. 2001).

As set forth above, ATC has satisfied the requirements for intervention as of right. In the alternative, however, ATC requests that it be allowed to permissively intervene because ATC has a defense that shares a common question of law or fact with Plaintiffs' claims and because ATC's intervention will not unduly delay the case or prejudice the existing parties. *See* FED. R. CIV. P. 24(b); *see also Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995); *Emerson Hall Assoc., L.P. v. Travelers Casualty Ins. Co. of America*, No. 15-cv-447, 2016 WL 223794, at *1 (W.D. Wis. Jan. 19, 2016). The interests of ATC that share a common question of law or fact with Plaintiffs' claims are described above, in Section I(B). Further, as discussed in

8

Section I(A), ATC's Motion is timely and this case is in its early stages; as such, ATC's intervention will not unduly delay the case. With respect to prejudice against existing parties, ATC's participation would have no such prejudice because Plaintiffs have already put ATC's interests directly at issue in their Complaint. *See Emerson Hall*, 2016 WL 223794, at *2 (allowing a third party to intervene where its stated interests were "already at issue in this case").

There are also practical reasons to allow ATC to intervene. As a Defendant in this case, ATC may be generally aligned with the Commission, but as one of the recipients of the CPCN, ATC is in the best position to explain, among other things, details related to its portion of the Project; whether it has had or has a relationship with Chairperson Valcq,[2] WEC Energy Group and Wisconsin Electric Power Company (which go directly to the Plaintiffs' allegations in their Complaint); and how the present action could impact the general public and ATC's business and other legally protectible interests. In these ways, ATC possesses unique knowledge regarding the Commission's actions that the Complaint challenges.

## CONCLUSION

For the reasons stated above, ATC respectfully requests that this Court grant its motion to intervene as of right. In the alternative, and at a minimum, ATC requests to be allowed to permissively intervene.

[*The remainder of this page is intentionally left blank*]

---

[2] In fact, Commissioner Valcq has never been employed by ATC or served as outside counsel for ATC on any matters. (Smith Decl., ¶ 18)

9

DATED: January 24, 2020                    Respectfully submitted,

                                           PERKINS COIE LLP

                                           */s/ Brian H. Potts*
                                           **Brian H. Potts**
                                           State Bar. No. 1060680
                                           Email:  BPotts@perkinscoie.com
                                           **David R. Zoppo**
                                           State Bar No. 1094283
                                           Email: DZoppo@perkinscoie.com
                                           **Mary N. Beall**
                                           State Bar No. 1115830
                                           Email:  MBeall@perkinscoie.com

                                           Perkins Coie LLP
                                           33 East Main Street, Suite 201
                                           Madison, WI 53703-5118
                                           Tel: (608) 663-7460
                                           Fax: (608) 663-7499

                                           *Attorneys for Intervenor-Defendants*
                                           *American Transmission Company LLC and*
                                           *ATC Management Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I electronically served the forgoing document on all counsel of record registered for electronic filing in the above-captioned proceeding by filing the same with the Clerk of Court using the Court's ECF system.

*/s/ Brian H. Potts*
Brian H. Potts, SBN 1060680

*Attorney for Intervenor-Defendants*
*American Transmission Company LLC and*
*ATC Management Inc.*