IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DRIFTLESS AREA LAND
CONSERVANCY, & WISCONSIN
WILDLIFE FEDERATION,

                        Plaintiffs,                        OPINION AND ORDER

    v.

                                                   19-cv-1007-wmc

MICHAEL HUEBSCH, REBECCA
VALCQ, ELLEN NOWAK, & PUBLIC
SERVICE COMMISSION OF WISCONSIN,

                        Defendants.

---

Claiming violations of the United States and Wisconsin Constitutions, plaintiffs Driftless Area Land Conservancy ("Driftless") and Wisconsin Wildlife Federation ("WWF") seek to challenge the approval of a permit by the Public Service Commission of Wisconsin ("the Commission") and its three Commissioners, for a transmission line to run through the Driftless area of southwestern Wisconsin and into northeastern Iowa.[1] The three private entities who were awarded the permit -- American Transmission Company, LLC ("ATC"), ITC Midwest ("ITC"), and Dairyland Power Cooperative ("DPC") (collectively, "the Developers") -- have now each moved to intervene. (Dkts. #10, 23,

---

[1] The "Driftless Area" is a region in southwestern Wisconsin, southeastern Minnesota, northeastern Iowa, and the extreme northwestern corner of Illinois, of the American Midwest. The region escaped the flattening effects of glaciation during the last ice age and is consequently characterized by steep, forested ridges, deeply carved river valleys, and karst geology characterized by spring-fed waterfalls and cold-water trout streams. Around 85% of the Driftless Area lies within Wisconsin, comprising much of the southwestern quarter of the state. "Driftless Area," https://en.wikipedia.org/wiki/Driftless_Area (last visited February 18, 2020).

28.)[2]  For the reasons discussed below, the court will deny the Developers' intervention motions, subject to renewal if, going forward, a conflict actually emerges that the defendants are no longer adequately representing their interests.

BACKGROUND

In April of 2018, the Developers all filed an application with the Commission for a permit to construct a transmission line.  The line is planned to run from Dane County, Wisconsin, through Montfort, Wisconsin, terminating in Dubuque County, Iowa.  ATC and ITC are each slated to own 45.5% of the line, with DPC owning the remaining 9%.

Plaintiffs Driftless and WWF opposed the Developers' permit application and intervened in the case before the Commission.  A contested case proceeding followed, at which Driftless, WWF, and others presented expert testimony, conducted discovery, and participated in a week-long, administrative hearing pursuant to Wis. Stat. §§ 196.491(3)(b), 227.01(3)(a), & 227.44.  On September 26, 2019, the Commission issued a final decision approving the Developers' permit for the transmission line pursuant to Wis. Stat. § 196.491(3)(d).  This decision authorizes the Developers to invoke the power of eminent domain and condemn certain property to construct the transmission line.  *See* Final Decision, Public Service Commission of Wisconsin, PSC Ref. # 376391 (Sept. 26, 2019).

---

[2] Also before the court are the Developers' three motions for leave to file reply briefs in support of their motions to intervene (dkts. #44, 45, 48), and the plaintiffs' opposition to these filings or, in the alternative, a request to file their own sur-reply (dkt. #46).  The court grants the Developers' motions for leave to file reply briefs, and has considered those replies in deciding the present motions, but will deny plaintiffs' request to file a sur-reply as moot.

On December 11, 2019, Driftless and WWF filed suit in this court, alleging that the Commission and its three Commissioners "deprived plaintiffs of property without due process of law and allowed private entities to exercise eminent domain to take private property for private use in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, §§ 1, 9, and 13 of the Wisconsin Constitution." (Compl. (dkt. #1) ¶ 1.) More specifically, they allege that two of the Commissioners -- Rebecca Valcq and Michael Huebsch -- had conflicting relationships with the Developers and related entities, and should have recused themselves from participating in the permitting decision. On January 24, 2020, each of the Developers separately filed motions to intervene in the case (dkts. #10, 23, 28), which plaintiffs oppose (dkt. #40).

OPINION

I. Intervention as of Right under Rule 24(a)

Under Fed. R. Civ. P. 24(a)(2), a court *must* permit intervention when: "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995) (citing Fed. R. Civ. P. 24(a)(2)). While "[t]he proposed intervenor has the burden of establishing all four elements," *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) (citing *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001)), plaintiffs do not, and indeed could not

3

reasonably, dispute the existence of the first three elements. (*See* Pls.' Opp'n (dkt. #40) 3.) Therefore, the motions to intervene as a right turn entirely on whether the Developers have proven that the existing defendants do not adequately represent their interests.

