IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DRIFTLESS AREA LAND
CONSERVANCY, *et al.*,

             Plaintiffs,

v.

MICHAEL HUEBSCH, *et al.*,

             Defendants.

SEALED ORDER

19-cv-1007-wmc

---

Before the court is plaintiffs' motion to revoke defendant Michael Huebsch's confidentiality designation for six pages of documents produced during discovery, specifically PSCW_010650-55. *See* dkt. 82. Defendants oppose the motion (dkt. 88) and plaintiffs have declined the court's offer of a reply (dkt. 92). Plaintiffs support their motion with 18 pages of argument and 16 exhibits (dkt. 86), countered by defendants' 25-page response. I have read and considered everything that the parties have submitted. I conclude that the documents are not confidential, but plaintiffs are not free to disseminate them publicly at this juncture in the lawsuit.

I. The Documents Are Not Confidential

This lawsuit arises out of plaintiffs' claim that on September 26, 2019, the Public Service Commission improperly approved the April 20, 2018 application by ATC, ITC Midwest and Dairyland Power Coop for a Certificate of Public Convenience and Necessity for the Cardinal-Hickory Creek transmission line through the Driftless Area. Among other things, plaintiffs allege that Commissioner Huebsch had conflicts of interest, had received ex parte information about this contested case, and had at least an appearance of bias and lack of impartiality under the totality of circumstances.

The disputed documents are screen shots of text messages between Huebsch and Brian Rude in 2018,[1] and screen shots of text messages between Huebsch and John Garvin in 2019 and 2020. *See* Plaintiffs' Exh. A, dkt. 86-1. Rude was a senior executive at Dairyland and Garvin was a senior executive at ATC and a registered lobbyist for ATC Management, Inc. The texts are primarily–but not exclusively–about getting together for golf and other social events, with a vague round of well-wishing in the mix. Huebsch did not use his official email account to communicate with Rude or Garvin.

On September 18, 2020, the court accepted and entered the parties' jointly-submitted protective order, dkt. 79. This order provides that

> a. The term "Confidential Information" means any document, writing or tangible thing of any type that contains information that is (a) not generally known by or available to members of the public and contains proprietary business, commercial, or financial information, such as trade secrets, business plans, customer information, pricing and profit information, personnel information/records, or similar information; or (b) protected by the right to privacy under any state or federal constitutional provisions, or any similar statue, rule or regulation. This definition is not intended to expand or restrict the scope of information protected under Fed. R. Civ. P. 26[c].[2]
>
> b. "Confidential Information" may mean and include any document, portions of documents, information or other things furnished by any party, including third parties . . .. Information originally designated as "Confidential Information" shall not retain that status after any ruling by this Court denying such status to it.
>
> Dkt. 79 at 2.

---

[1] Apparently, defendants already have produced some other text messages between Huebsch and Rude during this same time period but did not label them confidential. *See* Plaintiffs' Exh. B, dkt. 86-1.

[2] Rule 26(c) provides in part that "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

2

The protective order provides that when a party challenges its opponent's designation of a document as confidential, "the burden of demonstrating that the information is Confidential Information shall be on the designating party." *Id.* at 8.

Defendants' main arguments in support of confidentiality essentially factor down to proportionality: the disputed texts are sufficiently irrelevant and sufficiently personal to merit protection. This is unpersuasive. First, the texts are not sufficiently personal to merit protection. Period. Their contents do not really fit into any of the categories listed in the protective order, and none of the messages would, if revealed, subject Huebsch to the sort of annoyance, embarrassment, or oppression covered by Rule 26[c]. Absent context, the texts are nothing more than a mundane set of messages between friends. Second, the emails are relevant to plaintiffs' claims and therefore were properly turned over by defendants. One of plaintiffs' key contentions is that Huebsch, Rude and Garvin *were* friends who were chumming around while the hotly-contested CPCN advocated by Rude and Garvin was in front of Huebsch and the PSC. Put another way, it would have been improper for defendants to have withheld these texts from disclosure.

This segues to one of defendants' procedural arguments, which boils down to: no good deed goes unpunished. In an abundance of caution, contend defendants, they turned over these texts, notwithstanding their view that they didn't really have to. Now plaintiffs are going to demand even more of Huebsch's personal communications in a wasteful, intrusive hunt for ever-more chimeric indicia of allegedly improper contacts between Huebsch and his friends in the power industry. Where does it stop? One of this court's aphorisms is Don't Look for Trouble, so I will stick to the issue actually before the court in this motion: the disputed text messages were properly disclosed and they are not confidential.

3

Defendants's second procedural argument boils down to: no harm, no foul. Because plaintiffs are free to use these confidential texts for any legitimate purpose in this litigation, contend the defendants, nothing is gained by removing their confidentiality designation. Plaintiffs disagree, pointing out the high degree of public interest in this case that militates toward letting the public see the extent of Huebsch's personal interactions with executives employed by the applicants for the contested CPCN. Both sides are half right.

II. These Documents Are Not Subject to Public Dissemination at This Time

In *Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999),the court noted that the parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a lawsuit: the public at large pays for the courts and therefore has an interest in what goes on at all stages of a legal proceeding. This interest does not always trump the privacy interests of the litigants, but it can be overridden only if there is good cause for sealing a part or whole of the record. *Id.* at 944-45. Ten years later, the court walked this back a few steps:

> To the extent that this language [in *Citizens Bank*] suggests the existence of a general public right to access the materials that litigating parties exchange in response to discovery requests, it sweeps too broadly. . . . Generally speaking, the public has no constitutional, statutory (rule-based) or common-law right of access to *unfiled* discovery.

*Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009)( emphasis in original).

As the Supreme Court has noted, pretrial discovery is not a public component of a civil trial. Such proceedings were not open to the public at common law, and discovery generally is conducted in private as a matter of modern practice. "Therefore, restraints placed on discovered,

but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

*Wolfe v. Schaefer*, 619 F.3d 782 (7th Cir. 2010), cited by plaintiffs, does not advance the analysis. The court's statements in *Wolfe* were part of its explanation why plaintiff had no due process claim arising out of defendants' disclosure of misconduct investigations during an election campaign. *Id.* at 785-86. Public disclosure of information received during pretrial discovery was not at issue.

Here's today's bottom line: if and when plaintiffs use Huebsch's texts as part of or in support of some bona fide filing with the court in this lawsuit, plaintiffs do not have to file them under seal because they are not confidential. But plaintiffs cannot otherwise proactively disclose these texts under the rubric of the public's right to know because that rubric does not apply to unfiled civil discovery. And no, the instant motion does not qualify as a bona fide court filing in this lawsuit. That would be bootstrapping.

Therefore, it is ORDERED that:

(1) Plaintiffs' motion to revoke the confidential designation of documents PSCW_10650-55 is GRANTED; and

(2) Plaintiffs may not disclose these documents except as part of a filing with this court in this lawsuit.

Entered this 14th day of October, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge