UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DRIFTLESS AREA LAND
CONSERVANCY and
WISCONSIN WILDLIFE
FEDERATION,

    Plaintiffs,

    v.

MICHAEL HUEBSCH,
REBECCA VALCQ, and
ELLEN NOWAK, Commissioners, and
PUBLIC SERVICE COMMISSION OF
WISCONSIN,

    Defendants.

Case No. 19-CV-1007

## NON-PARTY WEC ENERGY GROUP'S MOTION FOR LIMITED INTERVENTION

Non-party WEC Energy Group ("WEC") hereby moves the Court, pursuant to Fed. R. Civ. P. 24, for an Order permitting WEC to intervene in this action for the limited purpose of protecting its interests during discovery.

### INTRODUCTION

WEC is not a party to this case. WEC was not a party to the proceedings before the Public Service Commission of Wisconsin ("PSC") that gave rise to this case. Frankly, it did not have a sufficient interest in the outcome of those proceedings to participate in them. Yet, because one of its officers is friends with one of the PSC Commissioners who voted to approve

the construction of a transmission line application before the PSC, WEC now finds itself (both by subpoena and through requests to the PSC) the target of incredibly broad discovery requests that seek "all communications"—regardless of topic—between Commissioners and other employees of the PSC and "any representative, employee, agent, board member, committee member, officer of, or attorney" of WEC or any of its many affiliates.

As made clear by the filing of this Motion for Limited Intervention, WEC is both puzzled and troubled by Plaintiffs' position that a personal friendship between two professionals who work in the same industry and have known each other for decades could serve as the basis for virtually unfettered discovery in a case in which (1) WEC was not a party; and (2) there are no factual allegations or evidence suggesting that WEC's employee and the PSC Commissioner ever discussed the case. As explained herein, WEC does not, and cannot, know the nature of all the communications that would be disclosed if Plaintiffs' discovery requests are granted. But WEC respectfully seeks an opportunity to be heard as to whether they *should* and, if so, what protections the communications should be given.

## BACKGROUND

### Plaintiffs' Complaint and Discovery Requests

Plaintiffs' Complaint centers on the claim that two PSC Commissioners should have recused themselves from the PSC's decision on a contested application for construction of the "Cardinal-Hickory Creek" transmission line in western Wisconsin. (*See* Dkt. 1, ¶¶ 4, 17–18, & p.32, ¶¶ 1–2.) Specifically, Plaintiffs allege that "entanglements with other parties centrally involved in the case presented conflicts of interest and at least an appearance of bias and lack of impartiality" on the part of Commissioner Michael Huebsch and Commission Chair

QB\65377793.5

Rebecca Valcq. (*Id.*, ¶ 3). As for Commissioner Huebsch, the Complaint alleges that his "entanglements with MISO presented a conflict of interest and created at least the appearance of bias and impropriety if not actual bias and impropriety." (*Id.*, ¶ 160.) According to Plaintiffs, "MISO is a regional transmission organization that services the high-voltage transmission system in the Midwest states, Manitoba, and a southern region including much of Arkansas, Mississippi, and Louisiana." (*Id.*, ¶ 82.) Plaintiffs attached as an Exhibit to the Complaint a "Membership Listing" for MISO that includes Wisconsin Electric Power Company and Wisconsin Public Service Corporation, two of WEC's subsidiaries, among *187* other members. (Dkt. 1-9.)

The Complaint does not allege any specific facts establishing We Energies[1] or WEC's particular interest in the Cardinal-Hickory Creek transmission line. Plaintiffs merely assume (incorrectly) that WEC would have a position on where the transmission line would be placed because it has an ownership interest in ATC, one of the partial owners of, and applicants for, the project in order to pull WEC into this proceeding.[2] But more importantly, the Complaint

---

[1] Plaintiffs' repeated references to "We Energies" are imprecise. We Energies is not a corporation but rather is a trade name for the joint operations of two of WEC's subsidiaries: Wisconsin Electric Power Company and Wisconsin Gas LLC. Wisconsin Gas LLC is solely a natural gas utility; it has no electric operations whatsoever. Wisconsin Electric Power Company is a combined electric, natural gas, and steam utility. Despite the imprecision in the Plaintiffs' Complaint, for purposes of this Motion, it is assumed that when they say "We Energies," the Plaintiffs actually intend Wisconsin Electric Power Company. That is the way "We Energies" will be used in this Motion.

[2] WEC Energy Group is a partial owner of American Transmission Company LLC ("ATC"), an Intervenor in this case, because ATC was formed in 2000 by Wisconsin electric utilities and cooperatives contributing their high voltage transmission lines to the new entity pursuant to a Wisconsin statute that sought to create an independent owner of the State's electric transmission system that would provide more open access to the system and expand the system to increase reliability and reduce cost. *See* Wis. Stat. § 196.485. Today, ATC is owned by 26 investor-owned electric utilities, municipal electric utilities, and electric cooperatives. *See* https://www.atcllc.com/about-us/owners/. Under Plaintiffs' theory of discovery, a Public Service Commissioner's communications, business and personal, on any topic could be sought from any of

QB\65377793.5

does not allege that Commissioner Huebsch communicated with anyone associated with We Energies or WEC regarding the transmission line siting proceeding, much less that such communications with a non-party to the proceeding would have been unlawful or improper. To the contrary, the only allegations in the Complaint regarding Commissioner Huebsch's alleged bias involve his supposed contacts with MISO and the Organization of MISO States ("OMS"). (*E.g.*, Dkt. 1, ¶¶ 96, 98, 151, 157.)

Nonetheless, Plaintiffs served broad-sweeping discovery requests for Commissioner Huebsch's communications—regardless of topic—with "any representative, employee, agent, board member, committee member, officer of, or attorney representing . . . WEC Energy Group; and We Energies or any of its affiliated entities." (Dkt. 97 at 2). Plaintiffs sought these communications (and others) both from Defendants and, through a subsequent subpoena *duces tecum*, WEC.

An obvious problem with Plaintiffs' request for Commissioner Huebsch's communications with virtually any person associated with WEC or any of its subsidiaries or affiliates is that WEC was not "centrally involved in the case" involving the transmission line siting proceeding that is now being challenged in this Court. In fact, neither WEC Energy Group nor We Energies was a party to the contested matter before the PSC, nor appeared in the matter in any capacity. (*Cf.* Dkt. 1, ¶ 3 (alleging that "entanglements with other parties ***centrally involved in the case*** presented conflicts of interest and at least an appearance of bias and lack of impartiality") (emphasis added)). Based entirely on Plaintiffs' allegation that WEC Energy Group owns a portion of ATC (one of the applicants), and that ATC owns a

---

these owners and, apparently, their attorneys, subsidiaries, parents, and affiliates.

QB\65377793.5

portion of the Cardinal-Hickory Creek project (*id.*, ¶ 150), Plaintiffs now claim to be entitled to exhaustive discovery on Commissioner Huebsch's communications with any person affiliated with WEC—regardless of the nature or topic.

Plaintiffs' Pending Motion to Compel

When responding to Plaintiffs' discovery requests, Defendants withheld "records of communications between Commissioner Huebsch and WEC Energy Group and We Energies and their affiliates." (Dkt. 97 at 2.) Displeased with that response, on October 16, 2020, Plaintiffs moved to compel production of those communications. (*Id.* at 2.)

Plaintiffs make two arguments to support their claim that Commissioner Huebsch's communications with WEC, We Energies, and their affiliates could capture communications relevant to Plaintiffs' claims. (Dkt. 97 at 9–10.) Neither supports Plaintiffs' exceedingly broad request.

First, Plaintiffs "learned the Commissioner Huebsch likely had a personal relationship with Robert 'Bert' Garvin, Executive Vice President of External Affairs at WEC Energy Group, and apparently communicated with Robert Garvin during the Commission proceeding on the Cardinal-Hickory Creek transmission line." (*Id.* at 9–10.) Yet, any such relationship proves nothing about Commissioner Huebsch's alleged "entanglements with MISO." Nor do Plaintiffs make any claim that Mr. Garvin and Commissioner Huebsch ever communicated about the Cardinal-Hickory Creek project. (For good reason: They didn't.) And, to the extent the mere fact that Commissioner Huebsch and Mr. Garvin had a personal relationship is even remotely relevant, Plaintiffs fail to explain why this entitles them to all communications—professional and private—between the Commissioner and Mr. Garvin, let alone virtually any

QB\65377793.5

person associated with WEC, We Energies, or any of their affiliates. Such discovery is nothing more than a fishing expedition. Indeed, Plaintiffs' Motion falls far short of showing that the unlimited scope of communications sought are necessary to prove the fact of Mr. Garvin's and Commissioner Huebsch's friendship (which could be easily established in a stipulation).

Second, Plaintiffs point to communications between Commissioner Huebsch and John Garvin (of ATC) regarding golf and Mr. Garvin's health issues. (*Id.* at 6, ¶ 18.) The communications indicate that John's brother, Robert (of WEC), may keep Commissioner Huebsch and others apprised of John's health condition following a surgery in April 2019. This does not establish or even remotely suggest that Robert Garvin communicated with Commissioner Huebsch about the Cardinal-Hickory Creek project, much less justify the incredibly intrusive nature of the request. At best, it appears to reveal a human concern over the health of another person.

If Plaintiffs merely seek to establish that Commissioner Huebsch maintains a personal relationship with one or more employees of WEC and We Energies, that fact can easily be established in a stipulation. Plaintiffs' request for all communications in existence appears to be nothing more than a fishing expedition by which Plaintiffs hope to uncover material to harass, embarrass, or distract from the true issues in the case. *See, e.g.*, *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) ("The mere hope, without more, of revealing a 'smoking gun' is insufficient to support unbounded discovery."); *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869 (7th Cir.2005) (discovery properly denied where the request was "based on nothing more than mere speculation and would

QB\65377793.5

amount to a fishing expedition").[3]

Compounding this problem is the fact that there is currently a Motion to Dismiss pending in the District Court which, if granted in whole or in part, would severely limit or prevent discovery into this matter altogether. To allow discovery of all communications between a former Commissioner and any person affiliated with the State's largest utility—which had no involvement in the decision that is on appeal—seems to put the cart well ahead of the horse.

The same day that Plaintiffs moved to compel the production of these documents, the Court issued an Order directing defendants "to submit the disputed withheld documents ex parte by October 23, 2020 so that the court may review the documents in camera." (Dkt. 99.)

WEC understands the Court's Order is for *in camera* review of these documents. WEC does not know these documents' content and while it does not expect any of them will be germane to this case, before the Court makes a final determination that they should be produced in discovery, WEC respectfully asks to intervene for the limited purposes of (1) being heard regarding any production to Plaintiffs; and (2) in the event production is ordered, seeking to modify the Protective Order on file in the case (Dkt. 79) as appropriate.[4] The

---

[3] Indeed, the personal communication between Commissioner Huebsch and John Garvin of ATC that serves as the basis for Plaintiffs' Motion to Compel concerns John Garvin's *private health information*. That Commissioner Huebsch may have communicated with John Garvin's *brother* Robert Garvin regarding John Garvin's health should not provide a basis for an unlimited inquisition into Robert Garvin's business and personal relationships and private communications.

[4] The current Protective Order on file in this case has no "Attorneys' Eyes Only" designation. (*See* Dkt. 79.) It also allows counsel for parties who receive discovery to retain a copy of Confidential Information even after the action terminates. (*Id.* at 7, ¶ 14.) It has no provision requiring experts or other consultants to execute a document memorializing their agreement to abide by the terms of the Protective Order. To the extent confidential and sensitive information of WEC is provided in discovery, WEC may seek to modify the Protective Order to address these and other issues.

QB\65377793.5

Motion to Intervene is made is good faith and solely for the purpose of protecting WEC's interests, which Plaintiffs have put at issue through their discovery requests.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides two routes to intervention: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). WEC seeks to intervene under both subsections, for the limited purpose of protecting its interests during discovery in this case.

### A.     Intervention as of Right

Intervention as of right is appropriate to protect "an interest relating to the property or transaction" involved in an action when that interest, "as a practical matter," might be impaired or impeded. Fed. R. Civ. P. 24(a)(2). "Rule 24(a)(2) establishes four conjunctive criteria for intervention as of right: (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994).

"The requirements for intervention … should generally be more liberal than those for standing to bring suit." *United States v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.*, 466 F.2d 573, 577 (7th Cir. 1972). "[L]iberal intervention is desirable" because it promotes resolution "of as much of a controversy 'involving as many apparently concerned persons as it compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Rule 24 operates to "allow intervention as of right on collateral discovery issues." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) ("AT&T"). Thus, non-parties may intervene to the extent they would need to protect privileged, sensitive, and confidential information. *Id.*; *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2001 WL 1718370, at *1-3 (D. Kan. Sept. 12, 2001) (allowing intervention as of right to protect confidential and proprietary information); *see also Armour of Am. v. United States*, 70 Fed. Cl. 240, 244 (2006) ("[T]he term "action" need not be limited to the primary dispute of the action, but can concern a collateral matter…. ArmorWorks has a legitimate interest in protecting its trade secrets and other proprietary information related to manufacture of armor."); *Johnson v. Hankook Tire Mfg., Co.*, No. 2:09CV113-MPM-DAS, 2013 WL 664720, at *1 (N.D. Miss. Feb. 22, 2013) ("There is precedent for allowing intervention where a third party seeks court protection for its otherwise discoverable information and documents, whether the third party seeks to assert a privilege to prevent any disclosure or a confidentiality order to protect its information from public disclosure."); *Liberty Mut. Fire Ins. Co. v. KB Home*, No. 5:13-CV-831-BR(2), 2015 WL 13203391, at *1 (E.D.N.C. May 4, 2015) ("Stock, formerly a party to this action, moves to intervene asserting that certain discovery requests served on Liberty Mutual seek information that is privileged and confidential to Stock and that intervention is necessary to protect Stock's interests during discovery. The court GRANTS Stock's motion to intervene for the limited purpose of protecting its interests in discovery.").

### B. Permissive Intervention

Under Rule 24(b), "the court may permit anyone to intervene who . . . has a claim or

defense that shares with the main action a common question of law or fact." "Rule 24(b) vests district courts with 'considerable discretion' when deciding whether to permit intervention by third parties seeking to protect their interests in a particular action." *Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 661–62 (7th Cir. 2001) (quoting *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1048 (D.C.Cir.1998)); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83 (D. Conn. 2014) (non-party was entitled to permissive intervention in action challenging bid process for limited purposes of objecting to plaintiff's request for discovery that would reveal intervenor's confidential information and seeking to modify standard protective order to prohibit disclosure of intervenor's trade-secret pricing information or financial data during litigation); *Koprowski v. Wistar Inst. of Anatomy & Biology*, No. CIV. A. 92-CV-1132, 1993 WL 332061, at *1 (E.D. Pa. Aug. 19, 1993) ("Numerous courts have recognized permissive intervention under Federal Rule of Civil Procedure 24(b) to be a proper method for a non-party to challenge a confidentiality agreement or protective order by limited intervention for discovery purposes.").

When ruling on a timely motion for permissive intervention, the court considers whether the intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991).

### C.  Timeliness

Whether intervention is sought as of right or by permission, Rule 24 requires that motions to intervene be "timely." Four factors are relevant to this determination: (1) the length of time the intervener knew or should have known of his or her interest in the case; (2) the prejudice to the original party caused by the delay; (3) the resulting prejudice to the intervener

QB\65377793.5

if the motion is denied; and (4) any unusual circumstances. *Ragsdale v. Turnock,* 941 F.2d 501, 504 (7th Cir. 1991).

## ARGUMENT

### A.  WEC is Entitled to Intervene as a Matter of Right

As to discovery in this case, the four criteria for WEC's intervention as a matter of right are satisfied.  <u>First</u>, this application is timely, under the factors outlined above.  WEC became aware that its interests in the communications were at issue when Plaintiffs filed their Motion to Compel on October 16, 2020.  Later that day, WEC learned of the Court's order requiring Defendants to submit the documents at issue for *in camera* review by October 23, 2020.  WEC filed this Motion before the expiration of that deadline.  Any "delay" in WEC filing this Motion cannot prejudice any party to the litigation because the Court will not entertain Plaintiffs' Motion to Compel until after October 23, 2020.  (*See* Dkt. 99.)  If the Motion to Intervene is denied, WEC will be prejudiced by the lack of an opportunity to be heard regarding the disclosure of materials that may harm its interests, or those of its employees.  As further explained below, while WEC does not know exactly what the communications may contain, it is possible the communications range from irrelevant personal matters not appropriate for disclosure—to irrelevant trade secrets or economic information.  As for the final timeliness factor, if *any* circumstance is "unusual," it is the vastly-overbroad scope of Plaintiffs' discovery efforts, which seek all communications between Commissioner Huebsch and any one of thousands of people who may be a representative, employee, agent, board member, committee member, officer of, or attorney for WEC, a non-party, or one of its many affiliates—without limitation as to topic.

QB\65377793.5

Second, WEC has an interest relating to the subject matter in the action, *i.e.*, the discovery sought by Plaintiffs. At issue in Plaintiffs' pending Motion to Compel are all communications between Commissioner Huebsch and virtually any person associated with WEC and its affiliates. (Dkt. 97 at 2.)[5] While WEC is not presently aware of what the communications at issue contain, it has legitimate concerns that the communications could include private communications regarding WEC business matters, WEC's proprietary information, trade secrets, or other topics the disclosure of which may harm WEC's interests and reputation. To be sure, this concern arises from the limitless nature of the request at issue. As drafted, Plaintiffs' requests would include, for example, confidential submissions from WEC filed with the PSC that are completely unrelated to the Cardinal-Hickory Creek transmission line.

Third, if WEC is not allowed to intervene, it is possible that communications damaging to WEC, its employees, or its customers may be produced to Plaintiffs and thereafter made public. As already demonstrated by the documents referenced in Plaintiffs' Motion to Compel, seeking purely personal communications is likely to reveal private information that is both inappropriate for public disclosure and unnecessary to prove Plaintiffs' case. As noted *supra* note 3, the personal communication between Commissioner Huebsch and an employee of ATC discusses an individual's personal health issues. Again, Plaintiffs do not need copies of every communication in existence, regardless of topic, to prove the existence of a personal or friendly relationship between Commissioner Huebsch and any other individual in the

---

[5] Here, WEC refers to personal communications that are not subject to the Wisconsin Public Records Act.

QB\65377793.5

Wisconsin utility industry.

WEC believes its interests will be protected if it is given an opportunity (1) to access any of the documents at issue which the Court decides may be relevant, (2) to be heard in the event that the Court is inclined to order Defendants to produce such communications; and (3) to seek modifications to the Protective Order on file in the case as required to adequately protect WEC's proprietary and other interests, as well as the privacy interests of its employees.

Fourth, Defendants do not adequately represent WEC's interests. While WEC has reason to believe that Defendants will make appropriate efforts to tailor their production to the bounds of Rule 26, Defendants have no incentive to consider, much less specifically object to disclosure on grounds that communications contain information which may be damaging to the interests of WEC, its affiliates, or any of their thousands of employees or millions of customers. Defendants are not in as good a position as is WEC to understand what may or may not be harmful. Thus, certain communications may not trigger concern to Defendants warranting further resistance to disclosure, but may be harmful to WEC's interests. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (fourth requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal").

Of course, too, any decision about the discoverability of such materials must be viewed against the backdrop of the claimed basis for their probative value—which is nil. To review, Plaintiffs do not (and cannot) claim that Commissioner Huebsch communicated with WEC, We Energies, their affiliates, or any employee of these entities about the transmission line siting case at issue before the Court. Rather, their claim is that they should be entitled to

QB\65377793.5

discover and potentially make public *any* communication about *any* topic between Commisioner Huebsch and WEC—at best to establish the existence of a personal relationship between the Commissioner and one of WEC's executives, even though that executive was not at all involved in the transmission line siting case, and WEC had no direct interest in the location of the line. Simply put, such a standard for discovery is absurd.

### B. Permissive Intervention is Warranted.

If the Court finds that WEC does not satisfy all of the requirements for intervention as of right, the Court should nonetheless permit WEC to intervene under Rule 24(b) to protect its interests from prejudice through discovery in this action. As noted above, federal courts have found the criteria of Rule 24(b) met when a party seeking to protect disclosure of sensitive or confidential information. *See, e.g.*, *Sackman*, 167 F.R.D. at 22–23 (noting that Rule 24(b) does not require an intervenor to have a "claim" or "defense" "in a technical sense, . . . only some interest on the part of the" intervenor). Further, Rule 24(b) "is 'sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders.'" *Griffith*, 249 F.3d at 661 (citation omitted). Here, the case is still in the pleadings stage, given Defendants' pending Motion to Dismiss. Discovery has begun but is not closed. No parties have been deposed, and Plaintiffs' motion to prevent their own depositions (Dkt. 94) is pending. There can be no meaningful argument that allowing WEC to intervene would "unduly delay or prejudice the adjudication of the rights of the original parties." *Southmark Corp.*, 950 F.2d at 419.

### CONCLUSION

WEC respectfully requests that the Court issue an order allowing WEC to intervene as

QB\65377793.5

a matter of right in this litigation (or, alternatively, by permission) for limited purposes relating to discovery. WEC requests an opportunity to be heard on whether communications between "any representative, employee, agent, board member, committee member, officer of, or attorney representing . . . WEC Energy Group; and We Energies or any of its affiliated entities" should be produced to Plaintiffs. Specifically, if the Court deems such communications relevant to the case, WEC requests an opportunity to review the materials before they are produced to Plaintiffs to identify materials that contain trade secrets or sensitive economic information, irrelevant personal information, or are otherwise immune from discovery (which WEC is currently unable to do because the requested files are in Defendants' possession), and to be heard on whether they should indeed be turned over to Plaintiffs and on what terms. WEC also seeks an opportunity to object to or seek modifications to the Protective Order on file in the case so that it may appropriately protect any confidential and sensitive communications.

In the event the Court denies Plaintiffs' pending Motion to Compel as related to communications involving WEC (Dkt. 97), WEC withdraws this Motion without prejudice.

Dated: October 23, 2020.

QUARLES & BRADY LLP

By: *s/ Patrick S. Nolan*
Patrick S. Nolan (1024491)
Julia Wittman (1115063)
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53201
T: (414) 277-5465
patrick.nolan@quarles.com
julia.wittman@quarles.com

QB\65377793.5