UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL HUEBSCH, REBECCA VALCQ, ELLEN NOWAK, and PUBLIC SERVICE COMMISSION OF WISCONSIN,<br><br>Defendants,<br><br>AMERICAN TRANSMISSION COMPANY LLC, BY ITS CORPORATE MANAGER, ATC MANAGEMENT, INC, DAIRYLAND POWER COOPERATIVE, AND ITC MIDWEST LLC,<br><br>Intervenor-Defendants. | No. 19-cv-1007 |

**JOHN GARVIN AND INTERVENOR-DEFENDANT AMERICAN TRANSMISSION COMPANY'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION OF JOHN GARVIN**

Between October 2 and October 12, the Plaintiffs issued ten subpoenas and eight deposition notices to both non-parties and parties to this proceeding. Included within this flurry of discovery requests was a notice of deposition and Rule 45 subpoena *ad testificandum* (collectively, "Deposition Requests") for John Garvin, who is employed by Intervenor-Defendant ATC Management Inc., the corporate manager of American Transmission Company LLC (collectively, "ATC") as the Director of Government Affairs and Local Relations. (*See* Declaration of Brian Potts ("Potts Decl."), ¶¶ 3–4, Ex. A–B) Plaintiffs served the Deposition Requests on October 9, 2020 and commanded that Mr. Garvin appear to provide testimony at a deposition to be held on November 2, 2020. (*Id.*)

Pursuant to FED. R. CIV. P. 26(c) and 45(b)(3), John Garvin and Intervenor-Defendant ATC respectfully move this court to enter a protective order and/or an order quashing the Deposition Requests and barring Plaintiffs from deposing Mr. Garvin at this juncture in this case. Mr. Garvin was not listed in ATC's initial disclosures as an individual with knowledge of Plaintiffs' claims. And, in the nearly 14,000 pages of documents that Defendants produced to Plaintiffs to date, there is absolutely <u>no evidence</u> that Mr. Garvin communicated with any of the Defendants regarding the Cardinal-Hickory Creek Project ("Project"). Simply put, Mr. Garvin does not have information that is relevant to Plaintiffs' claims. In addition, Mr. Garvin's deposition would be unreasonably cumulative, duplicative, and burdensome, and the information sought from him is obtainable through other methods that are both more convenient and less burdensome.

## BACKGROUND

At this point, the Court is well-versed regarding the nature of this case and the current status of discovery. (*See* ECF No. 101, at 1–4; ECF No. 102, at 2–9) We will not repeat that history here, but feel that some additional detail is warranted concerning the nature of this particular discovery dispute. Plaintiffs previously issued Rule 34 requests for production of documents ("RFPs") to the Defendants, asking Defendants to produce (among other things) communications between Commissioner Michael Huebsch and ATC, Dairyland Power Cooperative, and ITC Midwest LLC ("the Co-Owners"), (*see* ECF No. 90, at 3), and communications between Chairperson Valcq and ATC or any of its affiliates, (*see* ECF No. 97, at 3). On October 13, 2020, Plaintiffs issued similar Rule 34 RFPs to ATC, requesting that ATC

produce (among other things) any communications between it and Commissioner Huebsch and Chairperson Valcq. (Potts Decl., ¶ 5, Ex. C)[1]

Although ATC's responses to Plaintiffs' RFPs are not due until November 12, 2020, the Defendants have already produced nearly 14,000 pages of documents to Plaintiffs in response to the aforementioned RFPs. (*See* ECF No. 101, at 3–4; ECF No. 102, at 4–7) Based on ATC's review of that document production, there is no evidence that Mr. Garvin ever communicated with Commissioner Huebsch or Chairperson Valcq about the Project. The handful of communications that do reference or include Mr. Garvin concern matters that are unrelated to the Cardinal-Hickory Creek Project and the instant dispute, as noted below[2]:

- October 23, 2018: Email from Brian Drumm of ATC to Cindy Tortsveit and Randel Pilo of the Public Service Commission of Wisconsin ("Commission" or "PSCW"), requesting feedback on ATC's Straits Replacement Project. (Potts Decl., ¶ 6, Ex. D, at 2–7) John Garvin was copied on the communication, but no PSCW commissioners were included on the initial distribution. Commission staff subsequently forwarded the message to Commissioner Huebsch.

- February 19, 2019: Carrie Templeton (PSCW) forwarded an e-mail to John Garvin (among others, but not PSCW commissioners), which included a February 11 letter from various utility associations to the Governor and legislative leadership regarding support for transportation electrification and the use of Volkswagen settlement funds money. Ms.Templeton subsequently forwarded the chain to Chairperson Valcq. (Potts Decl., ¶ 6, Ex. D, at 27–31)

---

[1] Plaintiffs also issued Rule 45 subpoenas *duces tecum* to Mr. Garvin with document requests that are virtually identical to those included in Plaintiffs' RFPs to the ATC. (*Compare*, ECF No. 118-4, at 4-7, *with* Potts Decl., ¶ 5, Ex. C, at 4–5). Mr. Garvin's subpoena demanded the production of documents in advance of the deposition date that Plaintiffs initially noticed, (*see* ECF No. 102, at 5), and was scheduled to occur before the Co-Owners' responses to Plaintiffs' RFPs are due on November 12. Of course, Plaintiffs cannot use a Rule 45 document subpoena to circumvent the 30-day deadline for responding to RFPs issued pursuant to Rule 34. *See, e.g.*, *In Re GB Herndon and Associates, Inc.*, Case No. 10-00945, 2011 WL 3811049 (Bankr. D.D.C. Aug. 29, 2011) (denying motion to compel production of documents in response to subpoena that provided less than 30 days for compliance because "[a] deposition subpoena to a party may not be utilized to circumvent the 30–day response time provided for in Fed. R. Civ. P. 34") (citing cases). For its part, ATC has indicated its willingness to produce some of the requested documents (including responsive documents for Mr. Garvin) by November 12. (Potts Decl., ¶ 8, Ex. E)

[2] It is worth noting that the majority of these communications occurred outside the window of time in which the Co-Owners' CPCN application for the Project was pending before the Commission (approximately April 2018 to September 2019).

- April 18-19, 2019: Text from Commissioner Huebsch to John Garvin, sending his "thoughts and prayers" in advance of Mr. Garvin's heart surgery (more on that below). (*See* ECF No. 86-2, at 9–11)

- May 10, 2019: Email from Rep. Amanda Stuck (Wisconsin State Legislature) with an invitation to a "Briefing and Panel Discussion: Energy Innovation and Our Wisconsin Economy," to be held on May 22, 2019. John Garvin was copied on the email, but no PSCW commissioners were. Commission staff subsequently forwarded the e-mail to Chairperson Valcq. (Potts Decl., ¶ 6, Ex. D, at 22)

- August 20, 2019: Email from Alissa Braatz of ATC communicating to various individuals a news release regarding the Commission's verbal approval of the Cardinal-Hickory Creek Project. John Garvin was a recipient, but no PSCW commissioners were included on the initial distribution. Commission staff subsequently forwarded the e-mail to Chairperson Valcq. (Potts Decl., ¶ 6, Ex. D, at 8–11)

- September 28, 2019: Text from Commissioner Huebsch to John Garvin, inviting him to go golfing, which Mr. Garvin declined. (*Id.*)

- October 2, 2019: Email from Anne Spaltholtz of ATC, communicating that a news release from ATC providing update on the Madison substation fires would be released to Madison media and trade media. John Garvin was copied on this communication, but no PSCW commissioners were. Commission staff subsequently forwarded the e-mail to Chairperson Valcq. (Potts Decl., ¶ 6, Ex. D, at 19)

- December 13, 2019: Email from Dan Sande of We Energies to Bill Skewes of the Wisconsin Utilities Association ("WUA") and Rick Potter of Alliant Energy regarding a legislative meeting on revising Wis. Stat. § 182.0175. John Garvin was copied on the initial communication, but no PSCW commissioners were. The message was subsequently forwarded to Commissioner Huebsch. (Potts Decl., ¶ 6, Ex. D, at 12–15)

- December 17, 2019: Email from Alissa Braatz of ATC communicating that a news release, discussing the Spring Valley-North Lake Geneva Electric Reliability Project, would be distributed shortly. John Garvin was copied on the initial e-mail, but no PSCW commissioners were. Commission staff subsequently forwarded the e-mail to Chairperson Valcq, among others. (Potts Decl., ¶ 6, Ex. D, at 16)

- March 31, 2020: Email from Bill Skewes (WUA) to John Garvin (among others, but no PSCW commissioners), regarding use of the Volkswagen settlement funds. Carrie Templeton (PSCW) subsequently forwarded the e-mail to Chairperson Valcq. (Potts Decl., ¶ 6, Ex. D, at 33–34)

- April 10, 2020: Email exchange between (among others) Commissioner Valcq, Matthew Sweeney (PSCW), Barbara Nick (Dairyland Power Cooperative), Brian Rude (Dairyland), Joel Brennan (Department of Administration), Robert Garvin (We Energies), and Karl Hoesly (Xcel Energy), discussing the availability of COVID-19 testing for

   critical infrastructure employees. John Garvin was copied on the emails. (Potts Decl., ¶ 6, Ex. D, at 37–63)

- April 28, 2020: Meeting invite from Bill Skewes (WUA), copying John Garvin, deferring a WUA/PSCW "check-in" meeting regarding COVID-19. (Potts Decl., ¶ 6, Ex. D, at 35)

- May 5, 2020: Meeting invite from Bill Skewes, copying John Garvin, for a WUA/PSCW "check-in" on COVID19. (Potts Decl., ¶ 6, Ex. D, at 36)

- May 5, 2020: Email from Carrie Templeton (PSCW) to John Garvin (among others), discussing the issue of testing asymptomatic utility workers for COVID-19. (Potts Decl., ¶ 6, Ex. D, at 37)

The text message exchange between Commissioner Huebsch and Mr. Garvin in April 2019 pertained to health issues that Garvin had been experiencing since the beginning of 2019. (*See generally* Declaration of John Garvin ("Garvin Decl.")) In January 2019, Mr. Garvin experienced heart failure due to the degradation of a mechanical aortic valve that had been implanted in 1988. (Garvin Decl., ¶ 3) Mr. Garvin had open heart surgery on April 19, 2019, when he had both his aortic valve and mitral valve replaced. (Garvin Decl., ¶ 4) Commissioner Huebsch texted Mr. Garvin to wish him well before he underwent this major procedure. (Garvin Decl., ¶ 5) About six to eight weeks after surgery, a couple of stitches broke on the newly replaced mitral valve and Mr. Garvin had to undergo a second procedure on July 12, 2019. (Garvin Decl., ¶ 6) In total, Mr. Garvin had five devices placed in his heart last year—two valves and three plugs to stop a mitral valve leak. (Garvin Decl., ¶ 7) After the Commission issued its final decision approving a CPCN for the Project, Commissioner Huebsch texted Mr. Garvin to see if he wanted to play a round of golf, which Garvin declined due to health issues. (Garvin Decl., ¶ 8) Mr. Garvin is still undergoing treatments for his heart condition. (Garvin Decl., ¶ 9)

On October 29, counsel for Mr. Garvin and ATC met and conferred via telephonic conference with Plaintiffs' counsel regarding the Deposition Requests. (Potts Decl., ¶ 7) During the telephonic conference, Plaintiffs' counsel was informed of Mr. Garvin's health issues in

2019, which were the subject of Commissioner Huebsch's texts in April 2019. (Potts Decl., ¶ 8, Ex. E) Counsel for Mr. Garvin and ATC also explained that they objected to the Deposition Requests, because it is evident that—based on the thousands of documents turned over to date during discovery—Mr. Garvin does not possess any information that is relevant to a claim or defense in this proceeding. (Potts Decl., ¶ 8, Ex. E) Counsel for ATC and Mr. Garvin suggested that Plaintiffs could withdraw the Deposition Requests and re-notice his deposition after ATC responded to Plaintiffs' RFPs, if those responses turned up relevant information with respect to Mr. Garvin. (*Id.*) Plaintiffs were unwilling to reconsider either of the Deposition Requests, and therefore, Mr. Garvin and ATC filed the instant motion.

## LEGAL STANDARD

A party may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses. FED. R. CIV. P. 26(b)(1); *see also Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813–14 (N.D. Ill. 2015) ("Before anyone, party or non-party, can be forced to submit to a deposition, the evidence that is sought must be relevant."); *Vike v. Coopman*, Case No. 08-CV-486-BBC, 2009 WL 3321018, at *1 (W.D. Wis. 2009) (quashing subpoena directed to a party's employee because it sought irrelevant information). In addition to being relevant, the information being sought must be proportional to the needs of the case, considering the importance of the issues, the parties' relative access to information, their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1). This is true regardless of whether the information sought is through a deposition request or subpoena. *Brown v. Yellow Transp., Inc.*, Case No. 08-C-5908, 2009 WL 3270791, at *2 (N.D. Ill. 2009)

("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.")

For good cause, a Court may issue a protective order barring discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Although there is a strong public policy in favor of disclosing relevant materials, discovery can be denied if it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or if the court finds that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case. FED. R. CIV. P. 26(b)(2)(C)(i) and (iii); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Similarly, the Court must modify or quash a subpoena if (among other things) it would impose an undue burden. *See* FED. R. CIV. P. 45(d)(3)(A). The court must balance the interests served by demanding compliance with the subpoena against those furthered by quashing it, considering factors such as the relevance, burden, and breadth of the request in question. *See Dewey v. Bechthold*, Case No. 18-CV-1739-JPS, 2019 WL 5429150, at *1 (E.D. Wis. 2019) (document subpoena); *Arassi v. Weber-Stephen Products, LLC*, Case No. 2014 WL 1385336, at *2 (E.D. Wis. 2014) (deposition subpoena).

## ARGUMENT

I. **This Court should issue a protective order and quash the Deposition Requests because the information sought from Mr. Garvin is not relevant to the proceeding and can be obtained from other sources and through alternative methods that are more convenient and less burdensome.**

A protective order is warranted here because the information Plaintiffs are seeking is not relevant to the proceeding. Mr. Garvin was not listed in the ATC's initial disclosures as an individual with knowledge of Plaintiffs' claims. (Potts Decl., ¶ 9, Ex. F) And, in the nearly 14,000 pages documents that have been turned over by Defendants to Plaintiffs to date, there has

been no evidence that Mr. Garvin communicated with any of the Defendants about the Project while the contested case was pending before the Commission. The handful of communications that reference Mr. Garvin concern matters unrelated to the Project. The only communication between Commissioner Huebsch and Mr. Garvin during the pendency of the CPCN took place in April 2019, via text message, and pertained to Mr. Garvin's health issues. (Garvin Decl., ¶ 5) All of this is unsurprising because Mr. Garvin did not, in fact, communicate with any of the commissioners about the Project while the Co-Owners' CPCN Application was pending before the Commission. (Garvin Decl., ¶ 11) Therefore, his deposition will not yield information that is relevant to Plaintiffs' allegations.

Moreover, the deposition of Mr. Garvin is unreasonably duplicative, and the information sought can be obtained from other, more convenient, less burdensome methods. Plaintiffs have scheduled depositions of Commissioner Huebsch and Chairperson Valcq in early November. (*See* ECF No. 102, at 6) They have also issued Rule 34 RFPs to ATC regarding communications between its employees and Commissioner Huebsch and Chairperson Valcq. (Potts Decl., ¶ 5, Ex. C) Therefore, requiring Mr. Garvin to sit for a deposition in advance of the Commissioners' depositions and ATC's responses to Plaintiffs' Rule 34 RFPs would be unreasonable at this juncture, particularly because Mr. Garvin's deposition will not lead to any relevant information. Should this discovery raise new questions about whether Mr. Garvin has information that is in fact relevant (it won't), the Court could of course lift the protective order the Co-Owners are requesting here. However, at this juncture, Mr. Garvin's deposition would be premature as it will not produce any relevant information.

*Patterson v. Avery Dennison Corp.* is instructive. 281 F.3d 676 (7th Cir. 2002). There, the Seventh Circuit found no abuse of discretion when the district court refused to compel the

deposition of a corporate vice president. The Court noted that the plaintiff failed to take advantage of interrogatories or avail herself of other, less costly means of discovery prior to noticing the deposition of the executive, which "cast[] serious doubt over her claim that Miller possessed information that was more than marginally relevant to her civil action." *Patterson*, 281 F.3d at 681–82. Just as the plaintiff in *Patterson* failed to issue interrogatories prior to the noticed depositions, Plaintiffs here have not served any interrogatories on the Co-Owners and noticed Mr. Garvin's deposition more than a week in advance of when ATC's responses to Plaintiffs' Rule 34 RFPs are due, even though those alternative methods of discovery are more tailored to the needs of the case and are also equally capable of yielding the information Plaintiffs seek, without imposing further burdens.

In sum, the deposition of Mr. Garvin is not relevant to the current proceeding, would be unreasonably duplicative, and the information sought can be obtained from other, more convenient, and less burdensome alternatives. Therefore, this Court should issue a protective order barring Plaintiffs' Deposition Requests at this time.

## CONCLUSION

For the foregoing reasons, Intervenor-Defendants respectfully request that the Court enter a protective order and/or order quashing the deposition notice and subpoena *ad testificandum* Plaintiffs' issued to Mr. John Garvin and barring Plaintiffs from deposing Mr. Garvin at this time.

[*The remainder of this page is intentionally left blank*]

Dated: October 30, 2020

Respectfully submitted,

**PERKINS COIE, LLP**

*/s/ Brian H. Potts*
Brian H. Potts (Wis. Bar No. 1060680)
David R. Zoppo (Wis. Bar No. 1094283)
33 East Main Street, Suite 201
Madison, WI 53703-5118
Tel: (608) 663-7460
Fax: (608) 663-7499
Email: bpotts@perkinscoie.com
dzoppo@perkinscoie.com

*Attorneys for Intervenor-Defendants*
*American Transmission Company LLC and*
*ATC Management Inc. and John Garvin*