UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DRIFTLESS AREA LAND
CONSERVANCY and
WISCONSIN WILDLIFE
FEDERATION,

    Plaintiffs,

    v.

MICHAEL HUEBSCH,
REBECCA VALCQ, and
ELLEN NOWAK, Commissioners, and
PUBLIC SERVICE COMMISSION OF
WISCONSIN,

    Defendants.

Case No. 19-CV-1007

**NON-PARTY ROBERT GARVIN'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Non-party Robert Garvin ("Mr. Garvin") hereby responds to Plaintiffs' "Motion to Compel Compliance with Third Party Subpoenas." (Dkt. 116, 117.)

## **INTRODUCTION**

In their Motion to Compel, Plaintiffs lump together seven distinct non-parties——WEC, Robert Garvin, Quarles & Brady LLP, Barbara Nick, Brian Rude, John Garvin, and the Midcontinent Independent System Operator ("MISO")—and move the Court to compel each of them "to comply with subpoenas *duces tecum* served by Plaintiffs." (Dkt. 117 at 1.) Largely dispensing with specific arguments as to why each of these non-parties should be compelled to comply with their subpoenas, Plaintiffs instead baldly (and falsely) accuse them of conspiring with the Defendants and Intervenors in the case "in a concerted effort to avoid and delay compliance with any discovery." (Dkt. 117 at 4.)

1

Here, as is often the case, it is "[b]est to take Occam's Razor and slice off needless complexity." *Commodity Futures Trading Comm'n v. Zelener*, 373 F.3d 861, 868 (7th Cir. 2004). If Plaintiffs have received "across-the-board objections" to their discovery requests (Dkt. 117 at 4), it is not because of a nefarious plot to stymie Plaintiffs' lawsuit against the Public Service Commission of Wisconsin ("PSC"). Rather, it is because Plaintiffs' extraordinarily broad discovery requests fall far outside the scope of discovery allowed by the Federal Rules of Civil Procedure. At least, as explained herein, that is certainly the case with Plaintiffs' subpoena *duces tecum* to Mr. Garvin.

## BACKGROUND

This case centers on Plaintiffs' claim that two of the three Commissioners of the PSC—Chairperson Rebecca Valcq and Commissioner Michael Huebsch—should have recused themselves from the PSC's ruling on a Certificate of Public Convenience and Necessity ("CPCN") for the "Cardinal-Hickory Creek" high-voltage transmission line. The Complaint alleges that Chairperson Valcq's employment nearly seven years ago by WEC Energy Group ("WEC"), which has a 60% ownership stake in American Transmission Company ("ATC")[1] (one of the applicants for the CPCN), and by one of WEC's outside law firms created a conflict of interest. (*See* Dkt. 1, ¶¶ 58, 63–65, 150.) WEC was not a party to the PSC proceeding and had no involvement in it. (Exh. A, Garvin Decl., ¶ 3.) Mr. Garvin is the Executive Vice President - External Affairs for WEC. (*Id.*, ¶ 2.) Plaintiffs have provided not a scrap of evidence supporting their apparent suspicion that WEC sought to influence

---

[1] WEC is a partial owner of ATC because it was formed in 2000 by Wisconsin electric utilities and cooperatives that agreed to contribute their high voltage transmission lines to the new entity pursuant to Wis. Stat. § 196.485. Under state law, ATC is obligated to construct, operate, maintain, and expand transmission facilities to provide reliable, adequate transmission service on a non-discriminatory basis and is subject to the jurisdiction of the Federal Energy Regulatory Commission. *Id.* (Exh. A, Garvin Decl. ¶ 6.) Today, ATC is owned by 26 investor-owned electric utilities (or their holding companies), municipal electric utilities and electric cooperatives. (*Id.*) *See* https://www.atcllc.com/about-us/owners/.

the PSC's decision concerning Cardinal-Hickory Creek, much less that Mr. Garvin did so on WEC's behalf. There is literally *zero* basis for Plaintiffs' discovery against Mr. Garvin.

As for Commissioner Huebsch, the Complaint alleges that his "entanglements with MISO presented a conflict of interest and created at least the appearance of bias and impropriety if not actual bias and impropriety." (Dkt. 1, ¶ 160.) MISO was a party to the case before the PSC. According to Plaintiffs, "MISO is a regional transmission organization that services the high-voltage transmission system in the Midwest states, Manitoba, and a southern region including much of Arkansas, Mississippi, and Louisiana." (*Id.*, ¶ 82.) Plaintiffs claim that MISO "developed and approved the proposed ATC line as part of its 'Multi Value Portfolio' a decade ago." (*Id.*, ¶ 92.) Plaintiffs attached as an exhibit to the Complaint a publicly-available "Membership Listing" for MISO that includes Wisconsin Electric Power Company and Wisconsin Public Service Corporation, two subsidiaries of WEC, among ***187*** other members. (Dkt. 1-9.) On that basis alone, Plaintiffs claim MISO is "owned" by WEC. (Dkt. 1, ¶ 84.) And they demand every communication between Commissioner Huebsch and Mr. Garvin—apparently to investigate whether an improper relationship between MISO (vis-à-vis WEC) and the Commissioner existed, ***and*** whether that relationship somehow came into play connection with the matter before the PSC (a matter in which WEC was not a party and played no role).

With successive discovery requests and motions, Plaintiffs attempt to support their ever-expanding discovery requests which are now much broader than their Complaint allegations[2]—they now claim the PSC Commissioners' friendships with employees of various players in the Wisconsin

---

[2] Plaintiffs' Complaint alleges that Commissioner Huebsch's and Chairperson's Valcq's "entanglements with other parties centrally involved in this case presented conflicts of interest and at least an appearance of bias and lack of impartiality when the totality of the circumstances is considered." (Dkt. 1, ¶ 3.) WEC is not alleged to be (nor was it) "centrally involved" in the case.

3

utility industry either directly or remotely connected to the Cardinal-Hickory Creek project made them unfit to rule on the CPCN.[3] To that end, Plaintiffs served extremely broad discovery requests upon Mr. Garvin and the other non-parties named in Plaintiffs' omnibus Motion to Compel.[4] From Mr. Garvin, Plaintiffs requested for the time period January 1, 2018 to the present, "*all documents* reflecting, recording, noting, memorializing, or describing" *any* communication between (1) Commissioner Huebsch "or anyone communicating on his behalf," (2) Chairperson Valcq "or anyone communicating on her behalf," or (3) Commissioner Ellen Nowak "or anyone communicating of her behalf" on the one hand—and Mr. Garvin "or anyone communicating on [his] behalf" on the other. (Dkt. 118-2 (emphasis added).) The requests are not limited to any subject, let alone to the Cardinal-Hickory Creek project, and much less to the allegations of Plaintiffs' Complaint. Plaintiffs further requested (4) "*all documents* reflecting, recording, noting, memorializing, or describing" communications between Mr. Garvin "or anyone communicating on [his] behalf" and "Tony Evers or anyone communicating on his behalf or on behalf of his transition team" "concerning the appointment of Rebecca Valcq or any other person to the Public Service Commission of Wisconsin." (*Id.* (emphasis added).)

In his timely written response to Plaintiffs' subpoena, Mr. Garvin objected on the following grounds:

- The requests do not relate to any issue in the case, as framed by Plaintiffs' Complaint.

---

[3] Taken to its logical conclusion, Plaintiffs' theory would mean that public servants including commissioners, judges, and other judicial officers would be unfit to preside over any proceeding in which a former work colleague or friend represents (or even works for) any entity remotely connected with the matter *even if that entity is not a party to the case*. For good reason, that is not the recusal standard.

[4] It is clear that Plaintiffs' broad discovery efforts in this lawsuit are also intended (at least in part) to bolster their claims in the parallel proceeding they have brought in the Dane County Circuit Court. Indeed, on October 19, 2020 Plaintiffs moved the Circuit Court to accept as non-record evidence in the Court's review of the PSC proceeding text messages that Plaintiffs received from Defendants in discovery in this case (among other things). (Exh. B, Nolan Decl., ¶ 4 & Exh. 1 thereto.)

4

- The phrase "anyone communicating on [a Commissioner's] behalf" is vague and ambiguous. Whether a person was "communicating on [a Commissioner's] behalf" may be subject to subjective interpretation. The phrase could be interpreted to mean anyone and everyone employed by the PSC.

- The phrase "anyone communicating on [Mr. Garvin's] behalf" is vague and ambiguous. Whether a person was "communicating on [Mr. Garvin's] behalf may be subject to subjective interpretation. The phrase could be interpreted to mean many, if not most, of WEC's over 7,500 employees.

- The phrase "anyone communication on [Governor Evers'] behalf is vague and ambiguous. Whether a person was "communicating on [Governor Evers'] behalf may be subject to subjective interpretation. The phrase could be interpreted to mean anyone and everyone who works for the State of Wisconsin.

- The time period is overbroad because it seeks information about all communications to date. The Commission made its decision on the Cardinal-Hickory Creek transmission line on September 26, 2019. If the ostensible relevance of the requests is potential bias with respect to that decision, subsequent communications are irrelevant.

- The requests for Mr. Garvin's communications with the Commissioners are not limited as to the topic of the communication at issue, but rather broadly seek "all documents reflecting, recording, noting, memorializing, or describing" "each communication," regardless of whether the topic is even arguably relevant to any issue in the case.

(Dkt. 118-9.)

Plaintiffs did not contact Mr. Garvin's counsel to discuss these objections or engage in any discussion about how the requests might be narrowed. (Exh. B., Nolan Decl., ¶ 3.) Plaintiffs instead moved to compel three days later, grouping Mr. Garvin with six other non-parties, and baselessly accusing him of participating in a concerted effort to stonewall Plaintiffs' discovery in this case.

The Motion to Compel makes just three arguments in favor of the discovery Plaintiffs seek:

- Some third parties' objections to the subpoenas were waived because they were not timely raised or were raised in a way that does not meet technical requirements. (Dkt. 117 at 5-7.) *This does not apply to Mr. Garvin.*

- The objection to production of "purely personal" communications should be rejected because under the Plaintiffs' new, broader theory of the case such communications might provide evidence of the "close ties and relationships between the defendant Commissioners and the parties appearing before them in the CPCN proceeding." (Dkt. 117 at 7.) *This does not apply*

5

*to Mr. Garvin because neither he nor his employer appeared in the CPCN proceeding.*

- Objections to production of privileged argument should be rejected, either because they are not legitimate, or because Plaintiffs do not seek privileged material. (Dkt. 117 at 8-9.) *Mr. Garvin did object to production of privileged materials, but that was just one of several objections.*

The Motion to Compel fails altogether to address Mr. Garvin's other objections, including the extension of Plaintiffs' requests to *all* communications (regardless of topic)—overly nearly a three-year period.[5] Plaintiffs gloss over the exceedingly broad nature of their requests and lose sight of the issues in the case, as framed by the Complaint. The Motion to Compel should be denied as to Mr. Garvin.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 26 permits the discovery of any non-privileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Fed. R. Civ. P. 26(b)(1). The scope of discovery extends only so far as claims pled in the Complaint. *Bak v. Home Video Franchising Corp.*, No. 1:09-CV-1196-RLY-DML, 2010 WL 3211041, at *2 (S.D. Ind. Aug. 12, 2010) ("Relevance is determined in light of the allegations in the complaint and the usefulness of the information in establishing those allegations." (citing *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588

---

[5] To the extent Plaintiffs attempt to address each non-party individually in their reply brief and offer particularized reasons why each respective subpoena seeks relevant information (which Plaintiffs should have done in the first instance in the Motion to Compel), such effort should be rejected. As this court has held, "reply briefs are not the place to raise new arguments." *Link Snacks, Inc. v. Fed. Ins. Co.*, No. 08-CV-714, 664 F.Supp.2d 944, 960 (W.D. Wis. Oct. 20, 2009) (*citing Narducci v. Moore,* 572 F.3d 313, 324 (7th Cir.2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.")). Alternatively, Mr. Garvin should be given an opportunity to respond to any particularized relevance arguments raised for the first time in Plaintiffs' reply.

F.2d 221, 226 (7th Cir. 1978)). Relevance is not determined by looking to the "subject matter" involved in the lawsuit—but rather "the actual allegations contained in the complaint." *Beauchem v. Rockford Prod. Corp.*, No. 01 C 50134, 2002 WL 100405, at *1 (N.D. Ill. Jan. 24, 2002); *Ellman v. Hentges*, No. 99 C 50269, 2001 WL 649508, at *1 (N.D. Ill. June 8, 2001) ("The relevance of the documents requested by Plaintiff is determined by the scope of her complaint." (citing Fed. R. Civ. P. 26(b)(1)); *see also Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016) (noting that the 2015 amendments to the Federal Rules of Civil Procedure "deleted from Rule 26 a party's ability, for good cause, to obtain discovery of any information relevant to the subject matter of the case, and the notion that information is discoverable, even if not directly relevant, if it is reasonably calculated to lead to the discovery of admissible evidence").

"The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) (citing Advisory Committee Note regarding 1991 amendments to Rule 45 ("non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34")); *Jackson v. Brinker,* 147 F.R.D. 189, 193–94 (S.D. Ind. 1993) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.").

"Non-parties are *not* treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, *non-parties are entitled to somewhat greater protection*." *In re Subpoenas to Wisconsin Energy Corp.*, No. 10-MC-7, 2010 WL 715429, at *1 (E.D. Wis. Feb. 24, 2010) (emphasis added; quotation marks omitted); *see also Pinehaven Plantation Prop., LLC v. Mountcastle Family LLC*, No. 1:12-CV-62, 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013) ("[I]t is a

generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery.").

If the requested discovery is within the scope of Rule 26, when determining whether to enforce subpoenas to third parties, "[t]he Seventh Circuit applies a 'relative hardship test,' considering whether the burden of compliance would exceed the benefit of production of the materials sought." *In re Subpoenas to Wisconsin Energy Corp.*, 2010 WL 715429, at *1 (quoting *Nw. Mem. Hosp. v. Ashcroft,* 362 F.3d 923, 927, 933 (7th Cir. 2004)). "Additionally, the Court may consider whether the subpoena seeks discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)).

## ARGUMENT

Plaintiffs' Motion to Compel fails as to Mr. Garvin for two reasons. First, the requests at issue seek irrelevant information. Second, even if the requests did seek some relevant information (which Mr. Garvin disputes), the requests are overbroad and disproportionate to the needs of the case.

### 1. Plaintiffs' requests seek irrelevant information.

Plaintiffs' Complaint does not mention Mr. Garvin even once. And Plaintiffs' Motion to Compel makes no attempt whatsoever to explain why Mr. Garvin's communications are relevant to any claim or issue in the case. The Motion to Compel addresses Mr. Garvin exactly *twice*: when mentioning that he is the "Executive Vice President of External Affairs at WEC Energy Group and the brother of John Garvin," and when explaining that Mr. Garvin served formal objections to Plaintiffs' requests. (Dkt. 117 at 2, 4.) Plaintiffs have fallen miserably short of establishing that the communications sought from Mr. Garvin are relevant to the claims and issues in the case.

Without explaining what this has to do with Mr. Garvin, Plaintiffs assert in the Motion to

8

Compel that, through discovery in this case, they have discovered "several close relationships between the Commissioners and the main players in the industry that the PSC is tasked with regulating, including the entities *that appeared before the PSC* in the CPCN contested case." (Dkt. 117 at 7 (emphasis added); *id.* (asserting the need to probe "the close ties and relationships between the defendant Commissioners and *the parties appearing before them in the CPCN proceedings*" (emphasis added).)[6] Hoping the Court will take them at their word, Plaintiffs claim that the communications sought from all seven non-parties subject to the Motion to Compel "are evidence of those ties and relationships." (Dkt. 117 at 7.) But Plaintiffs provide no facts or information about Mr. Garvin (in either the Motion to Compel or the Complaint) which support that claim. And Plaintiffs do not even attempt to explain why Mr. Garvin's communications with anyone might bear upon the Commissioners' "ties and relationships" with any of the parties that appeared before the PSC.

In reality, Plaintiffs' theory of the PSC Commissioners' "entanglements" is a moving (and vastly growing) target based on rank speculation, which Plaintiffs can only hope to support by a fishing expedition. This is not an adequate basis for discovery. *See Howard v. Meli*, No. 17-CV-1353-PP, 2020 WL 4464606, at *4 (E.D. Wis. Aug. 4, 2020) ("It is no longer true that a request is relevant if there is *any possibility* that the information it seeks may be relevant. Now the request must be proportional, and a party must show, among other things, that the discovery is important in resolving the issues in the case."); *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) (concluding the discovery requests were "as a matter of law not relevant" where they did not relate to the issues presented in the complaint or any of the defendant's affirmative defenses).

Looking past Plaintiffs' vague statements in their omnibus Motion to Compel to the allegations in the Complaint still does not show that Plaintiffs' requests to Mr. Garvin seek relevant information.

---

[6] Again, Mr. Garvin's employer, WEC, did not appear before the PSC in the case at issue.

In the Complaint, too, Plaintiffs allege that "entanglements with other parties *centrally involved in the case* [before the PSC] presented conflicts of interest and at least an appearance of bias and lack of impartiality" on the part of Commissioner Huebsch and Commission Chair Valcq. (Dkt. 1, ¶ 3 (emphasis added).). Neither Mr. Garvin nor his employer, WEC, were "centrally involved in the case"—WEC was not involved directly, indirectly, or tangentially. The Complaint does not allege any specific facts establishing WEC's particular interest in the Cardinal-Hickory Creek transmission line, other than the publicly-known fact that WEC is a partial owner of one of the applicants (ATC). But the PSC CPCN was one of many approvals needed for the project and WEC has taken no position—nor does it have one—on where the transmission line will be placed. Hence, it had no involvement in the PSC proceeding whatsoever, as a party or otherwise. (Garvin Decl., Exh. A, ¶ 3, 4.) In fact, when ATC solicited WEC and other ATC members to submit a letter to the PSC in support of the project, WEC declined to do so. (*Id.*) WEC also declined to intervene in the proceeding as a party. (*Id.*)

The only other alleged "link" between the case and WEC is Commissioner Valcq's past employment as in-house counsel for WEC (which ended in early 2014) and as a partner at Quarles & Brady, LLP, which serves as an outside law firm for WEC. Plaintiffs allege that "[t]he extent of Chair Valcq's relationship with We Energies and WEC Energy Group . . . creates at least an appearance of bias and lack of impartiality." (Dkt. 1, ¶¶ 58, 63–63, 150.) It is entirely unclear why communications between Mr. Garvin and any PSC Commissioner or Governor Evers relate in any way to this issue. Since Plaintiffs claim that Commissioner Valcq's "past employment" in and of itself is sufficient to establish "an appearance of bias and lack of impartiality," communications with Mr. Garvin years after Commissioner Valcq left WEC's employment are irrelevant. Indeed, the Complaint alleges no facts which Commissioner Valcq's communications with Mr. Garvin could prove or disprove. Nor

does the Complaint make any allegation to which Mr. Garvin's communications with Governor Evers regarding "the appointment of Rebecca Valcq or any other person to the [PSC]" could be relevant.

The request for Mr. Garvin's communications with Commissioner Huebsch is even more tenuous. The Complaint contains no allegations linking Commissioner Huebsch and WEC (much less Mr. Garvin). To substantiate Commissioner Huebsch's alleged bias, the Complaint alleges that his "entanglements with MISO [(a party to the case before the PSC)] presented a conflict of interest and created at least the appearance of bias and impropriety if not actual bias and impropriety." (Dkt. 1, ¶ 160.) Plaintiffs claim that MISO "developed and approved the proposed ATC line as part of its 'Multi Value Portfolio' a decade ago." (*Id.*, ¶ 92.) Plaintiffs attached as an Exhibit to the Complaint a publicly-available "Membership Listing" for MISO that includes Wisconsin Electric Power Company and Wisconsin Public Service Corporation, two subsidiaries of WEC, among *187* other members. (Dkt. 1-9.)

Most irrelevant of all is Plaintiffs' request for all communications between Mr. Garvin and Commissioner Nowak. The Complaint contains no allegations whatsoever of bias or partiality on the part of Commissioner Nowak, much less any bias or partiality stemming from a relationship with WEC or Mr. Garvin. Plaintiffs' request for all WEC's communications with Commissioner Nowak is the paradigm of fishing expeditions.

> 2. **Plaintiffs' requests are overbroad and unduly burdensome.**

Even if Plaintiffs' requests to Mr. Garvin sought relevant information (they don't), Mr. Garvin should not be compelled to respond because the requests are overbroad, unduly burdensome, and disproportionate to any conceivable need in the case. Plaintiffs claim that their subpoena to Mr. Garvin is "narrowly tailored to seek nonprivileged, relevant material without imposing an undue burden." (Dkt. 117 at 5.) This could not be further from the truth.

First, the phrases "anyone communicating on [a Commissioner's] behalf," "anyone communicating on [Mr. Garvin's] behalf," and "anyone communicating of [Governor Evers' or his "transition team's"] are vague and ambiguous. These phrases could be interpreted to mean anyone and everyone at the PSC, WEC, and the State of Wisconsin. Plaintiffs did not attempt to clarify this ambiguity before moving to compel. (Exh. B., Nolan Decl. ¶ 3.)

Second, the time period for the requests is overbroad because it seeks information about all communications to date. The Commission made its decision on the Cardinal-Hickory Creek transmission line on September 26, 2019. If the ostensible relevance of the requests is potential bias with respect to that decision, subsequent communications are irrelevant and the requested time period is overbroad. Plaintiffs did not contact WEC to discuss a more narrow time period before moving to compel. (*Id.*)

Third, the requests are not limited as to the topic of the communication at issue, but rather broadly seek "all documents reflecting, recording, noting, memorializing, or describing" "each communication," regardless of whether the topic is even arguably relevant to any issue in the case. As WEC's Executive Vice President - External Affairs, Mr. Garvin communicates with regulatory staff about dozens, if not hundreds, of pending matters as well as day-to-day operations. (Exh A, Garvin Decl., ¶ 5.) Plaintiffs made no attempt to work with Mr. Garvin to narrow their requests by topic before moving to compel. (Exh. B, Nolan Decl., ¶ 3.)

The burden and expense of collecting documents in the custody of Mr. Garvin's employer, WEC, is estimated in WEC's response to the Motion to Compel, filed contemporaneously herewith. Mr. Garvin would also need to take time to search personal communications that would not be captured in a search of WEC's records. Given the dearth of allegations in the Complaint making these communications relevant in the first place, this burden (and invasion of privacy) is disproportionate

to the needs of the case. And even if Plaintiffs established in their Motion to Compel that the information requested from Mr. Garvin might "prove" that relationships existed between certain Commissioners and certain players in the Wisconsin energy industry who appeared before the PSC (they haven't), it is far from proportionate to collect "all communications" simply to "prove" those relationships existed.

Fourth, the information that Plaintiffs appear to seek regarding the relationships between the PSC Commissioners and "the entities that appeared before the PSC in the CPCN contested case" can be obtained "from some other source that is more convenient, less burdensome, or less expensive"— a stipulation or testimony from the PSC Commissioners or the parties who appeared before the PSC. *See In re Subpoenas to Wisconsin Energy Corp.*, 2010 WL 715429, at *1 ("[T]he Court may consider whether the subpoena seeks discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" (quoting Fed. R. Civ. P. 26(b)(2)).); *see also In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *4 (N.D. Ill. May 13, 2011) ("Even if it is found that the information sought from Third Parties by Plaintiffs is relevant, by their own admissions, Plaintiffs have not shown that they have fully exhausted other reasonable sources of gaining the information sought in the subpoenas…. The record reflects that Plaintiffs' attempt to obtain the information from Third Parties' is not the least intrusive means of obtaining such information and borders on harassment. Therefore, this court finds that Plaintiffs have not shown a compelling need for the information being sought.").

## CONCLUSION

Mr. Garvin's intent in responding to Plaintiffs' subpoena was not to obstruct Plaintiffs' efforts in this case. And, contrary to Plaintiffs' unfounded accusations, Mr. Garvin certainly has not entered a conspiracy with others to do so. Simply put, Mr. Garvin is not willing to undertake the burden,

13

expense, and invasion of privacy involved in responding to requests that do not meet the standards of Rule 26.

Dated: November 5, 2020.

QUARLES & BRADY LLP

By: */s/ Patrick S. Nolan*
Patrick S. Nolan (1024491)
Julia Wittman (1115063)
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53201
T: (414) 277-5465
patrick.nolan@quarles.com
julia.wittman@quarles.com