# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL HUEBSCH, REBECCA VALCQ, and ELLEN NOWAK, Commissioners, and PUBLIC SERVICE COMMISSION OF WISCONSIN, <br><br> Defendants. | Case No. 19-cv-1007-wmc |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY THE PROCEEDINGS AND POSTPONE THE TRIAL

Discovery opened in this case over five months ago, and Plaintiffs filed their Complaint nearly 11 months ago. Yet Defendants continue to try to delay the case—this time by jumping on the Defendant-Intervenors' bandwagon of re-raising the Defendants' purported immunity defense as a basis for a stay. As Plaintiffs explained in their response to the Defendant-Intervenors' Motion, the court has already decided this issue multiple times, and this argument has further been waived. In addition, a stay would be inappropriate here because: (1) the merits of the immunity claim are very weak, and (2) a stay would harm the Plaintiffs by delaying the resolution of Plaintiffs' claims while the Defendant-Intervenors continue to move forward with the proposed Cardinal-Hickory Creek transmission line, including efforts to acquire property interests from farmers and other landowners along the route. At the November 9, 2020 hearing, the Court indicated that a stay is likely not warranted.

1

I.       **Defendants' Motion Is Part of Continuing and Concerted Efforts to Delay the Case**

As Plaintiffs have explained in previous filings, the Defendants have repeatedly sought to delay and obstruct Plaintiffs' access to information to support their claims, both in this case and with respect to the Open Records Request.[1] First, in the meantime, the Defendant-Intervenors are continuing to steadily move forward with the proposed Cardinal-Hickory Creek transmission line. They have begun making offers for easements along the route[2] and have stated their intention to begin construction in 2021. The further along they get, the more damage will be done to Plaintiffs' and their members' interests. Even before 170-foot steel towers are erected, the 150-foot wide right-of-way will be cleared to the ground, destroying habitat, creating an eyesore, opening an avenue for invasive species, and increasing erosion. And the further along they get, the more the Defendants and Defendant-Intervenors will argue that the equities favor allowing the project to continue.

Second, Defendants apparently are trying to prevent Plaintiffs from using any information discovered in this court in a related lawsuit in the Dane County Circuit Court. That state case is a direct appeal of the PSC's approval of the CPCN, and includes claims that the PSC violated state laws related to the appearance of bias and lack of impartiality, and improper *ex parte* communications. Rather than conducting duplicative discovery in that case, which could

---

[1] Defendants argue that it is "inappropriate" for Plaintiffs to bring up the Open Records Request. However, the records Plaintiffs sought were relevant to their claims in this case, and they can be used in this case. Defendants' actions show a pattern of obstruction. Defendants further argue that their delay in responding to the Open Records Request was justified due to the PSC's Chief Legal Counsel being on medical leave and due to the COVID-19 pandemic. In fact, communications from PSC's Chief Legal Counsel suggest that she was back from leave on February 4, 2020, meaning that even after her return, the PSC failed to produce the records for months. While Plaintiffs acknowledge that COVID-19 may have created some difficulties in promptly responding to Open Records Requests, Wisconsin's "Safer-at-Home" order was not issued until late March 2020 (two months after the request was submitted). Finally, Defendants state that the parties stipulated to the dismissal with prejudice of the Open Records Request. This is accurate, but in no way means that the lawsuit was not meritorious—rather, the Assistant Attorney General on the case agreed to turn over the requested records in exchange for Plaintiffs' dismissal of the case, which was the quickest way for Plaintiffs to finally obtain the records.
[2] PSC Docket No. 5-CE-146, REF#: 398634, https://apps.psc.wi.gov/pages/viewdoc.htm?docid=398634.

have led to significant delay, Plaintiffs have sought, in the state case, to introduce documents and information discovered in this case.[3] The state court expressed interest in these materials and ordered briefing on whether it should accept the evidence into the record, how it would do so, and what the implications would be. Defendants seem to be trying to stay discovery in this case, in part, to run out the clock so that any new materials cannot be presented to the state court. This is not a legitimate reason to stay discovery in this case.

Defendants' assertion that this motion is due to their need to focus on preparing for the oral argument on November 9, 2020 (Doc. # 129 at 2, 4, 7) is disingenuous. Plaintiffs are filing this response on the day it is due, November 10, 2020, and oral argument occurred yesterday. Moreover, the Court has now struck the previously scheduled deadline of November 20, 2020, for dispositive motions.

## II. The Court Has Decided Three Times That Discovery Is Appropriate, and Defendants Have Also Waived This Argument

The Court has already decided three times that discovery is appropriate. First, when setting the case schedule, and twice more in granting Plaintiffs' (first) Motion to Compel (Doc. # 61) and, then, in denying Defendants' Motion for Reconsideration on that ruling. Doc. # 64. The principal Defendants then voluntarily agreed to a revised schedule when Defendant-Intervenors were granted intervention—a schedule that continued to allow discovery and did not move the trial date. Doc. # 73.

Defendants argue that a court can revise interlocutory orders at any time before the entry of final judgment. Doc. #129 at 5. To the extent Defendants are styling their Motion as a request for the Court to reconsider Magistrate Judge Crocker's discovery orders, this also fails. This Court has explained that "[t]he only vehicle plaintiff can use to obtain reconsideration of a

---

[3] Plaintiffs did *not* include the text messages that were previously designated as confidential in this case.

3

discovery order entered by the magistrate judge is a motion brought pursuant to 28 U.S.C. § 636(b)(1)(A)," which states that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Campbell v. Johnson*, No. 04-C-661-C, 2005 WL 1657090, at *1 (W.D. Wis. July 14, 2005). Defendants did not reference this standard and have not demonstrated that Magistrate Judge Crocker's pretrial orders are "clearly erroneous or contrary to law." *See Henderson v. Frank*, No. 06-C-12-C, 2006 WL 3377567, at *1 (W.D. Wis. Aug. 8, 2006) ("Because plaintiff has not shown that Judge Crocker's July 26 order was clearly erroneous or contrary to law, his motion for reconsideration will be denied.").

Defendants argue that Plaintiffs have served and noticed a supposed "staggering" amount of discovery in recent weeks. Doc. #129 at 3. Yet very little of this new discovery was directed at Defendants. Only two depositions—and no additional written discovery—apply to Defendants. And the parties have rescheduled the depositions of Chair Valcq and Commissioner Huebsch, originally scheduled for November 9 and 10, to November 17 and 23.

### III.     A Stay Is Not Justified and Would Prejudice Plaintiffs.

Defendants acknowledge that a discovery stay is "not automatic," and requires good cause. Doc. # 129 at 5. Here, there is none. First, the Court has already decided that discovery is appropriate. The Court has exercised its discretion and allowed discovery.

Second, Defendants' basis for arguing for a stay is their purported Eleventh Amendment immunity. But their immunity defense is quite weak and does not justify a stay of proceedings, either pending the Motions to Dismiss, or if the immunity defense is rejected in the Court's ruling on the Motions, pending an appeal. Defendants cite to *Landstrom v. Illinois Dep't of Children & Family Services*, 892 F.2d 670, 674 (7th Cir. 1990), for the argument that raising

immunity in a motion to dismiss requires the stay of all discovery. But that case is easily distinguishable. In *Landstrom,* the plaintiffs' initial complaint was struck, and they were given multiple opportunities to file amended complaints. On their fifth amended complaint, the court again granted defendants' motion to dismiss on the basis of qualified immunity and failure to state a claim. The Seventh Circuit affirmed the dismissal of the suit, and affirmed the district court's decision to stay discovery pending the resolution of the defendants' immunity claims. In other words, in *Landstrom*, the defendants raised a legitimate—and ultimately successful— immunity defense. Here, Defendants raise a facially flawed immunity argument.

Defendants also twice cite to *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001), for the proposition that discovery should not occur when immunity is raised as a defense. Doc. # 129 at 2, 4. However, while *Richman* is about immunity issues, it *does not even mention* discovery or stays.

The Defendants' immunity argument in the current case is facially flawed and does not justify a stay, either prior to a resolution of the Motions to Dismiss, or during any subsequent appeals of the Court's decision on those Motions. In their Reply in support of their Motion to Dismiss, Defendants acknowledge that *Ex Parte Young* applies if Plaintiffs seek prospective, injunctive relief to remedy an ongoing violation of federal law. Doc. # 58 at 10. Plaintiffs do seek such relief. The violation of federal law is not "over" simply because the Defendants have issued their Final Decision. The actual taking of Plaintiffs' and their members' land has yet to occur, and Plaintiffs therefore necessarily seek prospective relief. Additionally, the Defendants have continuing, active oversight over the Defendant-Intervenors' development and construction of the transmission line. For example, adjustments to the approved route require consultation with PSC staff and may require review by the Defendant PSC. This has actually already

5

happened for this transmission line—the Defendant-Intervenors submitted a request for authorization for a route adjustment on October 9, 2020.[4] The PSC staff then filed a data request in the PSC docket seeking additional information.[5] The PSC therefore clearly retains jurisdiction over the project and the Defendant-Intervenors, and the final numbered paragraph of the "Order" at the end of the Final Decision even states, "Jurisdiction is retained." Doc. # 7-1 at 100.

The Defendants' continuing authority and oversight is evident in numerous other aspects of the Final Decision. The Defendant-Intervenors must "develop and submit [construction and mitigation plans] on a segment-by-segment basis for Commission staff review to ensure all of the requirements in this Final Decision are addressed sufficiently in each plan." Doc. # 7-1 at 62. As another example, the Defendant-Intervenors must hire an independent construction monitor, who reports to the Defendants, ensures compliance by the Defendant-Intervenors, and has the authority to stop work on the transmission line. *Id*. at 60–61.

Defendants argue that Plaintiffs have an available state remedy and that there is therefore not an ongoing violation of federal law. However, *Knick* clearly held that state court litigation is not a prerequisite to a federal Section 1983 lawsuit. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019).

As Plaintiffs explained in their Response to the Defendant-Intervenors' Stay Motion (Doc. # 113 at 14–15), it is entirely reasonable for a Court to take a "preliminary peek" at the merits in deciding whether to stay a case pending a Motion to Dismiss. This helps prevent Defendants from abusing the system by making weak arguments to cause significant delay. And if the Court denies Defendants' immunity defense in its decision on the Motion to Dismiss, and if Defendants appeal, a stay would still not be appropriate due to the weakness of the immunity

---

[4] PSC Docket No. 5-CE-146, REF#: 398093, https://apps.psc.wi.gov/pages/viewdoc.htm?docid=398093.
[5] PSC Docket No. 5-CE-146, REF#: 399002, https://apps.psc.wi.gov/pages/viewdoc.htm?docid=399002.

defense. A district court may determine an appeal of the denial of an immunity defense to be frivolous and thereby retain jurisdiction over the case. *Apostol v. Gallion*, 870 F.2d 1335, 1339–40 (7th Cir. 1989). Relatedly, an appeal may be so weak so as to not create jurisdiction in the appellate court. *Id.*

Furthermore, Plaintiffs would be harmed by a stay. As explained above, delay of the proceedings is prejudicial to Plaintiffs because it pushes back the resolution of their claims, while the Defendant-Intervenors continue to move forward with the Cardinal-Hickory Creek transmission line. Every week of delay pushes the parties close to the condemnation of private property and irreversible damage to communities and the landscape.

Defendants' arguments about the timing of recent discovery miss the mark. Defendants claim that the Plaintiffs would not be prejudiced by a stay of discovery because the depositions were scheduled too late for Plaintiffs to use any information gained to defeat the Motions to Dismiss and Motions for Summary Judgment. Doc. #129 at 6. With respect to the Motions for Summary Judgment, the factual premise is simply not true. Most of the depositions were initially noticed to occur before the Plaintiffs' *response* on the Motions for Summary Judgment was initially due—in other words, Plaintiffs would have had the information from the depositions to respond to the Motions. Further, a stay on discovery would also impact other outstanding discovery besides the depositions, which Plaintiffs may use to respond to the Motions for Summary Judgment. And while Plaintiffs have not objected to modest extensions for dispositive motions, they have consistently raised concerns about undue delay in light of the continuing development of the transmission line, and never agreed to a stay of discovery.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Stay the Proceedings and Postpone the Trial.[6]

Respectfully submitted this 10th day of November 2020.

| | |
|---|---|
| _/s/ Stephen P. Hurley_ | _/s/ Howard A. Learner_ |
| Stephen P. Hurley | Howard A. Learner |
| Catherine E. White | Rachel L. Granneman |
| Hurley Burish, S.C. | Environmental Law & Policy Center |
| 33 East Main Street, #400 | 35 East Wacker Drive, Suite 1600 |
| P.O. Box 1528 | Chicago, IL 60601 |
| Madison, WI 53703 | T: (312) 673-6500 |
| T: (608) 257-0945 | F: (312) 795-3730 |
| F: (608) 257-5764 | hlearner@elpc.org |
| shurley@hurleyburish.com | rgranneman@elpc.org |
| cwhite@hurleyburish.com | |

---

[6] If the Court is inclined to grant the Defendants' motion, Plaintiffs respectfully request that it condition the stay of litigation upon a stay of the Defendant-Intervenors' development of the Cardinal-Hickory Creek transmission line, including property appraisals, easement offers, and condemnation proceedings; otherwise, the stay will allow irreparable harm to Plaintiffs.