IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-cv-1007-wmc |
| MICHAEL HUEBSCH, REBECCA VALCQ, and ELLEN NOWAK, Commissioners, and PUBLIC SERVICE COMMISSION OF WISCONSIN, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO COMPEL COMPLETE RESPONSES
FROM DEFENDANT-INTERVENORS TO FIRST SET OF DISCOVERY REQUESTS
AND FOR EXPEDITED BRIEFING**

Plaintiffs respectfully move the court to compel Defendant-Intervenors ATC, ITC, and Dairyland Power Cooperative to fully comply with the Plaintiffs' pending requests for production, and request an expedited briefing schedule on this Motion. Plaintiffs' counsel met and conferred with counsel for Defendant-Intervenors on November 17, 2020, and were unable to resolve the outstanding issues. Declaration of Granneman, ¶ 3 and Exhibit A. The discovery requests for communications between the Defendant-Intervenors and Commissioners Valcq, Huebsch, and Nowak, and anyone communicating on their behalf, are relevant to Plaintiffs' claims and are proportional to the needs of the case. Including communications sent by others on a Commissioner's behalf does not make the requests unduly broad, nor does including communications sent after the Defendants' Final Decision. Similarly, communications between Defendant-Intervenors and Governor Evers and/or his transition team about the appointment of

1

specific Commissioners are relevant to Plaintiffs' claims and are proportional to the needs of the case.

## INTRODUCTION

This case is about the appearance, at least, of bias, lack of impartiality, and *ex parte* communications involved in the Defendants' approval of a Certificate of Public Convenience and Necessity ("CPCN") for the proposed Cardinal-Hickory Creek transmission line. A timely resolution of the case is important for protecting Plaintiffs' interests. Plaintiffs and their members who own property along the transmission line route are already affected because of the cloud overhanging title to their properties, creating stress and uncertainties, and impacting property values. The further along the Defendant-Intervenors get in developing this proposed transmission line, the greater the harm to Plaintiffs and their members.

The PSC's Final Decision states that construction was expected to begin in October 2020. Doc. #7-1. Defendant-Intervenors now say Fall 2021. Plaintiffs understand that while actual construction has not yet begun, Defendant-Intervenors have started making offers to landowners for easements, with the next step being the condemnation of land when the owners are not willing to voluntarily sell an easement. Long before the 17-story steel towers are erected, the Defendant-Intervenors will take private property and conservation lands, and clear a 150-foot right-of-way to the ground, destroying habitat, creating eyesores, opening avenues for invasive species, compacting farmland, and increasing erosion.

For example, DALC member Alan Jewell uses sustainable no-till farming on his family farm—which reduces soil erosion and compaction—and has restored several acres of the property to native prairie. The approved route for the proposed Cardinal-Hickory Creek transmission line would run through his farm for over a half-mile through cropland and over

restored prairie. Declaration of Alan Jewell, p. 3 ¶ 8, p. 4 ¶13. The Defendant-Intervenors' clearing of that right-of-way to the ground would destroy the restored prairie and potentially impact the cropland as well.

While the Defendant-Intervenors move forward with obtaining property, they and the aligned principal Defendants and third-parties have engaged in systematic efforts to stymie Plaintiffs' discovery of relevant information and, thereby, slow this Court's consideration of evidence.

### Background on Discovery

A summary of Plaintiffs' discovery efforts to date reveal several patterns of Defendants' and Defendant-Intervenors' and allied third parties' stalling tactics, including: (1) refusal to comply with discovery requests; (2) claims that requests are not relevant despite a determination by the Court that the topics are relevant; (3) claims of attorney-client privilege made without an accompanying privilege log; (4) objections that information cannot be obtained from Party A because Party B might have the same or similar information; (5) claims of possible, but unspecified, trade secrets or supposedly sensitive or confidential information when there is already a protective order in place to address confidential information; (6) withholding of documents so that Plaintiffs are coerced to either take depositions without relevant documents or have to reschedule the depositions; and (7) filing motions in other district courts (*i.e.,* Southern District of Indiana and Eastern District of Wisconsin) to oppose discovery in this case.

### Discovery to Defendants

- Plaintiffs filed an Open Records Request to Defendant PSC in January 2020. After the Defendant PSC still failed to produce any documents months later, Plaintiffs ultimately brought a lawsuit in state court to obtain the documents, and the Defendant PSC finally produced the requested records in June and July, 2020.

- Discovery opened in this case in late May, and Plaintiffs served their first set of discovery requests in early June. Defendants stated that they would not comply with any discovery requests.  The Plaintiffs then filed a motion to compel, which the Court granted. Defendants then sought reconsideration, which the Court denied.

- Defendants have continued to withhold documents they consider to be "purely personal," while still continuing to produce documents responsive to Plaintiffs' requests served back in early June. As explained in Plaintiffs' Motion to Compel to the Defendants (Doc. # 97 at 11), Defendants' designation of documents as "purely personal" appears to have less to do with the content of the documents, and more to do with whether the documents are potentially harmful to Defendants' positions. For example, Defendants produced their fifth supplemental response on November 5th, asserting that they were only producing communications with non-parties "that could be seen as relating to his official duties as Commissioner." Declaration of Hurley, Exhibit A. The production included the following text message exchange:

  > Joe Wilson[1]: GRATEFUL DEAD PELETON[2] RIDE!!!
  > Michael Huebsch: YES!! Who is the instructor? Just leaving tennis so I'll have to catch it on demand.
  > Joe Wilson: Jen Sherman. Cheesy but the music's great.
  > Michael Huebsch: Can't wait.

  Declaration of Hurley, Exhibit B.

- Plaintiffs have had to twice postpone the scheduled depositions of Chair Valcq and Commissioner Huebsch because non-parties have not produced relevant documents that Plaintiffs need to make effective use of the depositions.

### Discovery to Non-Parties

Plaintiffs served deposition notices and subpoenas duces tecum on non-parties MISO, Robert Garvin, John Garvin, Brian Rude, and Barbara Nick. Plaintiffs also served subpoenas duces tecum on WEC Energy Group and Quarles & Brady. Most of the subpoenas are nearly identical and request several categories of documents that can be summarized as follows: (1) communications occurring between January 1, 2018, and the present between each of the individual defendants and the subpoenaed party; (2) communications occurring between January

---

[1] Joseph Wilson is an attorney at Quarles & Brady and serves an outside counsel for WEC Energy Group. He filed a declaration in this case supporting WEC Energy Group's Response to Plaintiffs' Motion to Compel Compliance with Third Party Subpoenas. Doc. # 144.
[2] Peloton is a company that sells high-end home exercise bicycles to be used with streaming workout videos.

1, 2018, and the present between Governor Evers' transition team and the subpoenaed party concerning the appointment of Chair Valcq or any other person to the PSC. *See* Docs. # 118-1, -2, -4 to -7. The subpoena to MISO additionally requested: (1) communications occurring between January 1, 2018, and the present between MISO and ATC, ITC, DPC, or Clean Grid Alliance concerning the CPCN proceeding; (2) documents related to payments or reimbursements for Commissioner Huebsch's attendance at MISO and OMS events; (3) documents regarding the common interest agreement between MISO and ATC; (4) documents regarding any common interest agreement between MISO and any other party to the CPCN proceeding; and (5) documents referenced in the email (previously obtained by Plaintiffs through discovery) concerning the common interest agreement between MISO and ATC. *See* Doc. # 118-5.

The subpoena to Quarles & Brady is different because of the unique relationship between Quarles & Brady and the Defendants, and due to Plaintiffs' conscious efforts to avoid seeking information subject to attorney-client privilege.  The subpoena requests documents providing information that can be summarized as follows: (1) the date, time, and location of Chair Valcq's meetings with a defined list of Energy, Transmission, and Utility Companies and Organizations (including WEC Energy Group, ATC, MISO, OMS, DPC, and ITC); (2) the date, time, and location of events hosted by those defined Companies and Organizations that Chair Valcq attended; (3) the content of Chair Valcq's speeches at any of those events; (4) the date, time, and location of conferences attended by Chair Valcq during her tenure at Quarles & Brady; and (5) non-privileged billing information concerning Chair Valcq's work for those defined Companies and Organizations.

Plaintiffs are faced with across-the-board objections. *See* Plaintiffs' Motion to Compel and Brief in Support, Docs. # 116, 117.

- MISO did not serve formal objections, but rather sent an email that raised vague objections to discovery related to the common interest agreement between MISO and ATC. MISO stated that it was "currently unknown" when documents could be produced and demanded that Plaintiffs enter into a one-sided confidentiality agreement before MISO would produce any documents. Doc. # 118-13. MISO then filed a motion for protective order and for modification of Plaintiffs' subpoena in the Southern District of Indiana. Declaration of Hurley, Exhibit C.

- Robert Garvin (represented by Quarles & Brady) refused to produce any documents pursuant to the subpoena duces tecum, objecting on relevance, breadth, and burden. Doc. # 118-9. Robert Garvin also filed a motion to quash his notice of deposition in the Eastern District of Wisconsin, which has now been transferred to this Court. Case No. 3:20-mc-00013. Mr. Garvin filed the motion on the Friday before the scheduled Monday deposition. Declaration of Hurley, Exhibit D. In the motion to quash, Mr. Garvin argued that Plaintiffs could obtain any relevant information by instead deposing the parties to the case. *Id.*

- ATC and John Garvin jointly responded to the subpoena duces tecum served on John Garvin. Doc. # 118-17. The response largely parallels ATC's response to Plaintiffs' Requests for Production, refusing production on two requests and stating that partial responses would be provided on two requests—but stating that the documents would not be produced by the deadline in the subpoena (October 29, 2020), but would instead be produced as part of ATC's response to Plaintiffs' Requests for Production (which were due November 12, but which ATC has stated it will produce by November 19, 2020). John Garvin and ATC also filed a motion to quash the notice of deposition of John Garvin in this Court. They filed the motion on the Friday afternoon before the scheduled Monday deposition. See Docs. # 121, 132 at 3. In their motion, they argued that deposing John Garvin was inappropriate because information could be had through discovery to Defendants and ATC. Doc. # 121 at 8.

- Brian Rude objected to the subpoena duces tecum on various grounds and stated for each request that "Pursuant to the agreement of the parities [sic], Rude will produce responsive documents at a later date to be established." Doc. # 118-14. Barbara Nick also objected to the subpoena duces tecum on various grounds and stated for each request that "Pursuant to the agreement of the parities [sic], Nick will produce responsive documents at a later date to be established." Doc. # 118-15. Plaintiffs agreed to an extension for production for both Rude and Nick to November 6, 2020. Rude produced documents on November 6, but Nick did not. Plaintiffs had to postpone the depositions of Rude and Nick because Plaintiffs have not yet received documents pursuant to the subpoena duces tecum served on Barbara Nick, which may also be relevant to information sought in the deposition of Mr. Rude.

- WEC Energy Group (represented by Quarles & Brady) refused to produce any documents pursuant to the subpoena duces tecum, objecting on vagueness/ambiguity, relevance, breadth, and burden. Doc. # 118-8. WEC Energy Group also states that responsive documents "are likely subject to the attorney-client privilege." *id.* at 5, but did not provide a privilege log. WEC Energy Group also moved for limited intervention in this case, claiming that discovery to the

Defendants could include  communications about "personal matters" or "trade secrets or economic information." Doc. # 106 at 11, 12, 15. There is a protective order in this case to protect confidential information produced in discovery.

- Quarles & Brady refused to produce any documents pursuant to the subpoena duces tecum, objecting on various grounds, including that the requests seek information that is or may be covered by the attorney-client privilege, and would violate Quarles & Brady's confidentiality obligations under Wis. SCR 20:1.6(a), yet it did not provide a privilege log. Doc. # 118-10. Quarles & Brady also objected that documents sought would contain "sensitive and confidential information," *Id.* at 8. Quarles & Brady also moved for limited intervention in this case, claiming that discovery to the Defendants could include "communications regarding [Quarles & Brady] financial matters or business strategies, and other topics the disclosure of which may hard [Quarles & Brady]'s interests (or those of its clients) or the privacy interests of [Quarles & Brady] attorneys or clients." Doc. # 107 at 9. There is a protective order in this case to protect confidential information produced in discovery. Counsel for Quarles & Brady also argued that Plaintiffs could obtain relevant information from discovery to Chair Valcq instead. Declaration of Hurley, Exhibit E.

**Discovery Requests at Issue Here:**
**Requests for Production to Defendant-Intervenors**

Plaintiffs served Amended First Requests for Production of Documents on each of the Defendant-Intervenors on October 13, 2020. Declaration of Hurley, Exhibits F, G, H. Requests Nos. 1-3 sought communications between representatives of each of the Defendant-Intervenors and each of Commissioner Huebsch, Chair Valcq, and Commissioner Nowak (or anyone acting on their behalf) between January 1, 2018, and the present. Request No. 4 sought communications between representatives of each Defendant-Intervenor and Governor Evers (or anyone communicating on his behalf or on behalf of his transition team) concerning the appointment of Chair Valcq, Commissioner Nowak, or any other person to the PSC, between January 1, 2018, and the present.

On November 12, 2020, each of the Defendant-Intervenors served near-identical responses. Declaration of Hurley, Exhibits I, J, K. Each of the Defendant-Intervenors objected on the bases of breadth, burden, and relevance. The Defendant-Intervenors ultimately agreed to produce some documents responsive to Requests Nos. 1 and 2 (communications with

Commissioner Huebsch and Chair Valcq), but only from January 1, 2018, to September 26, 2019

(the date of the PSC's Final Decision approving the Cardinal-Hickory Creek transmission line),

and apparently only communications directly from Commissioner Huebsch and Chair Valcq (and

not those acting on their behalf). Each of the Defendant-Intervenors refused to produce any

documents in response to Requests Nos. 3 and 4 (communications with Commissioner Nowak

and with Governor Evers or his transition team).

## LEGAL STANDARD

Fed. R. Civ. Pro. 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

"The scope of discovery under Federal Rule of Civil Procedure 26 is broad and liberal." *United*

*States ex rel. Ceas v. Chrysler Grp. LLC*, 191 F. Supp. 3d 885, 888 (N.D. Ill. 2016) (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

## ARGUMENT

This case is about whether Commissioner Huebsch's, Chair Valcq's and Commissioner

Nowak's relationships, engagement and communications with active litigating parties in the

CPCN contested case proceedings, which they were deciding, and with entities related to those

parties, created at least the appearance of bias, and lack of impartiality in their decision to

approve the transmission line. It is about whether the totality of the circumstances, including the

Commissioners' ties to the parties and their affiliates, rises to the level that a reasonable person

could question the Commissioners' impartiality. *Williams v. Pennsylvania,* 136 S. Ct. 1899, 579

U.S. __ (2016); *Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868 (2009); *Bus. & Prof'l People for Pub. Interest v. Barnich*, 244 Ill. App. 3d 291 (1993).

The facts and circumstances in this case include: First, the Defendant Commissioners' relationships with WEC Energy Group and its attorneys. WEC Energy Group holds a 60% interest in American Transmission Company LLC (ATC), the lead developer of the transmission line in Wisconsin. Second, the PSC's formal membership and role in the Organization of MISO States ("OMS"), an organization funded almost entirely by the Midcontinent Independent System Operator ("MISO"), which was a litigating party in the contested case proceeding. OMS pays travel expenses for the Commissioners to attend conferences and meetings where they attend meetings and dinners with MISO staff and executives. The Defendant-Intervenors and transmission line developers—ATC, ITC Midwest, and Dairyland Power —are all members of MISO. Third, importantly, MISO and ATC had a common interest agreement by which they litigated the CPCN contested case before the PSC and the Defendant Commissioners.  Fourth, Commissioner Huebsch was a member of the MISO Advisory Committee providing advice to MISO's Board, Executive Director and other senior management while the CHC transmission line case was before the Commission and MISO itself was an active litigating party submitting legal motions and briefs, cross-examining Plaintiffs' and the PSC Staff's expert witness, and otherwise advocating alongside ATC, ITC and Dairyland in arguing for approval of the CPCN of the transmission line.

I.   **Request No. 1 Seeks Information Relevant to Plaintiffs' Claims and Is Proportional to the Needs of the Case**

Request No. 1 seeks communications between each Defendant-Intervenor and Commissioner Huebsch and anyone acting on his behalf, from January 1, 2018, to the present. The Defendant-Intervenors argue that communications not related to the Cardinal-Hickory Creek

transmission line or the Commission's contested case proceedings are not relevant, and their production is not proportional to the needs of the case. This Court has recognized, however, that the close social relationships between the Commissioners and the Defendant-Intervenors <u>are</u> relevant to Plaintiffs' claims. Doc. # 93.

Defendant-Intervenors assert that the Requests are overbroad and unduly burdensome because they request communications between Commissioner Huebsch or anyone communicating on his behalf. Defendant-Intervenors read this to encompass communications with "anyone at the Commission about any subject matter whatsoever." This is not a reasonable reading of the request—the request only encompasses staff at the PSC to the extent that staff person is communicating *on behalf of Commissioner Huebsch*. For example, if Commissioner Huebsch's Executive Assistant emailed an executive at ATC to set up golfing plans between Commissioner Huebsch and the ATC executive, that would be responsive to the request, and also relevant to Plaintiffs' claims. *See* Doc. # 93.

Defendant-Intervenors also argue that the requests are not reasonably limited in time because they include communications after the Defendant PSC's Final Decision on the Cardinal-Hickory Creek transmission line case. However, communications after the Final Decision are entirely relevant to the appearance of bias and to actual bias and lack of impartiality. For example, communications after the Final Decision could reference Commissioner Huebsch seeking a job as CEO at Dairyland Power, or *ex parte* communications that took place during the proceeding, or could reference a "quid pro quo" arrangement, or could provide additional evidence of a close social relationship that existed during the Commission proceeding.

II.     **Request No. 2 Seeks Information Relevant to Plaintiffs' Claims and Is Proportional to the Needs of the Case**

Request No. 2 seeks communications between each Defendant-Intervenor and Chair Valcq and anyone acting on her behalf, from January 1, 2018, to the present. The Defendant-Intervenors argue that because the Complaint does not allege that Chair Valcq specifically engaged in *ex parte* communications, no communications between Chair Valcq and the Defendant-Intervenors would be relevant. This is incorrect. Plaintiffs allege that Chair Valcq's long-time representation of WEC Energy Group and its affiliates, and her ties to the energy industry created at least an appearance of bias and lack of impartiality. Communications between Chair Valcq and the Defendant-Intervenors are relevant to those claims. Moreover, the Complaint constitutes appropriate notice pleading, and the discovery sought is fairly within the scope of the notice provided in Plaintiffs' Complaint.

As with Request No. 1, Defendant-Intervenors argue that: (1) only communications specifically about the Cardinal-Hickory Creek transmission line or the Commission proceeding could be relevant, (2) the request is too broad because it requests communications from those communicating on behalf of Chair Valcq; and (3) the request is too broad because it includes communications made after the Final Decision. These arguments likewise fail for the reasons explained in Part I, above.

III.    **Request No. 3 Seeks Information Relevant to Plaintiffs' Claims and Is Proportional to the Needs of the Case**

Request No. 3 seeks communications between each Defendant-Intervenor and Commissioner Nowak and anyone acting on her behalf, from January 1, 2018, to the present. Defendant-Intervenors raise several of the same objections that are addressed above. The unique argument here, which Defendant-Intervenors apparently rely upon for their decision to not

11

produce *any* responsive documents, is that the Complaint didn't allege wrongdoing specifically on behalf of Commissioner Nowak. First, as a general matter, whether a person has "done wrong" does not determine whether their communications may contain information relevant to a party's claims or defenses.

Second, as Defendant-Intervenors acknowledge, Plaintiffs pled in their Complaint that Commissioner Nowak was a Commissioner during the proceeding and voted in favor on the PSC's Final Decision. Doc. # 1 at ¶ 79. Commissioner Nowak was therefore personally involved in the decision that is the subject of Plaintiffs' claims. Commissioner Nowak is a proper defendant under Section 1983 because she "knew of the complained-of conduct and acquiesced in the continued participation of Commissioner Huebsch and Chair Valcq." *See* Plaintiffs Response to Intervenor-Defendants Motion to Dismiss, Doc. #77 at 14-15. Commissioner Nowak personally participated in the August 20, 2019, open meeting in which Chair Valcq turned the discussion over to Commissioner Huebsch to lead because of his participation in OMS and MISO. *Id.* Indeed, Commissioner Nowak's comments later in that meeting suggest that she gave deference to the objectives of MISO (the "Regional Transmission Organization" or "RTO"), and acknowledged Commissioner Huebsch's close relationship with MISO:

> Commissioner Huebsch you referenced MISO witness Ellis' testimony and I found that quite persuasive as well. He noted that the result of not constructing this project would be the inability of the existing transmission system to reliably deliver the full output of renewable generators and fail to realize other MVP benefits. I think that is fairly key. We are, there is not a fence around Wisconsin. **The reality is we are in an RTO and we signed up for that almost 2 decades ago. And this is part of being in an RTO.** And we have to realize the benefits of the other MVP pieces, lines that were built. And this is just part of that project that we all participate in. **Commissioner Huebsch you do on a daily basis, being our MISO contact person.**

Declaration of Hurley, Exhibit L, p. 36, line 24, to p. 37, line 8 (emphasis added).

Because Commissioner Nowak participated in the decision-making in the Cardinal-Hickory Creek case, including the decisions to approve the proposed transmission line and to deny Plaintiffs' Motion for Recusal, and other discussions in the August 20, 2019, and September 26, 2019, open meetings, communications between her and the Defendant-Intervenors are relevant to Plaintiffs' claims of at least the appearance of bias, and lack of impartiality, and the Plaintiffs' discovery request is therefore proportional to the needs of the case.

IV.     **Request No. 4 Seeks Information Relevant to Plaintiffs' Claims and Is Proportional to the Needs of the Case**

Request No. 4 seeks communications concerning the appointment of Chair Valcq, Commissioner Nowak, or any other person to the PSC, between each of the Defendant-Intervenors and Governor Evers (or anyone acting on his behalf or on behalf of his transition team) from January 1, 2018, to the present. Defendant-Intervenors argue that the requested communications are not relevant and "bear no relation to the claims Plaintiffs have raised." Declaration of Hurley, Exhibits I, J, K, at p. 9.

As explained above, a central theme in Plaintiffs' Complaint is that close ties between the Commissioners and the regulated industry, including the Defendant-Intervenors, raises a concern about divided loyalties and creates at least an appearance of bias and lack of impartiality. Communications between the Defendant-Intervenors and Governor Evers and/or his transition team are relevant to these claims. For example, if Defendant-Intervenors suggested or supported the appointment of an individual to be a PSC Commissioner, that could, in conjunction with other evidence, support at least the appearance of, or potential for, bias.

Defendant-Intervenors again argue that any communications before April 2018 (when Defendant-Intervenors submitted their application to the PSC) or after September 2019 (when

the Commission issued its Final Decision) are necessarily irrelevant to any party's claim or defense. Plaintiffs disagree with this assertion, especially since the PSC first opened the docket for the Cardinal-Hickory Creek case in 2011.[3] However, as a practical matter, Plaintiffs believe any responsive communications for this specific request would have occurred between April 2018 and September 2019, and Plaintiffs are willing to so limit Request No. 4.

## **CONCLUSION**

It appears that the Defendants and the Defendant-Intervenors are on one hand, seeking to delay Plaintiffs from being able to fairly present their case before the District Court,  while, on the other hand, they are seeking to continue moving the transmission line development forward. Zealous advocacy does not allow the Defendants and Defendant-Intervenors gaming the system as they are doing here.  An expedited briefing schedule is requested to avoid further delay in the discovery process.

Plaintiffs respectfully request that the Court issue an order directing Defendant-Intervenors to promptly and fully comply with the Plaintiffs' First Set of Requests for Production, and Plaintiffs also request an expedited briefing schedule on this Motion.

Dated: November 18, 2020

Respectfully submitted,

   _/s/ Stephen P. Hurley_____
Stephen P. Hurley
Catherine E. White
Hurley Burish, S.C.
33 East Main Street, #400
P.O. Box 1528
Madison, WI 53703
T: (608) 257-0945

---

[3] PSC Docket No. 5-CE-146, REF#: 155821, https://apps.psc.wi.gov/pages/viewdoc.htm?docid=155821.

F: (608) 257-5764
shurley@hurleyburish.com
cwhite@hurleyburish.com


_/s/ Rachel L. Granneman_____
Howard A. Learner
Rachel L. Granneman
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
T: (312) 673-6500
F: (312) 795-3730
hlearner@elpc.org
rgranneman@elpc.org