IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DRIFTLESS AREA LAND CONSERVANCY, *et al.*,

                         Plaintiffs,

    v.

MICHAEL HUEBSCH, *et al.*,

                         Defendants.

ORDER

19-cv-1007-wmc

---

Three motions currently before the court all arise out of defendants' objections to the depth and breadth of the plaintiffs' discovery requests. Dkt. 97 is plaintiff's motion to compel a more thorough response to their requests for production (RFPs) 2 and 5. Dkt. 116 is plaintiffs' motion to compel compliance with Rule 45 subpoenas served on seven third parties.[1] Dkt. 121 is third party John Garvin's motion to quash his deposition. The parties and third parties have submitted documents supporting their positions on the motions that affect them and the court has read them all.[2]

I will address each motion individually, but let's start with some overarching observations, starting with Judge Conley's November 20, 2020 order ruling on the dismissal and stay motions. *See* dkt. 159. Judge Conley has rebuffed defendants' Rule 12(b)(6) challenge to plaintiffs' claim of bias, *id.* at 31-35, and he has denied defendants' motions to stay discovery until their claims of immunity have been decided on interlocutory appeal, *Id.* at 35-36. Judge Conley also set the summary judgment motion deadline for January 4, 2021, *id.* at 36. As a result, the parties need rulings on the pending discovery motions.

---

[1] On November 12, 2020 plaintiffs updated this motion (dkt. 151). I will address those updates in this order.

[2] *See* dkts. 98, 108, 109, 110 (ex parte), 116-18, 121-23, 132-137, 139-146 and 151.

Although Judge Conley noted the uphill battle that plaintiffs face proving their actual bias claims, he declined to dismiss them "due to their fact-specific nature." Dkt. 159 at 33-34.[3] In other words, plaintiffs now have been cleared to obtain from defendants all evidence of bias that is discoverable under the rules.  This segues to some overarching observations about relevance, individual privacy, burden and proportionality that do not augur well for defendants in these disputes.  Plaintiffs' claims of bias are based in large part on the defendants' personal, social interactions with people and entities who wanted the PSC to approve the CPCN for the Cardinal-Hickory Creek transmission line. As a result, the sort of evidence that plaintiffs will need to adduce in order to prove their claims, while ordinarily not relevant or discoverable in a typical civil lawsuit, is relevant and discoverable here.

The defendants and intervenors label such information "purely personal" and characterize plaintiffs' requests for it "increasingly invasive."  This is incorrect on two levels.  First, defendants fail to acknowledge the discovery inversion in this lawsuit: the more personal the communications and interactions between the defendants, the intervenors and their employees, the more relevant they are to plaintiffs' claims of bias.  Second, defendants oversell the level of intrusiveness to which plaintiffs' discovery subjects them.  Plaintiffs are not seeking information about anyone's  family affairs, medical history or personal finances. The information they seek relates mainly to the friendships and social interactions between commissioners and applicants. Given the nature of this lawsuit, this information is neither purely personal nor unacceptably invasive.  That said, defendants have the option of invoking the September 18, 2020 protective

---

[3] Judge Conley was highly skeptical that plaintiffs "appearance of bias" claims have any constitutional traction, *id.* at 34, n. 16, but that's not going to affect discovery.

order (dkt. 79) to maintain the confidentiality of any genuinely sensitive information that this court may order them to disclose. *Cf.* October 14, 2020 order (dkt. 93, sealed) at 3 (the information must be sufficiently personal to merit protection under the order and under Rule 26(c)).

Whether all of the information sought by plaintiffs will be admissible and whether this information will suffice to prove plaintiffs' claims are questions for later. The question right now is whether this information is discoverable. For the most part, the answer is yes. Defendants in civil lawsuits routinely oppose plaintiffs' discovery requests on the ground that "we didn't do what plaintiffs claim we did, so the court shouldn't allow all of this expensive and intrusive discovery that won't uncover what they are looking for." Plaintiffs routinely respond that "they *did* do what we claim they did, but until they disclose the relevant evidence that is in their sole possession, we won't be able to prove it." Then this court routinely allows discovery to proceed within the parameters of Rule 26(b)(1).

In opposing plaintiffs' requests, the defendants and intervenors point to the thousands of pages of discovery they already have provided to plaintiffs against the paltry and grudging production from plaintiffs. Both sides complain about how their opponents have approached discovery in terms of scope, timing and accommodation. Generally, finger-pointing and umbrage in both directions is common in lawsuits this hotly contested. The transmission line project is physically gargantuan and plaintiffs proffer that its cost to consumers will run into the billions. Against this backdrop, it is not disproportionate to allow a great deal of discovery from a great many sources, and as already noted, in this particular lawsuit, the discovery is going to be more personal than usual. The fact that most of the discovery is flowing in one direction at greater

cost to one side does not make it disproportionate under the factors set forth in Rule 26(b)(1). You give what you've got; you get what you need.

Finally, the new January 4, 2021 deadline for summary judgment motions has put renewed time pressure on both sides, and it has influenced how I have addressed some of the motions.

**Docket 97: Plaintiffs' Motion To Compel Complete Responses to RFPs 2 and 5**

In their submissions on this dispute, both sides document their meet-and-confer efforts, which were fruitful up to a point but did not completely resolve their disagreements.

Plaintiffs' RFP 2 asks defendants to provide all records of communications–including telephone records–between defendant Huebsch and any person associated in any way with ten listed entities, including the intervenors, OMS, MISO and others, from January 1, 2018 to the present.  RFP 5 asks for all communications between defendant Valcq and five entities and their affiliates from January 7, 2019 to the present.  In their motion, plaintiffs report that they specifically requested Valcq's communications with attorneys in Quarles & Brady's (Q&B) Energy Group, who served as outside counsel for WEC Energy Group and We Energies, two of the named entities whom Valcq represented while she was an attorney at Q&B from September 2017 to January 7, 2019.  According to plaintiffs, defendants have provided some of the requested information, but have withheld information that they deemed to be "purely personal."

In opposition (dkt. 108), defendants argue that RFPs 2 and 5 are disproportionate to the needs of this case given the increasingly invasive course of plaintiffs' discovery and the undue burden to Huebsch and Valcq's rights to privacy.  Defendants contend that these records are not

4

relevant under Rule 26(b)(1) because they are not prohibited ex parte communications, and they ask this court to factor in their pending immunity motions.  As for the dispute over Valcq's telephone records, defendants have produced them for ex parte review by the court and ask that if disclosure to plaintiffs is ordered, the actual telephone numbers of third parties be kept confidential.

Defendants hotly dispute plaintiffs' contention that Huebsch's communications with persons associated with the named entities establish an actionable claim, labeling plaintiffs' claims against Huebsch as speculation, baseless guesses, accusations and attacks on Huebsch's character and candor.  As noted above, that train left the station last week, and most of defendants' arguments were left on the platform.

In any event, defendants' arguments against disclosure aren't persuasive.  For instance, defendants argue that Huebsch is entitled to a presumption of honesty and integrity that plaintiffs are required to refute before they may obtain this disputed discovery.  Dkt. 108 at 15. The case cited for this proposition, *Alabama Public Service Com'n v. I.C.C.,* 765 F.2d 1516 (11th Cir. 1985) doesn't support defendants' position.  There, the court noted that the vast majority of administrative proceedings are decided by hearing officers who had transferred from the private to public sector or vice versa, and that these connections, along with the officers' concomitant familiarity with the players and the processes, "[were] not a per se violation of procedural due process."  *Id.* at 1524.  The court continues: "On the bare allegations that petitioners put forth we do not believe that Commissioner Gradison lacked impartiality."  *Id.* In other words, unless a petitioner backs up its challenge to a commissioner's  impartiality with some evidence, the challenge is going to fail.  Naturally, then, a petitioner is going to serve

5

discovery requests aimed at uncovering evidence of partiality, if there is any. That's what plaintiffs have done here. Nothing in *Alabama P.S.C.* suggests that this is improper, or that plaintiffs must overcome some presumption of commissioner integrity before they may seek information related to the depth and breadth of a commissioner's personal contacts with private entities having business before the commission.

Equally unhelpful is defendants' quotation from a 28-year old law review article whose main point is the unremarkable observation that "[t]he public interest is harmed *not only when the wrong private economic interests intrude in the public sphere*, but also when private economic interests are denied to public servants without sufficient justification." 87 Nw. U. L. Rev. 87, 147, emphasis added. Obviously, not every personal interaction between a commissioner and an applicant creates an improper intrusion into the commission's decision-making process, but some can. Defendants in this case cannot avoid pretrial discovery by claiming that they are only required to disclose information that fits *their* definition of a violation of the applicable conflict-of-interest rules.

Defendants argue that their personal friendships are "inherently private" so that communications within those friendships "should not need to pertain to scandalous, financial, or health information to retain such privacy." Dkt. 108 at 24. Their citations in support of this proposition, once again, are unhelpful. In *City of Ontario v. Quan*, 560 U.S. 746 (2010), the Court offered some general observations about cell phone privacy then decided the case *against* the plaintiff, finding that "Because the search was motivated by a legitimate work-related purpose, and because it was not excessive in scope, the search was reasonable . . .." *Id.* at 764. *United States v. Zavala*, 541 F3d, 562 (5th Cir. 2008) addresses a suppression motion in a

criminal case challenging the DEA's warrantless search of the defendant's cell phone. *Id.* at 568. Equating a suspected drug trafficker's assertion of a Fourth Amendment expectation of privacy in his cell phone with plaintiffs' discovery requests in this case wastes everybody's time.

Without conceding anything, defendants' fallback position is that plaintiffs' time frame– January 1, 2018, to the present–starts too early and ends too late. Defendants' position is not persuasive. Communications that occurred before the November 11, 2018 bar, and that occurred after the commission's November 16, 2019 denial of the petition for a rehearing, are sufficiently relevant to be at least *discoverable* now that Judge Conley is allowing plaintiffs to proceed with their constitutional claim of bias. Whether any such communications are admissible or persuasive are different questions that will be answered later in this lawsuit.

In sum, defendants have not persuaded the court that plaintiffs' requested discovery is irrelevant, overly broad, unduly burdensome, or that it improperly invades their privacy. Given the nature of plaintiffs' claims, RFP 2 and RFP 5 ask for information that is sufficiently relevant and proportional to the needs of this lawsuit.

I have reviewed all of the documents submitted by defendants, dkt. 110-1, ex parte, which they label as "purely personal." dkt. 110, *passim*. Pursuant to the court's view of what is relevant and discoverable in this lawsuit, all of these documents must be disclosed. A few of the documents may qualify as confidential under Rule 26 and the parties' protective order; I leave it to the parties in the first instance to attempt to sort this out, subject to refereeing later by the court if necessary.

**Docket 116: Plaintiffs' Motion To Compel Compliance with Third Party Subpoenas**

Plaintiffs have asked the court to order seven specified third parties to comply with plaintiffs' Rule 45 subpoenas, all issued by this court. *See* dkt. 118-11 through 118-7. Plaintiffs subsequently withdrew their request against Brian Rude; they also report that Barbara Nick had indicated her intent to comply by November 11, but as of November 20, 2020, plaintiffs had not withdrawn their motion against Nick.. Dkt. 151. Based on this, the court will drop Rude from the analysis but leave in Nick.

Plaintiffs further report that Robert Garvin does not oppose transferring his opposition to this subpoena from the Eastern District of Wisconsin; indeed, he was the second to file his opposition to the subpoena, *see* dkt. 139, so the court will rule on his objections to the subpoena.

Plaintiffs intend to ask the court in the Southern District of Indiana to transfer MISO's objection to this court. *Id.* Pursuant to Rule 45(f), that court may–but is not required to–transfer this dispute back to this court. Therefore, at this juncture, this court cannot rule on the objections made by MISO to plaintiffs' subpoenas. This order, then, is limited to ruling on plaintiffs' motion to compel compliance by WEC Energy Group (WEC), Quarles & Brady (Q&B) Barbara Nick, Robert Garvin and John Garvin.

In their motion to compel, plaintiffs briefly identify who the four people and three entities are. According to plaintiffs, MISO was a party to the contested CPCN proceeding, it had a common interest agreement with defendant-intervenor ATC, and defendant Commissioner Huebsch was actively involved with ATC through his membership in the MISO Advisory Committee and his status as representative in the Organization of MISO States during the CPCN proceeding. Dkt. 117 at 2. John Garvin was ATC's Manager of State Government

Relations, who communicated by text with Huebsch during the CPCN proceedings.  WEC holds a 60% interest in defendant-intervenor ATC and previously was represented by defendant Chair Valcq when she was a lawyer at Q&B.  Robert Garvin was WEC's Executive Vice President of External Affairs (and is John Garvin's brother).  Barbara Nick had been defendant-intervenor DPC's CEO, a position for which defendant Huebsch applied "soon after voting to approve the DPC project that was the focus of the CPCN proceeding."  *Id.*

Plaintiffs' Rule 45 subpoenas to these people and entities–other than Q&B– request: (1) communications between the subpoenaed party and the defendants in this lawsuit for the period January 1, 2018 and the present; and (2) communications between the subpoenaed party and Wisconsin Governor Tony Evers's transition team from January 1, 2018 to the present that concerned the appointment of defendant Chair Valcq or any other person to the PSC.  The subpoena to MISO included five additional categories of documents relating to MISO's actions relating to the CPCN proceeding, common interest agreements, and defendant Commissioner Huebsch.  *See* dkt. 117 at 3.

Plaintiffs served a different type of  subpoena on Q&B because Q&B is a law firm with a different type of relationship with the defendants that has the potential to raise attorney-client privilege issues. Plaintiffs assert that they were sensitive to these privilege concerns and drafted their subpoena accordingly.  Plaintiffs characterize their requests to Q&B as seeking date, time and location information regarding defendant Chair Valcq's meetings with certain types of energy companies organizations, events hosted by these companies and organizations that Valcq attended, the contents of speeches Valcq made at these events, other conferences that Valcq

9

attended during her tenure at Q&B; and Valcq's non-privileged billing information for the identified companies and organizations.

In their motion, plaintiffs allege that the defendants, the intervenors, and the subpoenaed third parties "engaged in a concerted effort to avoid and delay compliance with any discovery, including the third-party subpoenas." Dkt. 117 at 3. Plaintiffs also note that some of the third parties have filed vague, general objections to the Rule 45 subpoenas served on them, and that John Garvin missed his 14-day deadline to object pursuant to Rule 45(d)(2)(B). Plaintiffs urge this court to deem these responses waivers. This court does not ordinarily decide discovery disputes on strictly procedural grounds, particularly when third parties are involved, even if those third parties may be inextricably intertwined in the proceedings before the court.

But that segues to plaintiffs' substantive argument, which this court already addressed above: now that plaintiffs' constitutional bias claims have survived dismissal, plaintiffs are entitled, up to a point, to discover the depth and breadth of the relationships between the defendant commissioners and the intervenors and the third parties on whom they have served their contested Rule 45 subpoenas. The information that the plaintiffs seek is, for the most part, relevant to their claims, and their subpoenas, *ceteris paribus*, are not necessarily too broad in time or scope (in other words, they are proportional to the needs of this case). But *ceteris non paribus*: dispositive motions are due by January 4, a mere six weeks away. The court is not going to require any of the third parties to provide complete responses to all of plaintiffs' requests in their Rule 45 subpoenas. The court could pick up the blue pencil itself, but as explained below, it's going to give the parties the first crack at making this work.

10

Let's address each third party's objections to plaintiffs' subpoena, starting with Q&B, the law firm. First, Q&B, like all of the third parties, vigorously disputes plaintiffs' claim that Q&B was part of any concerted effort to withhold information. To the contrary, Q&B reports that it was negotiating with plaintiffs on the scope of the information it was going to provide when it was blindsided by plaintiffs' motion to compel. Dkt. 137 at 2. While (1) flagging its confidentiality obligations to its clients, (2) disagreeing with the manner in which plaintiffs are approaching this discovery request, (3) correcting plaintiffs' imprecise reference to "We Energies," and (4) contending that the "relative hardship test" weighs against disclosure, Q&B reports that it made a pre-motion offer of information to plaintiffs, which it sets forth in six bullet points. *See* dkt. 137 at 6, citing Q&B's October 19, 2020 letter, dkt. 118-10, at 2.

Having considered both sides' positions, I find that Q&B is further removed from the center of this dispute than the other third parties and it has confidentiality obligations that the others lack. Therefore, Q&B's offer suffices to fulfill its discovery obligations to the plaintiffs on their subpoena. I will grant plaintiffs' motion as to Q&B in part, requiring the law firm to provide that information.

The other third parties are situated differently from Q&B but similarly to each other. Here's the bottom line: none of third parties is going to have to provide everything that plaintiffs requested of them, but each of them is going to have to provide something. I surmise that time pressure led plaintiffs to file an omnibus third party subpoena motion that forewent adequate meet-and-confer sessions on these subpoenas and which presented broad, shallow arguments in support of a court order for total compliance with these subpoenas. That's not going to happen.

The court is going to require plaintiffs to pare to its essence each of their Rule 45 subpoenas.  Perhaps plaintiffs would have done this now anyway: the January 4 summary judgment motion deadline forces plaintiffs to focus their discovery efforts on the most information-rich targets and the most important requests served on those targets.  The court also is going to require all of the third parties to comply with the narrowed requests and promptly provide the requested information.  So there is no confusion, I would have narrowed each of the challenged subpoenas in some fashion regardless of the motion deadline; but given the tight timeline, I will let plaintiffs decide for themselves what information they wish to pursue.

John Garvin, joined by his employer, ATC, asks the court to deny plaintiffs' motion to compel.  Dkt. 135.  ATC claims the right to object to the subpoena directed to its employee for employment related documents.  That seems logical, but it doesn't affect the outcome, based on where the court is headed with this dispute.  At the outset, John Garvin and ATC, like everyone else, disputes plaintiffs' claims of close ties, collusion and discovery obstruction.  The court isn't in a position to rule on this claim, and frankly, it doesn't affect the outcome of plaintiffs' motion to compel.  John Garvin reports that many of the third parties–he names himself, Rude, Nick and MISO–have agreed to respond to some of plaintiffs' requests.  ATC points out that the subpoena to John Garvin mirrors some of the RFPs that plaintiffs served on ATC, and that ATC and John Garvin offered to provide responsive documents by November 12, 2020, only to be short-circuited by plaintiffs' October 29, 2020 motion.  That said, ATC objects to the relevance of most of what plaintiffs have requested of John Garvin, explaining why none of this could possibly prove a due process violation arising out of commissioner bias.  As noted at the beginning of this order, now that this claim has survived dismissal, plaintiffs are entitled to

adduce evidence that they believe will prove their claim.  As also noted, the court is not going to tailor plaintiffs' subpoena to John Garvin for them.  They must pare it down, but they get to decide how.

Next, Robert Garvin, like the others, objects to being lumped with seven distinct third parties in one motion and he objects to complying with plaintiffs' subpoena on relevance and burden grounds.  Dkt. 139.  Robert Garvin contends that plaintiffs have provided "not a scrap of evidence" supporting their claims that WEC sought to influence the PSC decision, let alone that Robert Garvin did so on WEC's behalf: "there is literally *zero* basis for Plaintiffs' discovery against Mr. Garvin."  *Id.* at 2-3, emphasis in original.  Robert Garvin reports that he timely responded to plaintiffs' subpoena by raising six objections (*id.* at 4-5), but that plaintiffs did not respond by attempting to meet and confer; instead, they filed their motion to compel three days later.

Like the others, Robert Garvin raises valid points that will require plaintiffs to significantly reduce the scope of their subpoena to him, but the court is not going to excuse Robert Garvin from any compliance whatsoever. Robert Garvin may well have information relevant to plaintiffs' claims, notwithstanding his opinion to the contrary.  As noted at the outset, relevance often is in the eye of the beholder, and plaintiffs in every lawsuit are entitled to pursue logical avenues of discovery in proportionate measure.  The court will not prohibit plaintiffs from paring down their subpoena to Robert Garvin and obtaining any responsive information in his possession.

WEC filed its objection next (dkt. 141), submitting virtually the same brief that Robert Garvin had submitted the day before, (through the same attorney from Q&B), along with a

13

compliance-cost estimate exceeding $100,000 (dkt.144).  WEC gets the same response from the court: WEC may have information relevant to plaintiffs claims, notwithstanding its opinion to the contrary, and the court will not prohibit plaintiffs from paring down their subpoena to WEC and obtaining any responsive information in WEC's possession.

As noted at the beginning of this section, plaintiffs report that Barbara Nick has agreed to provide the responsive information in her possession, but plaintiffs have not dropped their motion against her.  She gets the same ruling as all of the other third parties: plaintiffs are entitled to obtain from her the information in her possession that they deem most relevant to proving their claims in this lawsuit.  In the absence of any claim of burden, overbreadth, or lack of relevance, Nick isn't in a position to object to any follow-through undertaken by plaintiffs on their subpoena, but the court expects plaintiffs to be reasonable.

MISO technically is in front of another court, but according to ATC, MISO remains willing to produce some documents in response to a narrower subpoena.  If MISO were in front of this court, it would get the same ruling that everyone else got.

This segues to implementation.  Today is the Monday before Thanksgiving. Summary judgment motions are due in six weeks, responses in nine weeks.  Even though the pandemic has quashed most holiday plans, nobody wants to do a lot of heavy lifting at this time of year.  But it's unavoidable here.  At this time I am not going to set deadlines for the parties on the Rule 45 subpoenas, but I am going to order that the parties meet and confer as soon as possible to get the ball rolling.  Plaintiffs must quickly narrow their Rule 45 subpoenas to each of the third parties, reducing them to their essence.  The third parties must promptly provide the requested information, on a rolling basis if plaintiffs so request.

14

If the parties and third parties cannot agree on procedures, scope, or deadlines, then they forthwith must request a telephonic hearing with the court, which will hold a same-day or next-day hearing.  The court requires that everyone involved in implementing compliance with these third-party subpoenas act with speed, diligence, thoroughness and mutual accommodation. Civility and graciousness wouldn't hurt, either.

**Docket 121: John Garvin and ATC's Motion To Quash Garvin's Deposition**

Plaintiffs have subpoenaed John Garvin for deposition in his personal capacity.  Garvin and his employer, ATC, have moved to quash this deposition.  Plaintiffs object to ATC's intervention in this matter, claiming that they are not deposing Garvin in his employment capacity, and pointing to the manner in which this dispute unfolded as "yet another example of Intervenor-Defendants' constant attempts to delay and avoid discovery throughout this litigation." Dkt. 132 at 3.

It doesn't matter whether ATC joins Garvin's motion to quash because it does not change the outcome.  Garvin must sit for a deposition in his personal capacity.  One of plaintiffs' key contentions is that John Garvin and Commissioner Huebsch were personal friends whose relationship was close enough to raise questions (in plaintiffs' minds) whether this fatally compromised Huebsch's required impartiality during the CPCN proceedings. The already-disclosed communications between the two demonstrate that this is a topic that plaintiffs are entitled to explore.  Reviewing documents and obtaining Huebsch's testimony on this topic are necessary components of plaintiffs' discovery, but they are no substitute for discussing this with Garvin.  Frankly, given how specious the defendants and intervenors believe plaintiffs' claim to

15

be, one might have expected Garvin to welcome the opportunity to offer sworn testimony on this topic. Welcome or not, Garvin must sit for a deposition.

As with the Rule 45 subpoenas, the court will leave it to the parties in the first instance to set the schedule, with speed and accommodation being the watchwords.


ORDER

It is ORDERED that:

(1) Plaintiffs' motion to compel complete responses to RFPs 2 and 5 (dkt. 97) is GRANTED.

(2) Plaintiffs' motion to compel compliance with third party subpoenas (dkt. 116) is GRANTED IN PART and DENIED IN PART and the parties and third parties shall proceed as directed in this order.

(3) John Garvin's motion to quash his deposition (dkt. 121) is DENIED.


Entered this 23rd day of November, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge