IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION, ) ) ) Plaintiffs, ) ) v. ) ) MICHAEL HUEBSCH and REBECCA VALCQ, ) Public Service Commission of Wisconsin ) Commissioners, ) ) Defendants. ) ) | Case No. 19-cv-1007-wmc |

**PLAINTIFFS' MOTION FOR ORDER REVOKING THE CONFIDENTIAL
DESIGNATION OF, AND FOR UN-REDACTED PRODUCTION OF,
<u>DISCOVERY MATERIALS</u>**

Plaintiffs respectfully move the Court to enter an order (1) revoking Defendants' improper designation of certain discovery materials as "confidential," (2) requiring Defendants to produce an unredacted copy of telephone records, and (3) confirming that the telephone records may be used non-confidentially if the actual telephone numbers are redacted and replaced with the individuals' names.

For the first item, Plaintiffs are following the process set forth under paragraph 16 of the Stipulation and Protective Order to withdraw the Defendants' "confidential" designation from the documents labeled by Defendants as PSCW_011042-43, PSCW_011142-46, and PSCW_011150-51, and are requesting to be "relieved from the restrictions of this Stipulation and Protective Order with respect to the information in question." Doc. 79 at ¶ 16. The purportedly confidential documents at issue are attached as Exhibit A to the Declaration of Stephen P. Hurley. For the second item, the telephone records provided to Plaintiffs are attached as Exhibit B.

1

Plaintiffs' counsel have attempted to meet and confer with counsel for Defendants on these items and as of this filing, have not received a response to their emails, which were sent on December 2 and 4, 2020. Declaration of Stephen P. Hurley, Exhibits C and D. The Court has already determined that the documents at issue in this motion (those improperly designated as "confidential" and the telephone records) are relevant and had to be disclosed. Doc. 160.

The purportedly confidential texts do not reveal any sensitive personal information—and therefore are not protected by the Stipulation or by Fed. R. Civ. Pro. 26—and are of public interest. Under the Stipulation and Protective Order, Defendants bear the burden of demonstrating that the texts are confidential. Doc. 79 at ¶ 16. They cannot meet this burden. Plaintiffs request that the Court revoke the confidential designation, such that Plaintiffs may file the documents with this Court not under seal.

Defendants also produced, in response to this Court's November 23, 2020 Order, Commissioner Huebsch's telephone records, which were designated as confidential. While specific lines were left unredacted, the vast majority of the telephone records were blacked out. This is inappropriate and inconsistent with the Court's Order and the Protective Order. Plaintiffs request that the Court order the production of an unredacted copy of the telephone records.

## BACKGROUND

Defendants Commissioner Michael Huebsch and Chair Rebecca Valcq had personal and professional ties to and entanglements with parties (and their affiliates) in the PSC proceeding in which the Commissioners approved the Certificate of Public Convenience and Necessity (CPCN) for the proposed Cardinal-Hickory Creek transmission line. Several of the purportedly "confidential" text messages produced by Defendants do not reveal sensitive personal, medical, or family information. Instead, they show the depth and extent of Commissioner Huebsch's relationship with Robert Garvin, Executive Vice President of External Affairs at WEC Energy

Group, and of Chair Valcq's continuing relationship with former colleagues at the Quarles & Brady law firm, which serves as outside counsel for WEC Energy Group. WEC Energy Group has a 60% interest in American Transmission Company, LLC (ATC), which is the lead developer of the Cardinal-Hickory Creek transmission line in Wisconsin.  As the Court recognized,

> Plaintiffs are not seeking information about anyone's family affairs, medical history or personal finances. The information they seek relates mainly to the friendships and social interactions between commissioners and applicants.  Given the nature of this lawsuit, this information is neither purely personal nor unacceptably invasive…. and as already noted, in this particular lawsuit, the discovery is going to be more personal than usual.

Doc. 160 at 2-3.

The procedural history with respect to the production of these documents is relevant.[1] The Defendants initially withheld the texts at issue, along with others, alleging that they were "purely personal" and did not need to be produced. The Plaintiffs filed a motion to compel complete responses from the Defendants (Doc. 97). In a text order, the Court directed to Defendants to file the disputed documents for *in camera* review. Doc. 99.

Upon review, the Court held that *"all of these documents must be disclosed."* Doc. 160 at 7 (emphasis added). The Court continued: "[a] few of the documents may qualify as confidential under Rule 26 and the parties' protective order; I leave it to the parties in the first instance to attempt to sort this out, subject to refereeing later by the court if necessary." *Id.* at 7.

---

[1] These telephone records are also responsive to an Open Records Request that DALC and WWF submitted nearly a year ago, in January 2020. The Open Records Request asked for all records of communications, including telephone records, between Commissioner Huebsch and representatives of MISO or the Organization of MISO States (OMS). After the PSC delayed its response for months, DALC and WWF brought a lawsuit in state court in May 2020. The Attorney General's Office worked with DALC and WWF to provide the requested records, and DALC and WWF agreed to dismiss the case on the representation that all responsive records had been provided. *DALC and WWF did not receive these telephone records at that time*, despite the fact that the records include telephone calls with the past and current Executive Directors of OMS.

The Plaintiffs do not dispute the confidential treatment of the text messages that deal with individuals' medical information, but do request the revocation of the confidential designation of additional texts that deal with a sporting event and with workplace gossip. These texts do not qualify for confidential treatment under the Protective Order or under the Federal Rules of Civil Procedure.

The telephone records at issue were first produced (confidentially) on November 5, 2020, and all lines were redacted except for telephone calls between Commissioner Huebsch and John Garvin (Manager of State Government Relations at ATC) and Brian Rude (Vice President of Vice President of Government and Community Relations at Dairyland Power Cooperative[2]). After the court's *in camera* review and subsequent Order (Doc. 160) finding that the telephone records were relevant and had to be produced, Defendants then produced a new version of the telephone records, again confidentially. This version modified the redactions so that in addition to the telephone calls between Commissioner Huebsch and John Garvin (ATC) and Brian Rude (Dairyland Power), telephone calls with Robert Garvin (Executive Vice President of External Affairs at WEC Energy Group), Marcus Hawkins,[3] and Tanya Paslawski[4,5] were also visible.

This version of the telephone records thus, finally, revealed that Commissioner Huebsch and Robert (Bert) Garvin exchanged telephone calls *over 200 times* between when ATC and the other Developers filed their application for a CPCN with the Commission and the Commission's Final Decision granting the CPCN.  Between January 2018 and October 2020, Commissioner

---

[2] Dairyland Power Cooperative is one of the developers of the Cardinal-Hickory Creek transmission line.
[3] Marcus Hawkins is the Executive Director of the Organization of MISO States (OMS). OMS is funded by MISO, which was a party to the CPCN proceeding. Commissioner Huebsch was the PSC's representative to OMS and, while the matter was being litigated before the PSC, joined the MISO Advisory Committee.
[4] Tanya Paslawski was the prior Executive Director of OMS before Marcus Hawkins (see footnote 2).
[5] Note that the Defendants failed to remove the redactions for the "duration" information for a number of the telephone calls with Robert Garvin. Counsel for Plaintiffs brought this to the attention of Defendants on November 30, 2020. Counsel for Defendants acknowledged the error on December 2, 2020, and stated that they were working to provide corrected copies. As of this filing, the "corrected" copies have not been provided.

Huebsch and Robert Garvin called each other over 370 times.  All other telephone calls were still redacted.

The continued redaction of other information in the telephone records is inappropriate for confidentially-designated copies of the records. In addition, the "confidential" information in the telephone records are the individual telephone numbers. Plaintiffs seek confirmation that if they redact the telephone numbers, and replace them with the names of the individuals to whom those numbers belong, the telephone records may be treated as non-confidential and filed not under seal.

## ARGUMENT

**I.      Revocation of Confidential Designation of Texts**

Under the Stipulation and Protective Order, Defendants bear the burden of demonstrating that the texts are confidential. Doc. 79 at ¶ 16. They have not and cannot meet this burden. The Stipulation and Protective Order allows for the confidential treatment of information entitled to protection pursuant to Fed. R. Civ. P. 26(c). The Stipulation and Protective Order includes confidentiality for information protected by legal privacy rights, but explicitly does not expand the scope of information protected under Fed. R. Civ. P. 26(c). Doc. 79 at ¶ 1(a). The Seventh Circuit explained in *Wolfe v. Schaefer*, 619 F.3d 782, 786 (7th Cir. 2010) that "[t]actically motivated concealment of embarrassing or discreditable personal information can—often it is intended to—hide things in which the public has a legitimate interest."

The texts in PSCW_011042-43 are between Robert "Bert" Garvin and Commissioner Huebsch. They include a screenshot of a video which appears to be of a school or league basketball game held in public, and context suggests that it is a basketball game in which one of Robert Garvin's family members is playing. However, the image is low-resolution and all of the people in the image are wholly unidentifiable—even the jersey numbers are illegible.

5

The texts in PSCW_011142-46 and PSCW_011150-51 are between Chair Valcq and her former law firm colleague Sherina Edwards, who was a partner at the Quarles & Brady law firm that serves as outside counsel for WEC Energy Group. These texts include workplace gossip that demonstrates the closeness of their relationship and Chair Valcq's continued ties to, and interest in the goings-on at, her former law firm, which continues to represent WEC, which owns more than 60% of transmission line developer ATC.

Disclosure of the texts would not violate the Defendants' right to privacy because the information contained in the texts is not of an adequately personal or sensitive nature. The texts do not reveal legitimately confidential information like bank account numbers, social security numbers, private health or medical information, or any other "highly personal" information. *See Wolfe*, 619 F.3d at 785 (recognizing "a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information"). Contrary to Quarles and Brady's suggestion in their Motion for Clarification, Doc. 169 (dismissed as moot), the texts do not include any sort of formal "evaluations" of Quarles and Brady personnel—they are rather gossip between two (apparently close) friends. Quarles and Brady's suggestion that the mention of the firm's interest in hiring an individual sometime in the past constitutes "confidential business information" is also unpersuasive.

Moreover, even if Commissioner Huebsch's or Chair Valcq's privacy interests were implicated, a public official has reduced privacy rights as compared to a private individual. This is because legitimate public interests in the activities of public figures outweigh privacy concerns. This is especially true when a public official is investigated due to concerns of misconduct. *Wolfe*, 619 F.3d at 786 (federal constitutional right to privacy of candidate for

public office not violated by publicization of confidential investigation into legal and ethical violations).

The Defendants may argue that because they have disclosed the documents pursuant to the terms of the Stipulation and Protective Order, this allows Plaintiffs to use the documents in litigating this case, and therefore there is no need for removal of the confidential designation. However, there is significant public interest in this case, and once these texts have been used in a *bona fide* filing, they should be open to public inspection.[6] "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Because these texts are not adequately sensitive to warrant protection under the Protective Order or Rule 26, the confidential designation should be lifted such that they become public record once included in a *bona fide* court filing.

## II. <u>Redaction and Confidentiality of Commissioner Huebsch's Telephone Records</u>

The Defendants' redaction of information from telephone records—which the Court already ordered must be produced, and that the Defendants already protected by marking as confidential—is inappropriate and inconsistent with the Court's order and with the language and purpose of the Protective Order.

The Court ordered on November 23, 2020, that the documents that it had reviewed *in camera* "must be disclosed." Doc. 160 at 7. The Court acknowledged that "[a] few of the documents may qualify as confidential," and therefore receive protection under the Protective

---

[6] This case concerns the approval of the Cardinal-Hickory Creek transmission line, a 100-mile high-voltage transmission line that would be paid for by utility ratepayers (at a cost of over $2 billion over 40 years) and which would run through miles of private property, family farms, communities, conservation lands and through vital natural resources including the protected Upper Mississippi National Wildlife and Fish Refuge. Even more, it is about the public's trust placed in public officials and the public's view and interests in the integrity of the regulatory process.

Order, but gave no indication that the Defendants would be permitted to unilaterally redact information from these records. *Id.* at 7. The purpose of the Protective Order is so that confidential information may be provided to the parties. Paragraph 10 states:

> No information may be withheld from discovery on the basis that the information requires greater protection than that afforded by this Stipulation and Protective Order, unless the party claiming the need for greater protection moves for and obtains an order for such special protection from this Court.

Doc. 79. The redaction of information is therefore inappropriate unless and until the Defendants obtain an order from the Court allowing redactions.

If the Defendants argue that the redacted information is not responsive to the discovery requests and therefore somehow not subject to the terms of the Protective Order, this argument also fails. A recent decision from the Eastern District of Wisconsin held that a party may not redact purportedly nonresponsive information from documents produced in discovery. The court explained that "[t]he practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege and work-product protections." *IDC Fin. Publ'g, Inc. v. Bonddesk Grp., LLC*, No. 15-CV-1085-PP, 2017 WL 4863202, at *2 (E.D. Wis. Oct. 26, 2017) (unreported) (internal quotation/citation omitted). Even if pieces of information within responsive documents are not directly responsive to a discovery request, this does not mean that information is not relevant to the claims in the case. Further, this information may provide important context for the responsive information. For example, between January 2018 and October 2020, Commissioner Huebsch and Robert Garvin called each other over 370 times. Did Commissioner Huebsch talk with other individuals that often, or was this an unusually high number of telephone calls? Having redacted the information, the Defendants have prevented the Plaintiffs from making this determination.

The unilateral redaction of information is especially troubling here, where it is already clear that the Defendants (presumably inadvertently) redacted *responsive* information. Defendants have acknowledged that their redaction of "duration" information for numerous calls between Commissioner Huebsch and Robert Garvin was incorrect, but as of today—over a week after the error was brought to their attention—Defendants have still not produced documents with the "correct" redactions. Declaration of Rachel Granneman, Exhibits A and B. Was additional responsive information accidentally redacted? Plaintiffs will not know until they receive unredacted copies.

Plaintiffs also request that the Court confirm that Plaintiffs may treat the telephone records as nonconfidential if they redact the individual telephone numbers and replace them with the names of the individuals to whom they belong. As noted above, there is significant public interest in this case, not only because of the impacts that the public would bear if the Cardinal-Hickory Creek transmission line is constructed, but also because of public concerns about the Commissioners' ties to interested parties and the integrity of the regulatory process. The public has a legitimate interest in the information contained in the records, and once Plaintiffs use the telephone records in a *bona fide* filing, the public should have access to this information.

## CONCLUSION

Plaintiffs respectfully move the Court to enter an order: (1) revoking Defendants' improper designation of certain discovery materials as "confidential," (2) requiring Defendants to produce an unredacted copy of Commissioner Huebsch's telephone records, and (3) permitting the Plaintiffs to substitute names for telephone numbers in unredacted non-confidential format for use in this matter.

Dated: December 8, 2020

                                            Respectfully submitted,

*/s/ Stephen P. Hurley*_____
Stephen P. Hurley
Catherine E. White
Hurley Burish, S.C.
33 East Main Street, #400
P.O. Box 1528
Madison, WI 53703
T: (608) 257-0945
F: (608) 257-5764
shurley@hurleyburish.com
cwhite@hurleyburish.com

*/s/ Rachel L. Granneman*_____
Howard A. Learner
Rachel L. Granneman
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
T: (312) 673-6500
F: (312) 795-3730
hlearner@elpc.org
rgranneman@elpc.org