IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL HUEBSCH and REBECCA VALCQ, Public Service Commission of Wisconsin Commissioners, <br><br> Defendants. | Case No. 19-cv-1007-wmc |

## PLAINTIFFS' MOTION FOR LEAVE TO USE DISCOVERY MATERIALS IN *BONA FIDE* FILINGS IN A RELATED STATE COURT CASE

Plaintiffs respectfully request that this Court issue an Order stating that Plaintiffs may file a limited set of additional documents obtained through discovery in this case as part of *bona fide* filings in a related state court case, *County of Dane et al v. Public Service Commission of Wisconsin*, No. 19-cv-3418 (Dane County Cir. Ct.). *See* December 23, 2020 Declaration of Rachel Granneman (hereinafter "Granneman Declaration"), Ex. B through E. Both this case and the related state court case challenge actions related to the Public Service Commission's approval of a Certificate of Public Convenience and Necessity (CPCN) for the Cardinal-Hickory Creek high-voltage transmission line. The facts supporting the claims in the two cases overlap, and there is significant overlap in the parties although the applicable legal standards under federal and state law are somewhat different.

As further explained in Section II.A below, the use of discovery in parallel litigation by a *party* (as opposed to dissemination to the general *public*) is controlled by Seventh Circuit cases like *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980), and *Grove Fresh*

1

*Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994), not *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009). Some of the materials obtained through discovery in this federal case are relevant to issues that the presiding state court judge intends to resolve at a hearing on January 21, 2021. Allowing the limited use of non-confidential discovery materials (and confidential discovery materials under seal) in the state case would save the parties' and judicial resources, is not prejudicial to any party, and is consistent with Seventh Circuit precedent and other authorities.

Plaintiffs recognize that the U.S. Court of Appeals for the Seventh Circuit issued an Order on December 17, 2020, staying district court proceedings pending resolution of the Defendants' appeal on sovereign immunity issues. (Case No. 20-3325, Dkt. 15) Plaintiffs do not seek any further action from this Court that would be inconsistent with the Seventh Circuit's Order. Plaintiffs instead seek clarification from this Court that Plaintiffs' intended use of certain discovery documents in state court would be a *bona fide* use of those materials consistent with Judge Crocker's October 14, 2020 sealed Order (Dkt. 93).

**I.     BACKGROUND**

    **A.  The State Court Proceeding**

The related state court proceeding is a direct appeal of the PSC's approval of the CPCN for the Cardinal-Hickory Creek transmission line under Chapter 227, Wisconsin Statutes. While appeals of administrative agency decisions are generally limited to the record below, Wisconsin law specifically provides that additional evidence may be introduced in the case of procedural irregularities. Wis. Stat. § 227.57(1). Plaintiffs DALC and WWF are Petitioners in the state court lawsuit and have alleged procedural irregularities and substantive legal violations based on the disqualifying appearance or risk of bias under Wisconsin state law. The PSC is the Respondent in the state court lawsuit and American Transmission Company (ATC), ITC Midwest, Dairyland

Power Cooperative, and the Midwest Independent System Operator (MISO) have all intervened in the case, among other parties.

On October 19, 2020, Plaintiffs filed a motion in the state case seeking leave to supplement the record with a limited set of documents that were produced in discovery in the federal case but relevant to Plaintiffs' state law bias claims, including: (1) more information about the meetings, industry events, dinners, and other interactions between Commissioner Huebsch, MISO officials, and other parties to the PSC docket during the pendency of that docket; and (2) a series of text messages between Mr. Huebsch and a then-senior official of Dairyland Power Cooperative that culminated in Mr. Huebsch submitting an employment application seeking a job as CEO at Dairyland Power shortly after stepping down from his role as a Commissioner at the PSC.

Presiding state court Judge Jacob Frost held a hearing on October 21, 2020 and requested supplemental briefing on the applicable legal standard and appropriate procedure for accepting non-record evidence in state court pursuant to Wis. Stat. § 227.57(1). Plaintiffs' motion in the state court, dated October 19, 2020, remains pending.

On November 25, 2020, Plaintiffs filed a letter updating Judge Frost of developments in this federal case, including Judge Conley's November 20th Opinion and Order denying the Defendants' motions to dismiss the case and to stay discovery. Plaintiffs' letter to Judge Frost further described the status of discovery in federal court and noted that if the subsequent document production revealed additional documents that are relevant to Plaintiffs' state law bias claims, "DALC/WWF will act swiftly to bring them to [the state] Court's attention through an appropriate motion." *See* Granneman Declaration, Ex. F.

On December 22, 2020, Judge Frost set a January 21, 2021 hearing date in state court and indicated that the Court will provide an oral ruling on Plaintiffs' October 19, 2020 Motion to Accept Non-Record Evidence on that date.

### B. New Discovery Documents

Since Plaintiffs filed their October 19, 2020 state court motion, Defendants and third parties have produced several hundred pages of additional documents that are relevant to Plaintiffs' state law bias claims. Plaintiffs seek to file a limited set of relevant documents in the state court proceeding so that Judge Frost can review them together with the previously filed documents in advance of the January 21, 2021 state court hearing. The attached declaration of Rachel Granneman identifies the limited set of additional discovery documents as follows:

(1) a log summarizing information from phone records indicating the frequency and length of phone calls between Commissioner Huebsch and certain parties in interest to the PSC proceeding (Robert Garvin, John Garvin, Brian Rude, Marcus Hawkins, and Tanya Paslawski) (Declaration of Rachel Granneman, Ex. B);

(2) additional records of lunch and dinner meetings that involved Commissioner Huebsch and senior MISO officials during the pendency of the PSC docket (Declaration of Rachel Granneman, Ex. C); and

(3) emails that describe meetings between the utilities and Commissioner Huebsch concerning topics related to the CPCN during the pendency of the PSC proceeding (Declaration of Rachel Granneman, Ex. D, E).

Plaintiffs recognize that there remain outstanding disputes about the confidential nature of some of the discovery materials produced in this case. (*See*, *e.g.* Dkt. 182) To be clear, Plaintiffs do *not* seek to introduce in state court any of the disputed text messages between Commissioner Huebsch and Robert Garvin (PSCW_011042 to PSCW_011043) or Chair Valcq and former colleagues at Quarles and Brady (PSCW_011142 to PSCW_011146 and PSCW_011150 to PSCW_011151). However, Plaintiffs *do* seek to file in state court a log of non-confidential information regarding Commissioner Huebsch's phone calls that identify the names, dates, and

4

durations of calls with five individuals that occurred during the pendency of the CPCN proceeding. Ms. Granneman's declaration includes correspondence between counsel confirming Defendants' position that it is only the telephone *numbers* that are confidential, not the dates, durations, or names of participants in the phone calls. Declaration of Rachel Granneman, Ex. A. Plaintiffs have redacted the confidential phone numbers from the non-confidential phone log.

Out of an abundance of caution, Plaintiffs seek an order from this Court confirming that the use of these discovery materials in the parallel state court proceeding would be a *bona fide* use of the federal court discovery consistent with Judge Crocker's October 14, 2020 discovery order (Dkt. 93) and the protective order in this court.[1] To the extent that any disputes about the confidentiality of the subject documents remain unresolved, Plaintiffs would agree to file them under seal in state court pending resolution of their confidential status by this Court.

## II.   DISCUSSION

### A. Seventh Circuit Precedent Allows the Use of Federal Discovery in Related Proceedings.

Judge Crocker's October 14, 2020 sealed order revoked defendant Michael Huebsch's confidentiality designation for certain documents produced during discovery, but cautioned that the materials may not be disseminated publicly until they have been used in support of a *bona fide* filing in this lawsuit. (Dkt. 93 at 4-5, citing *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009)). Plaintiffs are requesting clarification of a different question here—whether federal discovery documents may be used in support of a *bona fide* filing in a different, but related, state court lawsuit involving many of the same parties. For the reasons more fully explained below, therefore, *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980), and *Grove Fresh Distributors,*

---

[1] While the Protective Order states that confidential material may only be used in this litigation, ¶ 21 allows parties to seek and obtain modification of the Protective Order on an appropriate showing. (Dkt 79)

*Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994) are more relevant to the present situation than *Bond v. Utreras.*

Plaintiffs acknowledge that *Bond v. Utreras* limits the *public's* ability to access discovery materials that were produced subject to a protective order and never used in a *bona fide* filing in the case in which it was discovered. 585 F.3d at 1073. *Bond* was about a reporter who moved to intervene in a case after the parties had already settled the case, in order to publicly disclose unfiled discovery that had been produced under a protective order. The court held that the reporter did not have Article III standing to intervene in the case. *Bond* was not about *litigants'* ability to use such discovery in another lawsuit. *Bond* therefore does not address Plaintiffs' request—that of actual litigants to use discovery materials from this case in a *bona fide* filing in another case involving some overlapping factual issues, with many of the same parties and same counsel, and while preserving the confidentiality of documents subject to the protective order.

The present situation is closer to the facts in *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980), than to the facts in *Bond*. In *Wilk*, the Court allowed a *bona fide* litigant in another lawsuit to have access to discovery materials that were subject to a protective order.

> We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, **such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.** *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9 Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); *Ex parte Uppercu*, 239 U.S. 435, 439-40, 36 S.Ct. 140, 140-141, 60 L.Ed. 368 (1915). Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.

*Wilk*, 635 F.2d at 1299 (emphasis added).

In a similar case, *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994), Grove Fresh sued competitor juice companies alleging "a conspiracy to unlawfully adulterate and misbrand orange juice" in violation of various laws and regulations. Many of the same juice companies were named in separate class action lawsuits that alleged consumer fraud and breach of warranty based on the illegal adulteration and labelling practices. The plaintiffs in those class actions sought to intervene in Grove Fresh's cases in order to access discovery. The court held that *Wilk* was controlling:

> [W]here a third party wishes to modify a protective order so as to avoid duplicative discovery in collateral litigation, policy considerations favoring the efficient resolution of disputes justify modification unless such an order would tangibly prejudice substantial rights of the party opposing modification. Even if such prejudice is demonstrated, the court has broad discretion in determining whether the injury outweighs the benefits of modification.

*Grove Fresh*, 24 F.3d at 896 (internal citations removed).

While *Bond* questioned the continuing strength of *Wilk* and *Grove Fresh* after changes in 2000 to Rule 5 of the Federal Rules of Civil Procedure, this comment was *dicta* made in a footnote after explaining that *Wilk*, *Grove Fresh*, and other cases' discussion of "the issue of collateral litigants' access to discovery in parallel litigation have little relevance here." *Bond*, 585 F.3d at 1068 n.4. *Bond* stated that: "To the extent, however, that these cases are premised upon a principle that 'pre-trial discovery must take place in ... public unless compelling reasons exist for denying the public access to the proceedings,'" they have been superseded by edits to Rule 5. *Id.* However, Plaintiffs here cite to *Wilk* and *Grove Fresh* not for the argument that the *public* has a right to access unfiled discovery materials, but that a court may allow *litigants* to use discovery materials that are relevant to a *bona fide* claim in another court case. The argument for allowing use of discovery materials is even stronger in the current case, because it is Plaintiffs who wish to use

7

material *they themselves* received in discovery in a second lawsuit—rather than outside litigants exporting the discovery.

*Wilk* remains good law on this point. A 2001 Seventh Circuit decision—after the 2000 rule changes were adopted and became effective—cited to *Wilk* as providing the "applicable" "rule of law" when a litigant in a different case sought to intervene in a lawsuit to access discovery materials to be used in the first case. *Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 659 (7th Cir. 2001).

Other Circuits have also recognized the value in discovery sharing. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), which also cites to *Wilk* as good law, explains:

> This court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation. Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery.

*Id.* at 1131-32 (internal citations omitted).

The Manual for Complex Litigation, Fourth, also supports this approach.[2] The Manual describes the benefits and method of coordinating discovery and avoiding duplication in related federal cases and in related state and federal cases. "Judges should encourage techniques that coordinate discovery and avoid duplication. . . . Relevant discovery already completed should ordinarily be made available to litigants in the other cases." § 20.14. Suggested procedures in related federal and state cases include creating document depositories (which could include discovery materials from prior cases), coordinated production, and "enjoining attorneys conducting federal discovery from objecting to use of that discovery in state courts on the grounds that it originated in federal court." *Id.* at § 20.313.

---

[2] https://www.uscourts.gov/sites/default/files/mcl4.pdf/.

**B. Plaintiffs' Request Allows for Efficient and Fair Use of Discovery Information and Conserves Judicial Resources.**

Allowing Plaintiffs to use a limited set of discovery materials from the current case in another ongoing lawsuit on related issues with similar claims, and with essentially the same Defendants, would save resources and would not "tangibly prejudice substantial rights" of any party. *Wilk*, 635 F.2d at 1299. The state court has indicated its intent to resolve Plaintiffs' Motion to Admit Non-Record Evidence on January 21, 2021. It is in the interest of justice to allow Judge Frost to consider all relevant evidence so that the court can reach a fair, accurate decision in that case. This is especially important in light of the significant delays in discovery and the current stay of litigation in the federal case. If discovery had proceeded smoothly, dispositive motions would likely already have been filed, and the relevant documents would be in the record and available for use in state court. If the Court denies this motion, the state court may be deprived of the opportunity to review these documents prior to ruling on the merits of Plaintiffs' appeal. Plaintiffs' other options in that situation—such as a potential motion to vacate the state court judgment based on newly available evidence—are undesirable and would result in a significant waste of judicial resources. This Court can ensure a more rational and streamlined litigation path by making the documents available to the state court now, before it reaches a decision on the merits.

## III. CONCLUSION

For the reasons described above, Plaintiffs respectfully request an order stating that Plaintiffs may file the limited set of documents enumerated in the attached declaration of Rachel Granneman (Exhibits B through E) as part of *bona fide* filings in the related state court case, *County of Dane et al v. Public Service Commission of Wisconsin*, No. 19-cv-3418 (Dane County Cir. Ct).

Dated: December 23, 2020

9

Respectfully submitted,

*/s/ Stephen P. Hurley*_____
Stephen P. Hurley
Catherine E. White
Hurley Burish, S.C.
33 East Main Street, #400
P.O. Box 1528
Madison, WI 53703
(608) 257-0945
shurley@hurleyburish.com
cwhite@hurleyburish.com

*/s/ Howard A. Learner*_____
Howard A. Learner
Rachel L. Granneman
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
hlearner@elpc.org
rgranneman@elpc.org

10