## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DRIFTLESS AREA LAND CONSERVANCY and WISCONSIN WILDLIFE FEDERATION,<br><br>        Plaintiffs,<br><br>    vs.<br><br>PUBLIC SERVICE COMMISSION OF WISCONSIN and REBECCA VALCQ, TYLER HUEBNER, and ELLEN NOWAK, in their official capacities as members of the Public Service Commission of Wisconsin,<br><br>        Defendants,<br><br>   and<br><br>AMERICAN TRANSMISSION COMPANY LLC, *et al*.,<br><br>        Intervenor-Defendants. | Case No. 19-cv-1007-wmc |

## INTERVENOR-DEFENDANTS AMERICAN TRANSMISSION COMPANY LLC, ATC MANAGEMENT INC., AND DAIRYLAND POWER COOPERATIVE'S MOTION TO RECOVER ATTORNEY FEES AND COSTS

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 5

    A.    Procedural History before the Public Service Commission of Wisconsin ("PSCW" or "Commission") ............................................. 5

    B.    Procedural History of State and Federal Lawsuits ............................. 7

    C.    As Plaintiffs' Continued To Litigate Their Groundless Claims, The Project's Costs Increased. ................................................................. 12

ARGUMENT ................................................................................................................... 13

I.      PREVAILING DEFENDANTS MAY RECOVER ATTORNEYS' FEES UNDER 42 U.S.C. § 1988 TO DEFEND AGAINST A § 1983 CLAIM ................... 13

II.    ATC AND DAIRYLAND SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS BECAUSE PLAINTIFFS' SECTION 1983 AND IDENTICAL STATE CONSTITUTIONAL BIAS CLAIMS WERE UNREASONABLE AND WITHOUT FOUNDATION. ............................................ 15

    A.    Plaintiffs' bias claims against Commissioner Valcq and Commissioner Huebsch were meritless. .......................................... 16

            1.    Plaintiffs' bias claim against Commissioner Valcq was unreasonable and meritless. ................................................ 17

            2.    The Supreme Court of Wisconsin has ruled that Plaintiffs' bias claims against former Commissioner Huebsch were also meritless. ............................................................... 18

    B.    Even if the Court finds that Plaintiffs' due process claims did not lack merit when filed, ATC and Dairyland should still be awarded fees for hours expended in defending wholly duplicative claims in federal court. ...................................................................................... 22

    C.    Plaintiffs' motion to reopen this case was also frivolous. ............... 23

III.   THIS COURT SHOULD HOLD HOWARD LEARNER JOINTLY LIABLE FOR ATC'S, DAIRYLAND'S, AND THE COMMISSION'S EXCESS LITIGATION COSTS. ....................................................................... 24

IV.   ATC'S, DAIRYLAND'S, AND THE COMMISSION'S ATTORNEYS' FEES ARE FAIR AND REASONABLE. ................................................................ 26

CONCLUSION ................................................................................................................ 28

## INTRODUCTION

As a Wisconsin public utility, American Transmission Company LLC, though its corporate manager, ATC Management Inc. (collectively known as "ATC") has a legal duty to protect its ratepayers from incurring unreasonable costs. Similarly, although Dairyland Power Cooperative ("Dairyland") is a cooperative and not a public utility, Dairyland provides the wholesale electrical requirements for 24 distribution cooperatives and 27 municipal utilities, and Dairyland too has a duty to protect the ratepayers of those entities from incurring unjust and unreasonable costs.

In the last few decades, well over a hundred different parties, including individuals, municipalities, ratepayer groups, and environmental groups have participated in legal proceedings related to various projects ATC and/or Dairyland were proposing to build. Not once over the last few decades, however, has ATC or Dairyland attempted to recover their attorneys' fees from the parties opposing their projects. That is because they both want to encourage the public and all stakeholders to participate in the permitting process and legal proceedings related to their projects. ATC and Dairyland firmly believe that public participation in the project development process is critical to ensuring that regulators who need to make the difficult decision to approve or deny a project have all available evidence in front of them before making their decisions.

ATC and Dairyland provide this background to the Court to underscore that they do not make this motion lightly. But Plaintiffs Driftless Area Land Conservancy ("DALC") and Wisconsin Wildlife Federation's ("WWF") (collectively, "Plaintiffs") complaint in this case never should have been filed. The Wisconsin Supreme Court itself has acknowledged as much. And it necessarily follows that ATC's and Dairyland's ratepayers should not be forced to incur the millions of dollars in costs related to defending the Plaintiffs' specious claims.

For these reasons and as explained more fully herein, ATC and Dairyland move to recover their attorneys' fees and costs from Plaintiffs under the fee-shifting provision of 42 U.S.C. § 1988, which authorizes recovery of fees by a prevailing party in civil rights cases. 42 U.S.C. § 1988(b). Because the allegations of unconstitutional bias upon which Plaintiffs' claims were based were unreasonable and without foundation, ATC and Dairyland are the prevailing parties under the applicable legal standard.

In addition, ATC and Dairyland move to recover their attorneys' fees and costs from the person most directly responsible for bringing these claims and maintaining them, despite pronouncements from multiple courts about their lack of foundation: DALC's and WWF's lead attorney, Howard Learner, of the Environmental Law & Policy Center ("ELPC"). This Court should hold Mr. Learner accountable for his actions under 42 U.S.C. § 1927 for unreasonably and vexatiously multiplying litigation costs. Given that DALC and WWF are small non-profits without lawyers on staff, they likely relied on Mr. Learner's advice when bringing this action. Moreover, Mr. Learner and his law firm ELPC are not a typical uninvolved law firm representing a client— they are themselves an environmental advocacy group, much like the Plaintiffs DALC and WWF. ELPC describes itself on its website as "the Midwest's leading environmental legal advocacy organization."[1] In fact, Mr. Learner and his wife, Lauren Rosenthal, own a residence near one of the original potential routes for the Cardinal-Hickory Creek Project, and Ms. Rosenthal is on DALC's board.[2] Mr. Learner's personal interest in the Project may explain why he has acted so unreasonably and aggressively in this case; it might also explain why an environmental organization in Chicago is fighting a Project that will bring more renewable energy to the grid and allow coal plants to retire as scheduled. Regardless, as the person most culpable for bringing and

---

[1] *See* https://elpc.org/about/.
[2] *See* https://www.driftlessconservancy.org/our-board.

continuing to pursue this baseless bias lawsuit, Mr. Learner should be held personally responsible.[3] A reasonable person looking at the facts and circumstances surrounding this lawsuit and Mr. Learner's background and personal involvement would determine that he brought this case in bad faith to harass and attempt to intimidate the defendants.

This Court should therefore award ATC and Dairyland their fees incurred defending this federal lawsuit and the related claims in the Plaintiffs' state litigation, which were incurred as a direct result of discovery and other rulings made in this proceeding.[4] In addition, ATC and Dairyland also move to recover the Public Service Commission of Wisconsin's fees incurred defending against the same claims, which the Commission has charged to ATC's and Dairyland's ratepayers.[5] In total, ATC and Dairyland estimate that they have incurred $3,273,068 in recoverable fees and costs. Declaration of Brian Potts dated August 25, 2023 ("Potts Decl"), ¶ 6.

As the Supreme Court of Wisconsin recognized last year, Plaintiffs' claims of unconstitutional bias and federal-due process deprivations in both suits were based on gross errors of law. *Cnty. of Dane v. Pub. Serv. Comm'n of Wisconsin,* 2022 WI 61, 403 Wis. 2d 306, 976 N.W.2d 790 (July 7, 2022). The claims were "not grounded in a legally cognizable due process claim" and indeed, as Justice Hagedorn noted in his concurrence, came "nowhere close" to meeting the applicable legal standard. *Id.*, 2022 WI 61, ¶¶ 4, 68, 86–87. The Wisconsin Supreme Court justices characterized Plaintiffs' action as a "directionless search," and found that the claims "border[ed] on frivolous." *Id.*, 2022 WI 61, ¶¶ 15, 54. The claims, the Wisconsin Supreme Court

---

[3] Mr. Learner presumably has professional insurance that would cover any such award.

[4] ATC and Dairyland will provide additional documentation of their fees within 14 days of a decision by this Court as to liability.

[5] ATC and Dairyland seek recovery of the costs incurred by the Commission, which the Commission has charged to them under Wisconsin's public utility law, § 196.85(2). This statute provides for "the payment of expenses incurred by the [Commission] in regulating utilities by those utilities that generate the costs." *MCI Telecomms. Corp. v. State*, 209 Wis. 2d 310, 318, 562 N.W.2d 594, 598 (1997).

found, were "based on nothing factual," but instead the product of Plaintiffs' "aggressive litigation posture." *See also id.* 2022 WI 61, ¶ 86 (Hagedorn, J., concurring) (claims were "meritless and borderline frivolous."). The Supreme Court found that it was improper for the lower court judge to rely on an affidavit by one of Plaintiffs' attorneys that lacked <u>any</u> factual statements supporting the bias claim against former Commissioner Huebsch. *Id.*, 2022 WI 61, ¶ 75. Although this Court need not find that Plaintiffs lacked "subjective good faith," which the United States Supreme Court has instructed is not relevant for purposes of Section 1988's fee-shifting test,[6] the concurring justice in *Valcq* observed that Plaintiffs' tactically timed recusal motion, filed only after Plaintiffs lost their challenge to the Project in a hearing before the Commission, sought to "weaponize" the adjudicator's duty of impartiality to achieve litigation goals. *See id.*, 2022 WI 61, ¶ 98. Countenancing this conduct, Justice Hagedorn warned, could "routinize a litigation tactic" by litigants disappointed in the outcome of any contested proceeding. *Id.*

The Seventh Circuit similarly observed that there was "no good reason to litigate identical due-process recusal claims in state and federal court" and found that Plaintiffs' takings claim was "contrived" and therefore could safely "be ignored." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 517, 527 (7th Cir. 2021), *reh'g denied* (Nov. 16, 2021) ("*Driftless II*").

Attorneys' fees and litigation costs, like all other costs incurred to secure the necessary approvals for a transmission project, are incorporated into the price that consumers pay for electricity. But unlike rising prices for steel or other raw materials that result from unavoidable global economic conditions, the costs of defending against groundless and redundant claims, or participating in oppressive and ultimately unnecessary discovery, are not costs that should be charged to electric ratepayers. In moving for the attorneys' fees they incurred as a result of

---

[6] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

Plaintiffs' and Mr. Learner's groundless allegations and unreasonable litigation conduct, ATC and Dairyland seek to protect the interests of ratepayers to whom these costs will otherwise be passed down.[7]

## BACKGROUND

### A.   Procedural History before the Public Service Commission of Wisconsin ("PSCW" or "Commission")

In 2018, ATC, ITC Midwest, and Dairyland (the "Co-owners") applied to the Commission for a Certificate of Public Convenience and Necessity ("CPCN") to build the Cardinal-Hickory Creek 345-kV Transmission Line Project ("Project").[8] ECF No. 18-1 at 1. The Project is a new, approximately 100-mile long 345-kV transmission line that will run along (primarily existing) utility and transportation rights-of-way from the Cardinal Substation in Dane County, to a new Hill Valley Substation near Montfort, Wisconsin, and finally to the Hickory Creek Substation in Dubuque County, Iowa. ECF No. 1 ("Compl.") at ¶ 116; ECF No. 18-1 at 11. The Project's purpose is to improve the reliability of the high-voltage transmission system; decrease energy costs by reducing congestion on the transmission system; and improve access to a substantial amount of renewable wind generation being developed west of the Mississippi River. *See* ECF No. 18-1 at 18. It is one of seventeen regional transmission lines that the regional grid operator—the Midcontinent Independent System Operator, Inc. ("MISO")—included in its Multi-Value Project

---

[7] Rates at the local Wisconsin and federal level are required to be "just and reasonable." Wis. Stat. § 196.03(1); 16 U.S.C. § 824(d)(a); *see also Final Decision re Application of Wis. Power & Light Co. for Auth. to Repair and Replace the Steam Turbine at the Existing Riverside Energy Ctr., Located in Rock Cnty.*, Wis., 2017 WL 2311171 (Wis. P.S.C. May 24, 2017) ("It is reasonable to require [utility] to make all reasonable efforts to recover the full cost of the proposed project . . . through damages claims."); *City of Albany, Ill. v. FERC*, 7 F.3d 671, 674 (7th Cir. 1993) ("A utility must be prepared, on challenge, to demonstrate that it has acted prudently to curtail its costs.").

[8] The proceeding regarding the CPCN Application was docketed as Docket No. 05-CE-146 before the Commission. *See* PSC of Wisconsin, E-Services Portal, available at http://apps.psc.wi.gov/.

portfolio in 2011. *Id.* at 14; *see also Ill. Commerce Comm'n v. FERC*, 721 F.3d 764, 770–772 (7th Cir. 2013) (describing the Multi-Value Project portfolio).

As the Seventh Circuit acknowledged, the Project's permitting process before the Commission was complex and involved "a highly technical inquiry." *Driftless II*, 16 F.4th at 516. After the Co-owners applied for a CPCN, the Commission convened an administrative contested case proceeding in which more than 50 parties intervened, including DALC (in April 2018) and WWF (in November 2018), which ELPC represented. *Id.*; *see also* Wis. Stat. § 227.01(3)(a). In 2019, the parties engaged in extensive pre-hearing discovery and motion practice; submitted written testimony and exhibits into the record; participated in a week-long technical hearing; and submitted post-hearing briefs. *See* ECF No. 18-1 at 2–5.

At an open meeting held on August 20, 2019, the Commission unanimously determined that the Project was in the public interest and orally approved it. *See, e.g.*, Compl. ¶¶ 142–145. Exactly one month later—and just six business days before the statutory deadline for the Commission's final written decision—Plaintiffs, presumably at Mr. Learner's direction, filed a motion with the Commission requesting that (1) Chairperson Rebecca Valcq and Commissioner Michael Huebsch ("Commissioner Huebsch") recuse themselves from deliberating the merits of the case, and (2) the Commission refrain from approving the Project. *See id.* at ¶¶ 146–147; ECF No. 18-1 at 80–81. At no point between April 27, 2018 (when DALC sought intervenor status) and August 20, 2019 (when the Commission preliminarily approved the Project at its open meeting) did Plaintiffs or any other intervenor assert any allegations of bias or conflicts of interest against any commissioner, nor did any other party request that any commissioner recuse him or herself from the proceeding. Instead, Plaintiffs waited to file their recusal motion until after they knew they had lost. *See* ECF No. 18-1 at 81–82. Plaintiffs do not dispute this fact. They deliberately

waited until after a preliminary decision was made to allege baseless allegations and raise matters of public record that were known for months, if not years, before the decision was rendered. This is a textbook case of frivolous litigation.

On September 26, 2019, the Commission issued a 100-page written decision approving the CPCN for the Project. *See* Compl. at ¶ 19; ECF No. 18-1. The Commission found that, by improving the state's access to renewable generation projects being developed west of the Mississippi River, the Project "represents an important step in moving towards a future with increased renewable generation." *See* ECF No. 18-1 at 24–26, 29–32. The Commission also denied Plaintiffs' recusal motion, finding that "[v]iewed in the best light, the [motion] reflects a lack of diligence and knowledge of administrative and Commission procedures." *Id*. at 82, 86. Alternatively, Plaintiffs' "delay in bringing the motion can reasonably be perceived as intentional, keeping these allegations in reserve to spring upon the Commission if it decided the matter adversely to Plaintiffs' interests." *Id.* at 82. On the merits, the Commission found that Plaintiffs failed to "set forth any facts, verified or not, that otherwise show any instances, statements, communications, or other substantiated evidence that show bias, prejudice, or improper contacts" as to Chairperson Valcq and Commissioner Huebsch. *Id.* at 85–86.

## B.    Procedural History of State and Federal Lawsuits

On December 11, 2019, Plaintiffs filed this action under 42 U.S.C. § 1983 alleging that Defendants violated the Takings Clause and Due Process Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution by denying the Recusal Motion and approving the CPCN. Compl. at ¶¶ 176–196. Two days later, Plaintiffs filed parallel petitions for judicial review of the CPCN under the Wisconsin Administrative Procedure Act in Wisconsin circuit court. *See* Wis. Stat. § 227.53. In these petitions, Plaintiffs "raise[d] a federal due-process claim based on the same

conflict-of-interest allegations involving Commissioners Valcq and Huebsch" that they raised in this case. *Driftless II*,16 F.4th at 517; *see also* ECF No. 18-2 at ¶¶ 102–21 (DALC's petition); ECF No. 18-3 at ¶¶ 102–21 (WWF's petition). These and other petitions for judicial review of the CPCN were consolidated in Dane County Circuit Court. *Driftless II*, 16 F.4th at 517.

In January 2020, the Co-owners and the Commission moved to dismiss Plaintiffs' complaint in this case based on (among other things) the Defendants' immunity from suit under the Eleventh Amendment and the failure to state a claim upon which relief can be granted. *See generally* ECF Nos. 7, 17. Around the same time, the Co-owners moved to intervene. ECF Nos. 10, 23; 28. This Court initially denied those motions, ECF No. 49, but reversed itself on September 11, 2020, after the Seventh Circuit determined that the Co-owners were entitled to intervene as of right. ECF No. 78; *see also Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742 (7th Cir. 2020) ("*Driftless I*"). While the intervention issue was on appeal, the Plaintiffs conducted extensive discovery against the Defendants, *see, e.g.*, ECF Nos. 59, 61, who produced thousands of pages of documents—including meeting minutes, emails, and personal text messages—to Plaintiffs. Plaintiffs similarly sought extensive discovery against the Co-owners (after they were allowed to intervene) and other third parties. ECF No. 160. Despite the production of thousands of pages of documents, no evidence was found to substantiate Plaintiffs' baseless claims.

On November 20, 2020, this Court granted in part and denied in part the Co-owners' and Defendants' motions to dismiss, rejecting (among other things) Defendants' sovereign immunity defense—but putting Plaintiffs "on notice that they will ultimately face an uphill battle in actually proving their allegations." *See Driftless Area Land Conservancy v. Pub. Serv. Comm'n of Wisconsin*, No. 19-CV-1007-WMC, 2020 WL 6822707, at *15 (W.D. Wis. Nov. 20, 2020), *rev'd*

*and remanded sub nom. Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508 (7th Cir. 2021), ECF No. 159 ("Opinion"). Defendants appealed the sovereign immunity issue to the Seventh Circuit, which stayed the district court proceedings pending appeal.[9] *Driftless II*, 16 F. 4th at 518. In November 2021, the Seventh Circuit issued an opinion rejecting the defendants' sovereign immunity defense but ordering this Court to abstain from and stay this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) "pending dispositive developments in the state litigation." *See Driftless II*, 16 F.4th at 524–29. The Seventh Circuit emphasized that abstention was appropriate given the duplicative nature of the bias claims Plaintiffs raised in state and federal court, which it found "materially identical." *Driftless II*, 16 F.4th at 526. Because the due process claims Plaintiffs raised in state court were virtually identical to those raised in federal court, the Seventh Circuit found that "it's not just 'substantially likely' that the state litigation will dispose of the federal case—it is nearly certain that it will do so." *Id*.

Meanwhile, in the state proceedings, the parties had fully briefed the Plaintiffs' petitions for judicial review by the summer of 2020, and the Dane County Circuit Court had set oral argument for October 29, 2020. Just ten days before the scheduled oral arguments, Plaintiffs moved to supplement the administrative record before the state circuit court with documents that were produced in discovery in this proceeding. In January 2021, after extensive briefing, the circuit court held oral argument on whether to grant the motion. Potts Decl., Ex. A. The court concluded that a "*prima facie*" showing of bias had been alleged concerning Commissioner Huebsch and indicated that it would permit discovery as to Commissioner Huebsch on Plaintiffs' bias claims. *Id*., Ex. A, 91:14–20. However, the court dismissed the Plaintiffs' claims against Commissioner Valcq, holding that connections she established in her previous life in private practice (a) did not

---

[9] The Co-owners also appealed, but that appeal was dismissed. However, the Seventh Circuit ultimately granted the Co-owners' motion to intervene in the defendants' appeal.

present any serious basis for recusal and (b) "were known from the outset." *Id*., Ex. A, 12:15–13:13; *see also infra*, Argument § II.A.2. Following additional briefing by the parties, the circuit court issued a decision and order on May 25, 2021, scheduling discovery and an evidentiary hearing concerning the bias claims against Commissioner Huebsch. *See Cnty. of Dane*, 2022 WI 61, ¶ 14 n.16. But for the discovery that was allowed in this proceeding (which the Seventh Circuit later determined should have never occurred), none of the additional proceedings in the state circuit court regarding the Plaintiffs' bias allegations would have occurred.

The Plaintiffs next issued wide-ranging and personally invasive discovery in the state proceeding to parties and non-parties alike, including deposition and document subpoenas to Commissioner Huebsch asking for (among other things) full access to his personal smartphone. *Id*. ¶¶ 14–16. In July 2021, Huebsch moved to quash these subpoenas, the circuit court denied his motion, and he appealed that decision to the Court of Appeals of Wisconsin. *Id.* ¶ 17. In August 2021, the appellate court stayed the subpoenas on a temporary, *ex parte* basis, but subsequently dismissed Huebsch's appeal as moot when the Plaintiffs withdrew the discovery subpoenas. *Id*. A mere two business days after successfully mooting Huesbch's appeal, the Plaintiffs issued a subpoena for him to testify at the upcoming evidentiary hearing. *Id*. ¶ 18.

Several days later, Huebsch sought emergency review from the Supreme Court of Wisconsin and requested a stay of the trial subpoena. *Id.* On September 21, 2021, the Supreme Court of Wisconsin granted Huebsch's petition for review and stayed enforcement of the trial subpoena "and any other discovery or trial-related demands" directed at him. *Id.* One week later, after briefing and oral argument, the circuit court issued an order staying all proceedings related to allegations of procedural irregularities in the Commission CPCN proceeding pending the Supreme Court's resolution of Huebsch's appeal. *Id.*

On July 7, 2022, the Supreme Court of Wisconsin delivered a sweeping rebuke of Plaintiffs' bias claims. *See id.* at ¶¶ 2–5, 348. The Supreme Court dismissed the Plaintiffs' bias claims as "meritless and borderline frivolous" and found that "Driftless' allegations of bias do not come close to the level of alleging a cognizable due process claim under *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884 (2009) and *Miller v. Carroll*, 2020 WI 56, ¶ 24, 392 Wis. 2d 49, 944 N.W.2d 542." *Id.* ¶ 4 (op. of the Court); *see id.* ¶ 86 (Hagedorn, J., concurring). On remand, the circuit court entered an order dismissing the bias claims against Commissioner Huebsch and memorializing its prior dismissal of the bias claims against Chairperson Valcq. ECF No. 235-2. Several months later, on May 8, 2023, the circuit court issued a final decision affirming the CPCN the Commission issued for the Project.[10] ECF No. 250-1.

Notwithstanding these dispositive developments, Plaintiffs renewed their efforts to litigate their by-then definitively rejected bias claims in this Court. In January 2023, Plaintiffs moved this Court to lift the Seventh Circuit's earlier stay and "schedule a preliminary pretrial conference as soon as practicable." ECF No. 235 at 2. In other words, Plaintiffs continued to pursue their "borderline frivolous" due process claims against Commissioners Valcq and Huebsch in this Court, despite the state courts' categorical rejection of those claims. Plaintiffs' motion came on the heels of Commissioner Huebsch's motion to lift the stay, dismiss this case, and enter judgment in favor of the defendants on the grounds of issue and claim preclusion. ECF No. 226–27.

On July 25, 2023, this Court lifted the stay and dismissed Plaintiffs' remaining claims with prejudice under the doctrine of claim preclusion. ECF No. 254. The Court noted that this "straightforward" outcome was a natural product of the *Colorado River* stay the Seventh Circuit previously ordered and that Plaintiffs' due process claims against the commissioners were "plainly

---

[10] Plaintiffs and Dane County have appealed this decision to the Wisconsin Court of Appeals, which appeal remains pending.

barred by the doctrine of claim preclusion (*res judicata*)." *Id.* at 4–5 The Court deemed Plaintiffs'

motion "an improper attempt to relitigate the question of whether abstention was appropriate in

the first place," showing that Plaintiffs "'simply want[] two bites at the apple.'" *Id.* at 7 (quoting

*Driftless II*, 16 F.4th at 527). On August 11, 2023, the clerk entered judgment in Defendants' favor.

ECF No. 255.

### C.      As Plaintiffs' Continued To Litigate Their Groundless Claims, The Project's Costs Increased.

Current market conditions for a major infrastructure project are challenging at best. Supply

chain constraints, the ongoing war in Ukraine, and rising inflation have increased the cost of raw

materials that will be used to build the Project considerably since the Project cost estimates were

developed in 2018.[11] For example, the Co-owners have contracted for nearly all structures,

conductor, hardware and insulators needed for the Project. ATC experienced levelized price

increases of approximately 93% for steel and 68% for conductor compared to the estimated price

used in 2018 when creating the Project's total estimated cost. Similarly, ITC Midwest saw the

average price of steel increase by approximately 110% from 2018 to 2022. Additionally, glass

insulator costs have risen approximately 10% for ATC due to high energy costs in Europe along

with increased rates in shipping container costs. The glass is produced in Europe and then shipped

to the U.S. factory for final assembly.

Market conditions have increased costs—but so too have the protracted Project-related

litigation costs. This litigation has imposed additional and substantial unnecessary legal

expenditures on both the Co-owners and the Commission. This litigation also created uncertainty

---

[11] The Co-owners alerted the Commission of these cost increases in the Project CPCN docket. *See* Co-owner Letter to PSCW (May 20, 2022), available on PSCW E-Services Portal, https://apps.psc.wi.gov/ERF/ERFview/viewdoc.aspx?docid=438410.

regarding the Project's construction timing, which has further exacerbated the Project's cost increases. Accordingly, although ATC and Dairyland cannot recover Project-related construction cost-increases from Plaintiffs or Mr. Learner, they feel obliged to at least seek to recover the attorneys' fees and litigation costs related to Plaintiffs' groundless and redundant claims. ATC and Dairyland feel they must protect the interests of their ratepayers, who will otherwise bear these costs in the form of increased rates. In total, ATC and Dairyland estimate that their fees and the Commission's fees related to defending against Plaintiffs' groundless bias claims in federal and state court are $3,273,068. Potts Decl. ¶¶ 4–6.

## ARGUMENT

**I.   PREVAILING DEFENDANTS MAY RECOVER ATTORNEYS' FEES UNDER 42 U.S.C. § 1988 TO DEFEND AGAINST A § 1983 CLAIM.**

Given Plaintiffs' pattern of conduct in this litigation, an award of "prevailing party" fees and costs to ATC and Dairyland under Section 1988(b) is warranted and appropriate. Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of" Section 1983, "the court, in its discretion, may allow a prevailing party… a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *see also Fox v. Vice*, 563 U.S. 826, 832–33 (2011). The statute commits the decision whether to award attorneys' fees to the district court's sound judgment. *Cooney v. Casady*, 735 F.3d 514, 521 (7th Cir. 2013) (citing *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir.1999)). Section 1988 authorizes a fee award to either prevailing plaintiffs *or* prevailing defendants, albeit under a different standard. *Fox*, 563 U.S. at 833.[12] A defendant is considered a

---

[12] Courts have recognized that the language of the statute is neutral with respect to the identity of the "prevailing party." *See Montanez v. Simon*, 755 F.3d 547, 550, 553 (7th Cir. 2014); *see also Fox*, 563 U.S. at 829. They nonetheless apply a more demanding standard when a defendant seeks to recover fees based on a 1978 Supreme Court decision that resorted to legislative history to justify the difference. *Christiansburg Garment Co.,* 434 U.S. at 420 (citing "fragments of legislative history"). That interpretive approach no longer has currency. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (consulting legislative history to interpret unambiguous text is "a relic from a 'bygone era of statutory construction.'"). The Supreme Court has stated that "[e]ven those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" *Id.*

"prevailing party" if the plaintiff's claim "was frivolous, unreasonable, or groundless, or if the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422; *Fox*, 563 U.S. at 833; *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1277 (7th Cir. 1983) ("[A]ctions that are groundless or without foundation/ will give rise to an attorney's fee award for the defendant."). A plaintiff's "subjective bad faith" is not a prerequisite to a fee award in a defendant's favor. *Christiansburg Garment Co.,* 434 U.S. at 421; *Mary Beth G.*, 723 F.2d at 1278; *Gatzke v. City of W. Bend, Wis.*, No. 21-C-0243, 2022 WL 17491082, at *4 (E.D. Wis. Nov. 4, 2022), *dismissed sub nom. Gatzke v. Greenfield Worldtrade Inc.*, No. 22-3181, 2022 WL 20042292 (7th Cir. Dec. 13, 2022) ("the plaintiffs' 'beliefs' do not save a suit from being deemed groundless, as fees may be awarded even if the suit was not brought in subjective bad faith.").

Notably, "a defendant may deserve fees even if not all the plaintiff's claims were frivolous." *Fox*, 563 U.S. at 834. Section 1988 serves to relieve a defendant of expenses attributable to frivolous claims, and "[t]hat remains true when the plaintiff's suit also includes non-frivolous claims." *Id.* Although a defendant may not be awarded fees incurred as a result of the non-frivolous claims, "the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Id*. The standard may "allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims. … the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id*. at 837–38. That said, fee-shifting requests "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Moreover, a defendant may recover attorneys' fees incurred in both federal and state proceedings if the underlying claim is either a federal civil rights claim listed in Section 1988(b),

or if state court proceedings are an integral part to a federal § 1983 action. *Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47, 49, 52 (1st Cir. 1986) (citing *Webb v. Bd. of Educ. of Dyer Cnty., Ky.*, 471 U.S. 234 (1985)) ("in some cases state-court proceedings may be such an integral part of a federal § 1983 action that they are compensable under § 1988. … the Court acknowledged that fees may be awarded for a 'discrete portion' of work done in state proceedings 'useful and of a type ordinarily necessary' to the successful outcome of the litigation"); *Lampher v. Zagel,* 755 F.2d 99, 103–04 (7th Cir.1985) (fee award appropriate where state court proceedings are a "necessary part" of federal suit). As explained by the D.C. Circuit, "a federal court defers to another tribunal so that essential procedural or jurisprudential steps may be completed. Since the *action* is never out of the federal court's purview, there is no impropriety in awarding recovery for the fees associated with those steps." *Lundin v. Mecham*, 980 F.2d 1450, 1462 (D.C. Cir. 1992).

## II.   ATC AND DAIRYLAND SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS BECAUSE PLAINTIFFS' SECTION 1983 AND IDENTICAL STATE CONSTITUTIONAL BIAS CLAIMS WERE UNREASONABLE AND WITHOUT FOUNDATION.

As summarized above, Section 1988 does not limit recovery of attorneys' fees by prevailing parties to plaintiffs. Rather, the fee-shifting provision extends to and protects defendants from burdensome litigation that is "frivolous, unreasonable, or groundless." *See Christianburg Garmet Co.*, 434 U.S. at 420-421. While the fact that "a plaintiff may ultimately lose his case is not in itself sufficient justification for an assessment of fees," a "meritless" action, "in the sense that [such action] is groundless or without foundation" justifies awarding fees to the defendant. *See Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980) (per curiam) (applying *Christiansburg* under Section 1988). As the Eastern District of Wisconsin recently explained:

> [W]hen a civil rights suit is lacking in any legal or factual basis, an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that

the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation.

*Gatzke*, 2022 WL 17491082, at *3. Here, Plaintiffs' bias claims against each commissioner were meritless and were the product of a strategic recusal motion that, despite being based on either publicly available information long available to Plaintiffs (in the case of Commissioner Valcq), or allegations with no factual foundation whatsoever (in the case of Commissioner Huebsch), Plaintiffs filed only after they failed to achieve their desired result in the PSCW proceeding.[13]

### A.  Plaintiffs' bias claims against Commissioner Valcq and Commissioner Huebsch were meritless.

The merits of Plaintiffs' bias claim against Chairperson Valcq and former-Commissioner Huebsch were questionable from the start. Having lost on the merits in the underlying PSCW proceeding, Plaintiffs decided to attack not only the Commission's decision that the Project is in the public interest, but also the integrity of the officials who made it without having any basis to assert improprieties. In both the federal and state cases, Plaintiffs asserted that the two commissioners were unconstitutionally biased under the due process standard set forth in *Caperton*, 556 U.S. 868. ECF No. 254 at 3. These claims were based on general allegations related to Valcq's employment history and Huebsch's role as adviser to MISO, which Plaintiffs' alleged created an unconstitutional "appearance" of bias and lack of impartiality. *See Cnty. of Dane*, 2022 WI 61, ¶ 10. However, as detailed below, and as recognized by the Wisconsin courts, these claims were groundless.

---

[13] Remarkably, Plaintiffs' complaint also named Commissioner Nowak as a defendant, even though it included no factual allegations of wrongdoing against her. *Driftless Area Land Conservancy v. Pub. Serv. Comm'n of Wis.*, No. 19-CV-1007-WMC, 2020 WL 6822707, at *14 (W.D. Wis. Nov. 20, 2020), *rev'd and remanded sub nom. Driftless II*, 16 F.4th 508 (dismissing "Commissioner Nowak from plaintiffs' due process claims as they allege no facts demonstrating her personal bias.").

### 1. Plaintiffs' bias claim against Commissioner Valcq was unreasonable and meritless.

Plaintiffs' bias claim against Commissioner Valcq was unreasonable and meritless. This was evident from the start, which circuit court Judge Frost confirmed in his January 2021 oral ruling dismissing that claim. As the Seventh Circuit succinctly summarized:

> On January 21, 2021—a month *before* this appeal was argued—the judge presiding in the consolidated judicial-review proceedings in Dane County held a lengthy hearing and ruled that Commissioner Valcq's prior representation of We Energies was *not* a disqualifying conflict of interest and did not trigger a due-process duty to recuse. The judge accordingly rejected Driftless's request for discovery on those allegations and said he was "throwing out any challenge to Commissioner Valcq."

*Driftless II*, 16 F.4th at 519. In addition to recognizing that the claim against Valcq was meritless, the Wisconsin circuit court emphasized the Plaintiffs' prior knowledge of the underlying facts that created the basis for their allegations, and ruled that, even if there had been some merit to their allegations, the Plaintiffs' claim was waived. In dismissing the claim against Valcq, the circuit court reasoned:

> … I'm not going to allow any further proceedings to investigate whether Commissioner Valcq should have recused and I'm doing that for two reasons that are connected I would say. The first is that the only possible concerns raised about Commissioner Valc[q] had to do with her previous life in private practice and that she represented entities that have some connections, either a direct connection here, and ***I really don't see anything alleged that would lead to a serious question that she needed to recuse here***. But even if I did or for anything that's maybe borderline where it might raise some concern, I think the waiver argument has to prevail as it relates to Commissioner Valcq. ***The issues that were raised about her were known from the outset.*** She was very clear about her background and had a process for recusal that was known or at least publicized by the commissioner from her taking the role. ***So to wait to raise those challenges until the very end of the process, it's simply far too late*** ….

Potts Decl., Ex. A, 12:9–13:9 (emphasis added); *cf. Gatzke*, 2022 WL 17491082, at *4 (E.D. Wis. Nov. 4, 2022) (facts undermining claim "were matters of public record and thus would have been easily discovered had the plaintiffs conducted a reasonable pre-suit investigation.").

Although Plaintiffs had no evidence to substantiate their allegations against Valcq, Plaintiffs nonetheless included this groundless claim in their federal Section 1983 suit as well. *Driftless* II, 16 F.4th at 517.

### 2. The Supreme Court of Wisconsin has ruled that Plaintiffs' bias claims against former Commissioner Huebsch were also meritless.

In addressing the merits of Plaintiffs' due process claim against Huebsch, the Supreme Court of Wisconsin held that Plaintiffs' allegations of bias "d[id] not come close to the level of alleging a cognizable due process claim" under the federal and state constitutional standards. *Cnty. of Dane*, 2022 WI 61, ¶ 4. As explained by the court, an "appearance" of bias is insufficient as a matter of law:

> [A]dministrative decision-makers are entitled to the presumption of "honesty and integrity" when serving as adjudicators. … To overcome the presumption of honesty and integrity, [and show a due process violation,] the party asserting bias of an administrative adjudicator must show a "serious risk of actual bias—based on objective and reasonable perceptions."

*Id.*, 2022 WI 61, ¶¶ 45, 60; *see also Driftless Area Land Conservancy*, 2020 WL 6822707, at *14 (warning that plaintiffs' frequent assertion of "an appearance of bias and lack of impartiality . . . is unlikely to be enough to state a claim for unconstitutional bias" and that their "arguments that the Commissioners had an obligation under state or federal judicial ethics laws to recuse themselves does not by itself create a constitutional recusal obligation"). Plaintiffs' claim was therefore groundless as a matter of law. *Gatzke*, 2022 WL 17491082, at *3 (awarding fees to defendants where "claim had no basis in law").

Plaintiffs' claim also lacked any factual foundation, as the Supreme Court found in determining that the circuit court had improperly allowed Plaintiffs to expand the scope of the administrative record: "[w]ithout evidence of factual communications that show wrongdoing by [a decision-maker], 'proper cause' to expand the record under Wis. Stat. § 227.57(1) based on bias

of a decision-maker does not exist." *Id*., 2022 WI 61, ¶ 60. Reviewing each allegation offered in

support of the due process violation claim against Huebsch,[14] the Wisconsin Supreme Court

explained that Plaintiffs "ignore[d] the foundational presumption of honesty and integrity of

administrative decision-makers" and provided "absolutely no factual evidence to support" their

allegations. *Id.*, 2022 WI 61, ¶¶ 42–63. The Wisconsin Supreme Court emphasized throughout the

opinion that Plaintiffs lacked any factual evidence to support their claims, and instead, simply

provided "non-specific" and "general allegations" that were "legally insufficient" to prove a due

process violation. *See, e.g., id.*, 2022 WI 61, ¶¶ 21, 41, 46, 53, 60, and 63. Specifically, the Supreme

Court made the following findings regarding each allegation, demonstrating the baselessness of

Plaintiffs' due process claim:

### *The MISO relationship*

> Driftless alleges that Huebsch's activities with MISO and OMS support its
> allegation that he engaged in ex parte communications that are prohibited under
> Wis. Stat. § 227.50(1)(a). Driftless makes this allegation <u>without one single
> example</u> of Huebsch engaging in conversations with anyone from MISO or OMS
> about the merits of the Cardinal-Hickory line. … Rather, Driftless implies there
> must have been such communications because of Huebsch's attendance at MISO
> and OMS events. General allegations such as Driftless asserts are legally
> insufficient to contravene the terms of § 227.50(1)(a) because they do not show a
> communication "relative to the merits" of the Cardinal-Hickory line. … Before us,
> Driftless ignores the foundational presumption of honesty and integrity of
> administrative decision-makers, and makes no showing of actual communications
> on the merits of Cardinal-Hickory that could evidence a serious risk of actual bias.
> Driftless had the burden of proof in its challenge to Huebsch's impartiality. …
> Because it did not provide factual evidence of wrongdoing by Huebsch, it failed to
> meet that burden. … Accordingly, we conclude that Driftless' allegations … are
> insufficient as a matter of law to pose a serious risk of actual bias, such that he was
> required to recuse himself from the Cardinal-Hick[ory] proceedings based on a due
> process violation. … They also are insufficient to support expanding the Cardinal-

---

[14] Plaintiffs made three types of "general allegations on which it claims a due process violation: (1) Huebsch's
activities with MISO provided opportunities for improper conversations; (2) Huebsch's life-time friendships with
those who work in the provision or distribution of energy could have included improper conversations; and (3)
Huebsch's application for employment by Dairyland Power Cooperative after he resigned from the PSC implies a
connection between his decision in Cardinal-Hickory and future employment." *Cnty. of Dane*, 2022 WI 61, ¶ 46.

Hickory record created in proceedings before the PSC pursuant to Wis. Stat. §
227.57(1) because they show no factual evidence of wrongdoing by Huebsch.

*Id.*, 2022 WI 61, ¶¶ 51–58.

### *Friendships*

Although Driftless argues to us that Huebsch's many friendships within the energy
community could be a basis for bias, ***this contention was not made until briefing
in this review***. As with its allegation in regard to MISO, Driftless' allegations
[regarding Huebsch's friendships] are general associational concerns for which it
provides no factual incidents of communication about the merits of the Cardinal-
Hickory line. … Driftless' general allegations of concern ***provide no basis*** from
which we could conclude that there is a serious risk of actual bias that would require
disqualification of Huebsch according to <u>Caperton</u> and our decision in <u>Miller</u> or
that "proper cause has been shown" of wrongdoing by Huebsch according to §
227.57(1) based on personal friendships. We agree with the PSC that Driftless'
allegation "lacks a legitimate factual basis to support recusal or disqualification."

*Id.*, 2022 WI 61, ¶¶ 59–60 (emphasis added).

### *Employment Opportunity*

Before us, Driftless implies that, because Huebsch applied for the position of CEO
of Dairyland Power Cooperative months after he resigned from the PSC, there was
some kind of a quid pro quo going on where Huebsch would approve Cardinal-
Hickory and then be hired by Dairyland. Once again, there is absolutely no factual
evidence to support this theory. This is simply another attempt by Driftless to create
the view that Huebsch was biased, ***which is based on nothing factual except its
aggressive litigation posture***. … Driftless provided no factual evidence that
Huebsch presented a serious risk of actual bias in favor of approval of Cardinal-
Hickory. There is no factual evidence of any wrongdoing by Huebsch.
***Unsubstantiated allegations are all that Driftless provided***. Therefore, there is no
"proper cause," as required under Wis. Stat. § 227.57(1), to expand the record
created before the PSC on the Cardinal-Hickory line.

*Id.*, 2022 WI 61, ¶¶ 61–63 (emphasis added). This Court should award fees because of the absence

of any facts to support Plaintiffs' claims. *Gatzke*, 2022 WL 17491082, at *4 (awarding fees where

constitutional claim "was factually groundless.").

The Wisconsin Supreme Court's findings as they pertain to both Huebsch and Valcq leave

no doubt that Plaintiffs' allegations were groundless, unsubstantiated, and merely another attempt

to delay the Project as part of Plaintiffs' "aggressive" litigation strategy. Not only did the unsubstantiated allegations against the Commissioners "not come close to the level of alleging a cognizable due process claim," *id.*, 2022 WI 61, ¶ 4, but the timing of Plaintiffs' recusal motion as the vehicle for these claims also demonstrates that these claims were unreasonable and a calculated decision to disrupt the process and progress of the transmission line. That is not the purpose of civil rights litigation. The very limited facts underlying Plaintiffs' bias claims were known to them for months, if not years, before the facts were raised with the Commission. *Id.* at ¶ 54 (connections among Commission, MISO, OMS and FERC upon which recusal motion was based "were apparent years before Driftless intervened in this action"). Despite their awareness of these facts throughout the underlying PSCW proceeding, Plaintiffs waited until September of 2019, one month after the Commission preliminarily approved the Project, to move (unsuccessfully) for recusal in the Commission. *Id.* at ¶ 10, n.7.

After the Commission denied their recusal motion, Plaintiffs unreasonably pursued their due process claims in both state and federal judicial proceedings, and then continued to litigate the claims even after the Supreme Court of Wisconsin would later characterize them as "unsubstantiated allegations" based on "nothing factual," and without having "one single example" of the alleged misconduct. *See, e.g., id.* at ¶¶ 21, 41, 46, 51, 53, 60, 61 and 63. Accordingly, ATC, Dairyland and the Commission deserve prevailing party fees not only for their work on this case, but also for the work required to defend the due-process recusal claims asserted and litigated in the state court proceedings—which the Seventh Circuit found were "materially identical" to the federal due process claims and which would not have been incurred but for the discovery that was allowed in this proceeding. *Driftless II,*16 F.4th at 515, 526 (noting cases "involve the same parties, the same facts, and the same issues … will be resolved by examining

largely the same evidence, and are governed by the legal standard announced in *Caperton*")
(citation omitted); *Lampher,* 755 F.2d at 103–04 (fee award appropriate where state court
proceedings are a "necessary part" of federal suit); *Lundin*, 980 F.2d at 1462 (awarding fees for
state court action after federal court granted abstention).

> **B.      Even if the Court finds that Plaintiffs' due process claims did not lack merit
> when filed, ATC and Dairyland should still be awarded fees for hours
> expended in defending wholly duplicative claims in federal court.**

As the Seventh Circuit confirmed, the entire federal litigation pertaining to Plaintiffs' due
process claims was duplicative of the concurrent state litigation. It was therefore inherently
unreasonable to file a second and concurrent suit in federal court for identical claims, and the Court
should award ATC and Dairyland fees, at a minimum, for litigating the claims in the federal suit.

Although "Wisconsin courts are fully capable of applying [federal constitutional
standards]" and had "begun to do so," Plaintiffs nonetheless pursued their unsubstantiated claims
in federal court without allowing the state proceedings to run their course. *Driftless II*, 16 F.4th at
527. Recognizing that Plaintiffs "raised materially identical due-process recusal claims in both
state and federal court," the Seventh Circuit's opinion ordered this Court to abstain from and stay
this case under the *Colorado River* abstention doctrine "pending dispositive developments in the
state litigation." *See id.*, 16 F.4th at 515, 524–29. The Seventh Circuit emphasized that abstention
was appropriate given the duplicative nature of the bias claims Plaintiffs raised in state and federal
court:

> The cases are parallel in all the ways that matter under *Colorado
> River*. The due-process recusal claims "involve the same parties, the
> same facts, and the same issues." Indeed, the claims are materially
> identical: they will "be resolved by examining largely the same
> evidence," and are governed by the legal standard announced in
> *Caperton*.

*Id.*, 16 F.4th at 526 (internal citations omitted). The Seventh Circuit found that it was "not just 'substantially likely' that the state litigation will dispose of the federal case—it is nearly certain that it will do so." *Id*.

As a result of Plaintiffs' aggressive litigation tactics, the defendants were forced to extensively litigate duplicative claims, which required overlapping filings of several motions and appeals, in both state and federal court, as well as the intervention appeal unique to the federal case. These efforts resulted in significant costs for ratepayers, which, but for the duplicative proceedings, would not otherwise have been incurred. Plaintiffs' strategy was an inefficient and unreasonable use of this Court's judicial resources given that Plaintiffs' due process claims were groundless and based on unsubstantiated allegations. *See supra* Section III.A. Section 1988 "serves to relieve a defendant of expenses attributable to frivolous [unreasonable, or groundless] charges," *Fox*, 563 U.S. at 834, and would well serve its intended purpose here.

### C.   Plaintiffs' motion to reopen this case was also frivolous.

Because Plaintiffs pursued bias claims based on allegations wholly lacking any factual basis, their claims were "groundless" and "unreasonable" from the beginning. But even if the Court were to find that Plaintiffs had some basis to pursue those claims at the outset of the litigation, Plaintiffs could have had no doubt that their claims lacked merit after the Supreme Court of Wisconsin's ruling. Yet Plaintiffs nonetheless moved at that time to reopen their parallel federal lawsuit, despite the Supreme Court's clear statements that their due process claims failed to meet the legal standard to state a claim under *Caperton*, *see supra* p. 16, in what this Court recognized as a naked attempt to litigate a case "now plainly barred by the doctrine of claim preclusion." ECF No. 254 at 5. Both the Seventh Circuit and this Court recognized that Plaintiffs "simply want[ed] two bites at the apple." *Driftless II*, 16 F.4th at 527; ECF No. 254 at 7. Fees are warranted when a

plaintiff's "claim [is] frivolous, unreasonable, or groundless, *or if the plaintiff continued to litigate after it clearly became so*." *Christiansburg Garment Co.*, 434 U.S. at 422 (emphasis added); *see also Hughes v. Rowe*, 449 U.S. 5, 14–15, (1980) (per curiam) (applying *Christiansburg* under Section 1988). Here, the lack of merit to Plaintiffs' claims should have been apparent to them from the beginning, but certainly no later than when the Wisconsin Supreme Court categorically rejected them. Fees incurred to respond to Plaintiffs' attempts to reopen proceedings in this Court after the decision issued should be awarded to ATC and Dairyland, since Plaintiffs' efforts at that point were obviously frivolous.

## III.    THIS COURT SHOULD HOLD HOWARD LEARNER JOINTLY LIABLE FOR ATC'S, DAIRYLAND'S, AND THE COMMISSION'S EXCESS LITIGATION COSTS.

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In addition, when a court awards fees against a party under Section 1988, it may hold the attorney jointly liable under Section 1927. *See Strain v. Kaufman Cnty. Dist. Atty's Off.*, 23 F. Supp. 2d 698, 703 (N.D. Tex. 1998) (finding plaintiff's counsel "jointly liable for the fees and costs" where Section 1988 fees were also awarded to defendants.).

"A court may impose sanctions under § 1927 where an attorney has 'acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . or *where a claim [is] without a plausible legal or factual basis and lacking in justification*.'" *Burda v. M. Ecker Co.*, 2 F. 3d 769, 777 (7th Cir. 1993) (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988)) (emphasis and alterations in original); *see also Mustafa v. City*

*of Chicago*, 442 F.3d 544, 549–50 (7th Cir. 2006) (Section 1927 "permit[s] the discretionary award of attorneys' fees to the victorious party where a losing party has engaged in frivolous appeals or vexatiously and unreasonably prolonged litigation."). The policy goal of Section 1927 is to deter serial filers "from clogging the courts with junk lawsuits in the future." *Id.*, 442 F.3d at 550.

Here, Mr. Learner has been personally involved in fighting the Cardinal-Hickory Creek Project since it was publicly announced over a decade ago. He is the Executive Director of ELPC, which is a mid-west focused environmental advocacy organization. And although Mr. Learner and ELPC have been adamantly opposed to the Cardinal-Hickory Creek Project since it was first announced, they have never challenged any of the many other MISO-approved Multi-Value Project ("MVP") transmission lines in the mid-west. For example, Mr. Learner and ELPC did not challenge the Badger-Coulee 345 kV Transmission Line Project, which is another MISO-approved 345 kV transmission line MVP project that travels through Wisconsin's Driftless Area further to the north. Mr. Learner and ELPC have instead only challenged the one 345 kV transmission line in Wisconsin that also happens to be located near Mr. Learner's personal residence.

Putting aside Mr. Learner's personal motivations behind pursuing the bias claims, however, he is a lawyer and should have known better. This was a "junk lawsuit" that never should have been brought according to Wisconsin's highest court. As the lead attorney on the case for Plaintiffs, he should be held personally responsible. Electric ratepayers should not be forced to pay for Mr. Learner's serious "disregard for the orderly process of justice." *Burda*, 2 F. 3d at 777. Mr. Learner also needs to be deterred from bringing such "junk lawsuits in the future." *Mustafa*, 442 F.3d at 550.

## IV.    ATC'S, DAIRYLAND'S, AND THE COMMISSION'S ATTORNEYS' FEES ARE FAIR AND REASONABLE.

Under Section 1988, the ultimate measure of a fee award is reasonableness. *See Hensley*, 461 U.S. at 433. In assessing the reasonableness of attorneys' fees, district courts generally use the "lodestar" approach—the "product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez*, 755 F.3d at 553 (citation omitted). Once a lodestar amount is established, it may be adjusted based on twelve factors[15] but "'many of these factors are usually subsumed within the initial calculation.'" *See id.*, 755 F.3d at 553 n.2 (quoting *Hensley*, 461 U.S. at 434 n.9); *see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307,1310–11 (7th Cir. 1996). Thus, there is a "strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). The determination is "contextual and fact-specific." *Montanez*, 755 F.3d at 553 (citing *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)).

As the moving party, ATC and Dairyland "bear[] the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Id*. A "reasonable hourly rate[]" for purposes of the lodestar calculation is based on "market rates for services rendered." *People Who Care*, 90 F.3d at 1310 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989)). However, an attorney's "actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id*. (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)).

---

[15] The twelve *Hensley* factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

Courts assess not only hourly rates but also the reasonableness of hours expended when determining the lodestar amount, "exclud[ing] from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Counsel for the prevailing party should make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.*; *see also Montanez*, 755 F.3d at 555.

Here, ATC's and Dairyland's requested fees for attorney hours expended on litigating the Section 1983 claims in this Court and the intertwined claims in the parallel state court proceedings are reasonable. *See Maine v. Thiboutot*, 448 U.S. 1, 10–11 (1980) ("[T]he fee provision is part of the § 1983 remedy whether the action is brought in federal or state court."); *see also Bartholomew v. Watson*, 665 F.2d 910 (9th Cir. 1982) (awarding fees for work done in state court proceedings to determine potentially conclusive state-law question, and the district court had stayed proceedings at the defendants' request); *see also supra* Section II.

ATC and Dairyland have calculated that a fair and reasonable estimate of their fees and costs incurred are as follows:

| Party Incurring Fees | Attorneys' Fees and Costs Incurred |
|---|---|
| Public Service Commission | $555,257[16] |
| ATC | $2,006,574 |
| ATC (costs) | $261,237 |
| Dairyland | $450,000 |
| Total: $3,273,068 | |

---

[16] This figure represents 54.5% of the Commission's fees and costs incurred, which is the portion ATC and Dairyland have paid.

The rules permit ATC and Dairyland to tender the documentation for these fees after making their motion. Under Federal Rule of Civil Procedure 54, a motion for attorneys' fees must "state … a fair estimate" of the fees sought but need not "be supported at the time of filing with the evidentiary material bearing on the fees." Fed. R. Civ. P. 54(d)(2)(B) & Advisory Comm. Note—1993 Amendment. Although such evidence must be "submitted in due course," the rule requires the motion itself to include only enough information to "alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)." *Id*. Accordingly, ATC and Dairyland will submit, at a time the Court deems appropriate or within 14 days of an order from this Court:

- a final total estimate of fees expended on the relevant claims, and

- additional supporting documentation to support the amount of attorney fees requested, with appropriate redactions of any information or communications that are protected by the attorney-client privilege or the work product doctrine.

## CONCLUSION

For the foregoing reasons, ATC and Dairyland respectfully request that the Court grant their motion and award them the fees Wisconsin ratepayers' have incurred in defending against Plaintiffs' legally and factually groundless bias claims.

DATED:  August 25, 2023

**PERKINS COIE, LLP**

*/s/Brian H. Potts*
Brian H. Potts (WI Bar No. 1060680)
David R. Zoppo (WI Bar No. 1094283)
33 East Main Street, Suite 201
Madison, WI 53703-5118
Tel: (608) 663-7460
Fax: (608) 663-7499

Email: bpotts@perkinscoie.com
        dzoppo@perkinscoie.com

*Attorneys for American Transmission Company*
*LLC and ATC Management Inc.*

**FREDRIKSON & BYRON, P.A.**

*/s/ Justin W. Chasco*
Justin W. Chasco (WI Bar No. 1062709)
44 East Mifflin Street, Suite 1000
Madison, WI 53703
Tel: (608) 441-3813
Email: jchasco@fredlaw.com

*Attorney for Dairyland Power Cooperative*