As an initial matter, the parties dispute what standard of proof should be applied to this element. The Seventh Circuit has "recognized three standards for the adequacy of representation under Rule 24 depending on the context of each case." *Planned Parenthood*, 942 F.3d at 799.

> The default rule is a liberal one: The requirement of the Rule is satisfied if the applicant shows that representation of his interest may be inadequate. Where the prospective intervenor and the named party have the same goal, however, there is a rebuttable presumption of adequate representation that requires a showing of some conflict to warrant intervention. This presumption of adequacy becomes even stronger when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors; in such a situation the representative party is presumed to be an adequate representative unless there is a showing of gross negligence or bad faith.

*Id.*

Not surprisingly, plaintiffs contend that the "gross negligence or bad faith" standard applies because (1) the Developers and the defendants have the same goal *and* (2) the Commission is a governmental body charged with protecting the interests of the Developers. (Pls.' Opp'n (dkt. #40) 3-4.) In contrast, the Developers maintain that the Commission is *not* charged by law to protect their interests and, therefore, this highest standard of proof is inapplicable. (ATC Br. (dkt. #11) 6; ITC Reply (dkt. #44-1) 2-3; ATC Reply (dkt. #45-1) 2-3; DPC Reply (dkt. #48-1) 1-2.) Indeed, they argue that the lowest or liberal default standard applies here because the Developers and the current

4

defendants do not share the same goals. (ATC Br. (dkt. #11) 6-7; ITC Reply (dkt. #44-1) 2-4; ATC Reply (dkt. #45-1) 3-5; DPC Reply (dkt. #48-1) 2.)

As to the latter argument, Seventh Circuit case law effectively dictates a finding that the Developers *do* share the same goal as the defendants. In *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640 (7th Cir. 2013) ("*WEAC*"), the Seventh Circuit concluded that the defendant and the proposed intervenor "share[d] the same goal: protecting Act 10 against the Unions' constitutional challenge." *Id.* at 659; *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 508 (7th Cir. 1996) ("The interest of the Corps of Engineers and of the would-be intervenors in this litigation instituted by SWANCC is the same: to defeat SWANCC's effort to invalidate the denial of the permit.") Here, the filings by the defendants and the Developers confirm their shared goal as well: uphold the Commission's final decision approving a permit for the transmission line. In particular, both have filed motions to dismiss arguing just that. (*See* Defs.' Mot. to Dismiss (dkt. #6) 1-2; Proposed Intervenors' Mot. to Dismiss (dkt. #16) 1.) As such, the liberal default standard is plainly inapplicable.

Whether or not the Commission is "charged by law" to protect the Developers interests is a closer question. Plaintiffs argue that "case law does not require that a government body be charged with protecting the proposed intervenor's *specific* interests"; rather, the question is "whether the government body is charged with defending the interests shared by the named defendant and proposed intervenor." (Pls.' Opp'n (dkt. #40) 6 (emphasis added).) The Developers each offer different arguments in response. First, ATC points out that Wis. Stat. § 196.02 charges the Commission with "supervis[ing]

5

and regulat[ing] every public utility in this state." (ATC Reply (dkt. #45-1) 3.) Since all three of the Developers are public utilities, ATC argues, "the Commission cannot be charged by law with protecting ATC's interests if its statutory duty is to supervise and regulate it." (*Id.*) Second, ITC argues that the highest standard only applies where plaintiffs are able to point to a specific statute *charging* the Commission with protecting the Developers' interests; because plaintiffs point to no such statute, the heightened standard does not apply. (*See* ITC Reply (dkt. #44-1) 3.) Finally, DPC simply argues that the Commission "has no legal obligation to defend its permits." (DPC Reply (dkt. #48-1) 2.)

The case law cited by the parties does not expressly support or reject any of the Developers' proffered positions. For example, plaintiffs argue that the highest standard applies under the Seventh Circuit's decision in *American National Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144 (7th Cir. 1989). In that case, the Seventh Circuit concluded that a labor union that wanted to intervene to defend a city ordinance prohibiting developers from using polyvinyl chloride piping in an urban renewal project was adequately represented by the named defendant, the City of Chicago. *Id.* at 145-46. The court found that the union was presumed to be adequately represented by Chicago because the City was "charged with the duty of defending the City's interests under both state and local law" and had thus far zealously defended its ordinance. *Id.* at 148. Although the court denied the union's intervention motion in *American National*, that decision does not, as plaintiffs urge, necessarily establish that the same "gross negligence or bad faith" standard should be applied in this case. In fact, this heightened standard was not even expressly articulated until nearly *two decades* after *American National* was decided, which is

6

why the decision contains no specific mention of the standard. *See Planned Parenthood*, 942 F.3d at 807 (Sykes, J., concurring) (discussing the origin of the gross negligence and bad faith standard) (citing *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)).

For its part, proposed-intervenor ITC cites to *WEAC*, in which the Seventh Circuit considered allowing municipal employees to intervene as defendants in a challenge to a state law that, among other things, prohibited most public employers from deducting union dues from employee paychecks. 705 F.3d at 657-58. In *WEAC*, the court concluded without discussion that the named defendant -- the State of Wisconsin -- was *not* charged by law with protecting the interests of these municipal employees and, therefore, declined to require them to meet the highest or "gross negligence and bad faith" standard of proof before being allowed to intervene. *Id.* Even so, the cursory treatment of the appropriate standard of proof in *WEAC* provides no explanation as to why the employees were not considered protected by Wisconsin's overall duty to act in the public interest of its citizens or, more generally, when a governmental body *is* "charged by law" to protect the interests of a prospective intervenor.

Perhaps the most compelling argument for the application of the middle or "some conflict" standard (over the heightened "gross negligence or bad faith" standard) is Wis. Stat. § 196.02, which, as previously discussed, indicates that the Commission's role is to *regulate*, rather than protect, the interests of public utilities such as the Developers.

Even if the Commission is not "charged by law" to protect the interests of the Developers, however, they have failed to show that their interests are inadequately represented by the named defendants under the more lenient "some conflict" standard.

7

While the Developers' three briefs all recite the same line -- to the effect that the Commission has "different rights, interests, and obligations than a permit holder," such as ATC, ITC, and DPC (ATC Br. (dkt. #11) 7; ITC Br. (dkt. #24) 8; DPC Br. (dkt. #28) 8) -- none specify how any of these different rights, interests, or obligations create a "conflict" between the named defendants and the Developers with respect to the issues likely to be before the court in this case, as is required to overcome the rebuttable presumption of adequate representation recognized in *Planned Parenthood* as the "middle" burden of proof.

In fairness, all three Developers emphasize that the named defendants will not actually exercise eminent domain for the project; rather, it will be the Developers who must pursue condemnation. (ATC Br. (dkt. #11) 7-8; ITC Br. (dkt. #24) 9; DPC Br. (dkt. #28) 8-9.) This, however, creates no conflict because the Developers' right to exercise eminent domain is *directly* tied to the permit issued by defendants. *See* Wis. Stat. § 32.03(5)(a) (providing that an electric utility must have a certificate of public convenience and necessity from the PSC to condemn property). Thus, in seeking to uphold the permit decision, the Commission and the Commissioners will effectively be defending the Developers' right to exercise eminent domain in constructing the transmission line. Ultimately, when and whether the Developers should exercise those condemnation rights is not among the issues at all likely to come before this court, at least in this case. Moreover, showing that the named defendants and the Developers have different motivations in defending the case is not sufficient to show a conflict. *See Am. Nat'l Bank*, 865 F.3d at 148 (differing "political considerations" between City and prospective intervenor not enough to make requisite "concrete showing of inadequacy of

representation"); *Keith v. Daley*, 764 F.2d 1265, 1270 (7th Cir. 1985) (proposed intervenor's different political and moral justifications for defending a statute regulating abortion did not create conflict sufficient to rebut presumption of adequate representation).

Proposed-intervenor ATC also points out in its reply brief that the Developers' and the named defendants raise different arguments in their respective motions to dismiss, suggesting that this evinces a "conflict." (ATC Reply (dkt. #45-1) 6.) Specifically, ATC notes, the defendants argue that this court should abstain from interfering in pending state law proceedings, while the Developers "want a final outcome as soon as possible," and thus, make no such argument. (*Id.*) In addition, ATC observes, the Developers -- but not the defendants -- argue the permit should still be upheld even if plaintiffs establish that *one* of the named Commissioners had a conflict requiring their recusal from voting on it, since two of the three were necessary to approve the permit. (*Id.*) However, as this court noted in *WEAC*, "quibbles" over litigation strategy are not enough to show that "some conflict" exists. *See* 705 F.3d at 659; *see also One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015). And that the Developers propose to make different arguments than the defendants is not enough to demonstrate that the Developers are not adequately represented by the defendants already named in this suit.

In addition, proposed-intervenor ATC argues that the make-up of the Commission might change during the course of the litigation, and that it might "decide to try not to defend the permit or some portion of it for political or other policy reasons." (ATC Br. (dkt. #11) 7.) Indeed, Wis. Stat. § 196.39 provides that the Commission may even reopen

9

a permit order "at any time" and "for any reason." (ATC Reply (dkt. #45) 5.) Although the court is sympathetic to this concern, the Seventh Circuit has suggested that the proper way to address a hypothetical, future conflict is for the proposed intervenor to file a "standby" application for leave to intervene. *See Solid Waste*, 101 F.3d at 509. Such a procedure appropriately "defer[s] consideration of the question of adequacy of representation until the applicant is prepared to demonstrate inadequacy," without "expos[ing] the applicant for intervention to charges of foot-dragging that doom as belated the usual post-judgment application to intervene." *Id.* Such a motion would be readily granted here without further briefing should the Developers wish to protect their potentially valid, but as yet speculative, concerns. *See Flying J., Inc. v. Van Hollen*, 578 F.3d 569, 573-74 (granting intervention as a right to appeal adverse decision where government chose not to defend constitutionality of statute on appeal).

Finally, the other cases relied on by the Developers are unpersuasive. They cite to *Sierra Club, Inc. v. EPA*, 358 F.3d 516 (7th Cir. 2004), but that case is readily distinguishable. There, the court allowed a private utility company to intervene to defend a permit issued to it by a state agency where the named defendant was the *federal* EPA. *Id.* at 518. In contrast, the original state agency that issued the permit is a *named* defendant in this very suit. The second case cited by the Developers -- *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992 (10th Cir. 2009) -- is closer factually, but that decision is obviously not binding on this court *and* appears inconsistent with the Seventh Circuit's reasoning. In *Wild Earth*, the Tenth Circuit permitted a private corporation to intervene to defend a mining permit that had been issued to it by the U.S. Forest Service, even

though the Forest Service had been named as a defendant in the case. *Id.* at 996. The court reasoned that "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id.* (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001)). However, in *Solid Waste*, the Seventh Circuit rejected the contention that a governmental body's representation in a suit is inadequate due to the fact that it has additional interests stemming from its status as a representative of the public interest. 101 F.3d at 508 ("More is needed than a presumption of inadequacy based on the diversity of the Department's interests . . . ."). At least, where the *ultimate* goal of the named defendants and the proposed intervenors is the same, a showing that there "may be" some conflict is insufficient; instead, the proposed intervenor must "show a concrete, substantive conflict or an actual divergence of interests to overcome" the "presumption of adequate representation." *See Planned Parenthood*, 942 F.3d at 810 (Sykes, J., concurring) ("When the intervenor's and the named party's ultimate goals are identical . . . the intervenor [has] a heightened burden to show a *concrete, substantive* conflict or an *actual* divergence of interests to overcome it.") (emphasis added); *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 962 (E.D. Wis. 2009) (no inadequate representation of interests where defendant's interests "could conceivably differ" but proposed intervenor failed to demonstrate "that any current conflict exists").

Because the named defendants and the proposed intervenors have the same goal -- to uphold the Commission's permit decision and dismiss the present lawsuit -- there exists a rebuttable presumption of adequate representation. *Planned Parenthood*, 942 F.3d at 799.

Moreover, because the Developers have not demonstrated an actual conflict between themselves and the named defendants, they have not overcome this presumption, and their motions to intervene as a matter of right under Rule 24(a) must be denied at this time. *Id.* Nevertheless, this denial will be without prejudice, and the court will readily grant the Developers' motions to be treated as "standby" applications for leave to intervene in the future, if the Developers are able to show that some conflict between the defendants and themselves has actually emerged.

**II. Permissive Intervention under Rule 24(b)**

The Developers alternatively argue that the court should allow them to intervene as a matter of discretion under Fed. R. Civ. P. 24(b), which provides that a court *may* permit an applicant to intervene in the exercise of its own discretion when (1) the motion is timely and (2) the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The Rule requires the court to consider 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights,' Fed. R. Civ. P. 24(b)(3), but otherwise does not cabin the district court's discretion." *Planned Parenthood*, 942 F.3d at 803.

The Developers' proposed defense obviously involves a common question of law and fact to the main action here, and their motions are certainly timely, coming less than two months after the original case was filed and before the court has even held a preliminary pretrial conference. But because the Developers' intervention is likely to delay and prejudice the litigation moving forward by unnecessarily complicating it, without offering any evident benefit, permissive intervention will be denied.

Again, the cases cited to by the Developers to support their permissive intervention are unhelpful. First, in *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir. 1995), the court focused on the fact that a "denial of intervention would in all likelihood have created additional litigation and the possibility of conflicting results." *Id.* Not only is this unlikely to be the case here, the addition of three new sets of attorneys, who have already demonstrated a penchant for excessive independence from each other, much less the lead defendants, and an abundance of creativity in what are straightforward questions of law and fact. Moreover, the Developers have not indicated that they could bring any claims or defenses independent of the ones that are already being litigated in the present parties. The other case cited by the Developers -- *Emerson Hall Assoc., L.P. v. Travelers Casualty Ins. Co. of America*, No. 15-cv-447, 2016 WL 223794 (W.D. Wis. Jan. 19, 2016) -- involved a proposed intervenor that sought to assert a different but related claim against the plaintiff, who did not oppose the intervention. *Id.* at *1. Here, the Developers again do not propose any unique claims, and the plaintiffs here *do* oppose intervention.

Proposed-intervenor ATC also argues that there are so-called "practical reasons" to allow its intervention, including that: it may be in the best position to explain "details related to its portion of the Project; whether it has had or has a relationship with Chairperson Valcq, WEC Energy Group and Wisconsin Electric Power Company . . . ; and how the present action could impact the general public and ATC's business and other legally protectible interests." (ATC Br. (dkt. #11) 8-9; ATC Reply (dkt. #45-1) 9-10.) However, details about the project and the impact of the action on the public and on ATC

are not directly relevant to the claims brought in this case. As plaintiffs point out, ATC Chairperson Valcq is also a named defendant in this case, and one would assume to have the same, if not better, information about *her* relationship with ATC and the other proposed intervenors. (Pls.' Opp'n (dkt. #40) 12.) Finally, the present parties could obviously seek discovery of the proposed intervenors and others to the extent actually relevant to the current action. Accordingly, any unique knowledge that ATC proposes to bring to this case is limited.

Regardless, the delay and ultimate prejudice that would be imposed on the existing parties by allowing *three* intervenors will almost certainly and needlessly complicate and delay this case. For example, the Developers' combined briefing on these intervention motions alone exceeded fifty pages, much of which involved duplicative arguments and case citations. As the Seventh Circuit has emphasized, "Rule 24(b) is just about economy in litigation." *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011). Similarly, in *One Wisconsin*, this court denied permissive intervention where "adding the proposed intervenors could unnecessarily complicate and delay all stages of this case: discovery, dispositive motions, and trial." 310 F.R.D. at 399; *see also United States v. 36.96 Acres of Land*, 754 F.2d 855, 860 (7th Cir. 1985) (upholding district court's denial of permissive intervention "in order to avoid the likelihood of undue delay and prejudice to the rights of the original parties" and to avoid prolonging "an already lengthy and tired lawsuit"). Thus, the court will exercise its discretion to deny the Developers' motions to permissively intervene.

ORDER

IT IS ORDERED that:

1) The proposed intervenors' motions to intervene (dkts. #10, 23, 28) are DENIED, but may be renewed if a concrete, substantive conflict or actual divergence of interests should emerge such that they are no longer adequately represented by the named defendants in this case. Similarly, the proposed intervenors' prospective, joint motion to dismiss (dkt. #16) is STRUCK as moot.

2) The proposed intervenors' motions for leave to file reply briefs (dkts. #44, 45, 48) are GRANTED.

3) Plaintiffs' request to file a sur-reply (dkt. #46) is DENIED as moot.

4) Plaintiffs may have until March 3, 2020, to submit any opposition to defendants' motion to dismiss (dkt. #6). Defendants' may have until March 13, 2020, to submit their reply.

Entered this 18th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge